# EXHIBIT 6

## [Part 2 of 2]

material, for each market risk exposure category (i.e., interest rate risk, foreign currency exchange rate risk, commodity price risk, and other relevant market risks, such as equity price risk). A registrant may use one of the three alternatives set forth below for all of the required quantitative disclosures about market risk. A registrant also may choose, from among the three alternatives, one disclosure alternative for market risk sensitive instruments entered into for trading purposes and another disclosure alternative for market risk sensitive instruments entered into for other than trading purposes. Alternatively, a registrant may choose any disclosure alternative, from among the three alternatives, for each risk exposure category within the trading and other than trading portfolios. The three disclosure alternatives are:

(i)    (A)    (*1*)    Tabular presentation of information related to market risk sensitive instruments; such information shall include fair values of the market risk sensitive instruments and contract terms sufficient to determine future cash flows from those instruments, categorized by expected maturity dates.

          (*2*)    Tabular information relating to contract terms shall allow readers of the table to determine expected cash flows from the market risk sensitive instruments for each of the next five years. Comparable tabular information for any remaining years shall be displayed as an aggregate amount.

          (*3*)    Within each risk exposure category, the market risk sensitive instruments shall be grouped based on common characteristics. Within the foreign currency exchange rate risk category, the market risk sensitive instruments shall be grouped by functional currency and within the commodity price risk category, the market risk sensitive instruments shall be grouped by type of commodity.

          (*4*)    See the Appendix to this Item for a suggested format for presentation of this information; and

      (B)    Registrants shall provide a description of the contents of the table and any related assumptions necessary to understand the disclosures required under paragraph (a)(1)(i)(A) of this Item 11; or

(ii)    (A)    Sensitivity analysis disclosures that express the potential loss in future earnings, fair values, or cash flows of market risk sensitive instruments resulting from one or more selected hypothetical changes in interest rates, foreign currency exchange rates, commodity prices, and other relevant market rates or prices over a selected period of time. The magnitude of selected hypothetical changes in rates or prices may differ among and within market risk exposure categories; and

      (B)    Registrants shall provide a description of the model, assumptions, and parameters, which are necessary to understand the disclosures required under paragraph (a)(1)(ii)(A) of this Item 11; or

(iii)    (A)    Value at risk disclosures that express the potential loss in future earnings, fair values, or cash flows of market risk sensitive instruments over a selected period of time, with a selected likelihood of occurrence, from changes in interest rates, foreign currency exchange rates, commodity prices, and other relevant market rates or prices;

      (B)    (*1*)    For each category for which value at risk disclosures are required under paragraph (a)(1)(iii)(A) of this Item 11, provide either:

               (*i*)    The average, high and low amounts, or the distribution of the value at risk amounts for the reporting period; or

               (*ii*)    The average, high and low amounts, or the distribution of actual changes in fair values, earnings, or cash flows from the market risk sensitive instruments occurring during the reporting period; or

               (*iii*)    The percentage or number of times the actual changes in fair values, earnings, or

cash flows from the market risk sensitive instruments exceeded the value at risk amounts during the reporting period;

    (2)    Information required under paragraph (a)(1)(iii)(B)(1) of this Item 11 is not required for the first fiscal year end in which a registrant must present Item 11 information; and

    (C)    Registrants shall provide a description of the model, assumptions, and parameters, which are necessary to understand the disclosures required under paragraphs (a)(1)(iii)(A) and (B) of this Item 11.

(2)    Registrants shall discuss material limitations that cause the information required under paragraph (a)(1) of this Item 11 not to reflect fully the net market risk exposures of the entity. This discussion shall include summarized descriptions of instruments, positions, and transactions omitted from the quantitative market risk disclosure information or the features of instruments, positions, and transactions that are included, but not reflected fully in the quantitative market risk disclosure information.

(3)    Registrants shall present summarized market risk information for the preceding fiscal year. In addition, registrants shall discuss the reasons for material quantitative changes in market risk exposures between the current and preceding fiscal years. Information required by this paragraph (a)(3), however, is not required if disclosure is not required under paragraph (a)(1) of this Item 11 for the current fiscal year. Information required by this paragraph (a)(3) is not required for the first fiscal year end in which a registrant must present Item 11 information.

(4)    If registrants change disclosure alternatives or key model characteristics, assumptions, and parameters used in providing quantitative information about market risk (e.g., changing from tabular presentation to value at risk, changing the scope of instruments included in the model, or changing the definition of loss from fair values to earnings), and if the effects of any such change is material, the registrant shall:

    (i)    Explain the reasons for the change; and

    (ii)    Either provide summarized comparable information, under the new disclosure method, for the year preceding the current year or, in addition to providing disclosure for the current year under the new method, provide disclosures for the current year and preceding fiscal year under the method used in the preceding year.

***Instructions to Item 11(a).***

*1.*    *Under Item 11(a)(1):*

    *A.*    *For each market risk exposure category within the trading and other than trading portfolios, registrants may report the average, high, and low sensitivity analysis or value at risk amounts for the reporting period, as an alternative to reporting year-end amounts.*

    *B.*    *In determining the average, high, and low amounts for the fiscal year under instruction 1.A. of the Instructions to Item 11(a), registrants should use sensitivity analysis or value at risk amounts relating to at least four equal time periods throughout the reporting period (e.g., four quarter-end amounts, 12 month-end amounts, or 52 week-end amounts).*

    *C.*    *Functional currency means functional currency as defined by generally accepted accounting principles (see, e.g., FASB, Statement of Financial Accounting Standards No. 52, "Foreign Currency Translation", ("FAS 52") paragraph 20 (December 1981)).*

    *D.*    *Registrants using the sensitivity analysis and value at risk disclosure alternatives are encouraged, but not required, to provide quantitative amounts that reflect the aggregate market risk inherent in the trading and other than trading portfolios.*

*2.*    *Under Item 11(a)(1)(i):*

A.   Examples of contract terms sufficient to determine future cash flows from market risk sensitive instruments include, but are not limited to:

    i.   Debt instruments - principal amounts and weighted average effective interest rates;

    ii.   Forwards and futures - contract amounts and weighted average settlement prices;

    iii.   Options - contract amounts and weighted average strike prices;

    iv.   Swaps - notional amounts, weighted average pay rates or prices, and weighted average receive rates or prices; and

    v.   Complex instruments - likely to be a combination of the contract terms presented in 2.A.i. through iv. of this Instruction;

B.   When grouping based on common characteristics, instruments should be categorized, at a minimum, by the following characteristics, when material:

    i.   Fixed rate or variable rate assets or liabilities;

    ii.   Long or short forwards and futures;

    iii.   Written or purchased put or call options with similar strike prices;

    iv.   Receive fixed and pay variable swaps, receive variable and pay fixed swaps, and receive variable and pay variable swaps;

    v.   The currency in which the instruments' cash flows are denominated;

    vi.   Financial instruments for which foreign currency transaction gains and losses are reported in the same manner as translation adjustments under generally accepted accounting principles (see, e.g., FAS 52 paragraph 20 (December 1981)); and

    vii.   Derivatives used to manage risks inherent in anticipated transactions;

C.   Registrants may aggregate information regarding functional currencies that are economically related, managed together for internal risk management purposes, and have statistical correlations of greater than 75% over each of the past three years;

D.   Market risk sensitive instruments that are exposed to rate or price changes in more than one market risk exposure category should be presented within the tabular information for each of the risk exposure categories to which those instruments are exposed;

E.   If a currency swap (see, e.g., FAS 52 Appendix E for a definition of currency swap) eliminates all foreign currency

*exposures in the cash flows of a foreign currency denominated debt instrument, neither the currency swap nor the foreign currency denominated debt instrument are required to be disclosed in the foreign currency risk exposure category. However, both the currency swap and the foreign currency denominated debt instrument should be disclosed in the interest rate risk exposure category; and*

F.   *The contents of the table and related assumptions that should be described include, but are not limited to:*

    i.   *The different amounts reported in the table for various categories of the market risk sensitive instruments (e.g., principal amounts for debt, notional amounts for swaps, and contract amounts for options and futures);*

    ii.   *The different types of reported market rates or prices (e.g., contractual rates or prices, spot rates or prices, forward rates or prices); and*

    iii.   *Key prepayment or reinvestment assumptions relating to the timing of reported amounts.*

3.   *Under Item 11(a)(1)(ii):*

A.   *Registrants should select hypothetical changes in market rates or prices that are expected to reflect reasonably possible near-term changes in those rates and prices. In this regard, absent economic justification for the selection of a different amount, registrants should use changes that are not less than 10 percent of end of period market rates or prices;*

B.   *For purposes of instruction 3.A. of the Instructions to Item 11(a), the term reasonably possible has the same meaning as defined by generally accepted accounting principles (see, e.g., FASB, Statement of Financial Accounting Standards No. 5, "Accounting for Contingencies," ("FAS 5") paragraph 3 (March 1975));*

C.   *For purposes of instruction 3.A. of the Instructions to Item 11(a), the term near term means a period of time going forward up to one year from the date of the financial statements (see generally AICPA, Statement of Position 946, "Disclosure of Certain Significant Risks and Uncertainties," ("SOP 94-6") at paragraph 7 (December 30, 1994));*

D.   *Market risk sensitive instruments that are exposed to rate or price changes in more than one market risk exposure category should be included in the sensitivity analysis disclosures for each market risk category to which those instruments are exposed;*

E.   *Registrants with multiple foreign currency exchange rate exposures should prepare foreign currency sensitivity analysis disclosures that measure the aggregate sensitivity to changes in all foreign currency exchange rate exposures, including the effects of changes in both transactional currency/functional currency exchange rate exposures and functional currency/reporting currency exchange rate exposures. For example, assume a French division of a registrant presenting its financial statements in U.S. dollars ($US) invests in a deutschmark (DM)-denominated debt security. In these circumstances, the $US is the reporting currency and the DM is the transactional currency. In addition, assume this division determines that the French franc (FF) is its functional currency according to FAS 52. In preparing the foreign currency sensitivity analysis disclosures, this registrant should report the aggregate potential loss from hypothetical changes in both the DM/FF exchange rate exposure and the FF/$US exchange rate exposure; and*

F.   *Model, assumptions, and parameters that should be described include, but are not limited to, how loss is defined by the model (e.g., loss in earnings, fair values, or cash flows), a general description of the modeling technique (e.g.,*

*duration modeling, modeling that measures the change in net present values arising from selected hypothetical changes in market rates or prices, and a description as to how optionality is addressed by the model), the types of instruments covered by the model (e.g., derivative financial instruments, other financial instruments, derivative commodity instruments, and whether other instruments are included voluntarily, such as certain commodity instruments and positions, cash flows from anticipated transactions, and certain financial instruments excluded under instruction 3.C.ii.of the General Instructions to Items 11(a) and 11(b)), and other relevant information about the model's assumptions and parameters, (e.g., the magnitude and timing of selected hypothetical changes in market rates or prices used, the method by which discount rates are determined, and key prepayment or reinvestment assumptions).*

4.      *Under Item 11(a)(1)(iii):*

    A.      *The confidence intervals selected should reflect reasonably possible near-term changes in market rates and prices. In this regard, absent economic justification for the selection of different confidence intervals, registrants should use intervals that are 95 percent or higher;*

    B.      *For purposes of instruction 4.A. of the Instructions to Item 11(a), the term reasonably possible has the same meaning as defined by generally accepted accounting principles (see, e.g., FAS 5, paragraph 3 (March 1975));*

    C.      *For purposes of instruction 4.A. of the Instructions to Item 11(a), the term near term means a period of time going forward up to one year from the date of the financial statements (see generally SOP 94-6, at paragraph 7 (December 30, 1994));*

    D.      *Registrants with multiple foreign currency exchange rate exposures should prepare foreign currency value at risk analysis disclosures that measure the aggregate sensitivity to changes in all foreign currency exchange rate exposures, including the aggregate effects of changes in both transactional currency/functional currency exchange rate exposures and functional currency/reporting currency exchange rate exposures. For example, assume a French division of a registrant presenting its financial statements in U.S. dollars ($US) invests in a deutschmark(DM)-denominated debt security. In these circumstances, the $US is the reporting currency and the DM is the transactional currency. In addition, assume this division determines that the French franc (FF) is its functional currency according to FAS 52. In preparing the foreign currency value at risk disclosures, this registrant should report the aggregate potential loss from hypothetical changes in both the DM/FF exchange rate exposure and the FF/$US exchange rate exposure; and*

    E.      *Model, assumptions, and parameters that should be described include, but are not limited to, how loss is defined by the model (e.g., loss in earnings, fair values, or cash flows), the type of model used (e.g., variance/covariance, historical simulation, or Monte Carlo simulation and a description as to how optionality is addressed by the model), the types of instruments covered by the model (e.g., derivative financial instruments,other financial instruments, derivative commodity instruments,and whether other instruments are included voluntarily, such ascertain commodity instruments and positions, cash flows from anticipated transactions, and certain financial instruments excluded under instruction 3.C.ii. of the General Instructions to Items 11(a) and 11(b)), and other relevant information about the model's assumptions and parameters, (e.g., holding periods,confidence intervals, and, when appropriate, the methods used for aggregating value at risk amounts across market risk exposure categories, such as by assuming perfect positive correlation,independence, or actual observed correlation).*

5.      *Under Item 11(a)(2), limitations that should be considered include, but are not limited to:*

    A.      *The exclusion of certain market risk sensitive instruments, positions, and transactions from the disclosures required under Item 11(a)(1) (e.g., derivative commodity instruments not permitted by contract or business custom to be settled in cash or with another financial instrument, commodity positions, cash flows from anticipated transactions, and certain financial instruments excluded under instruction 3.C.ii. of the General Instructions to Items 11(a) and 11(b)). Failure to include such instruments, positions, and transactions in preparing the disclosures under Item 11(a)(1) may be a limitation because the resulting disclosures may not fully reflect the net market risk of a registrant; and*

    B.      *The ability of disclosures required under Item 11(a)(1)to reflect fully the market risk that may be inherent in instruments with leverage, option, or prepayment features (e.g., options, including written options, structured notes,*

*collateralized mortgage obligations, leveraged swaps, and options embedded in swaps).*

*[end of Instructions to Item 11(a)]*

    (b)    Qualitative information about market risk.

        (1)    To the extent material, describe:

            (i)    The registrant's primary market risk exposures;

            (ii)    How those exposures are managed. Such descriptions shall include, but not be limited to, a discussion of the objectives, general strategies, and instruments, if any, used to manage those exposures; and

            (iii)    Changes in either the registrant's primary market risk exposures or how those exposures are managed, when compared to what was in effect during the most recently completed fiscal year and what is known or expected to be in effect in future reporting periods.

        (2)    Qualitative information about market risk shall be presented separately for market risk sensitive instruments entered into for trading purposes and those entered into for purposes other than trading.

**Instructions to Item 11(b).**

*1.    For purposes of disclosure under Item 11(b), primary market risk exposures means:*

    *A.    The following categories of market risk: interest rate risk, foreign currency exchange rate risk, commodity price risk,and other relevant market rate or price risks (e.g., equity price risk); and*

    *B.    Within each of these categories, the particular markets that present the primary risk of loss to the registrant. For example, if a registrant has a material exposure to foreign currency exchange rate risk and, within this category of market risk, is most vulnerable to changes in dollar/yen, dollar/pound,and dollar/peso exchange rates, the registrant should disclose those exposures. Similarly, if a registrant has a material exposure to interest rate risk and, within this category of market risk, is most vulnerable to changes in short-term U.S.prime interest rates, it should disclose the existence of that exposure.*

*2.    For purposes of disclosure under Item 11(b), registrants should describe primary market risk exposures that exist as of the end of the latest fiscal year, and how those exposures are managed.*

**General Instructions to Items 11(a) and 11(b).**

*1.    The disclosures called for by Items 11(a) and 11(b) are intended to clarify the registrant's exposures to market risk associated with activities in derivative financial instruments, other financial instruments, and derivative commodity instruments.*

*2.    In preparing the disclosures under Items 11(a) and 11(b), registrants are required to include derivative financial instruments, other financial instruments, and derivative commodity instruments.*

*3.    For purposes of Items 11(a) and 11(b), derivative financial instruments, other financial instruments, and derivative commodity instruments (collectively referred to as "market risk sensitive instruments") are defined as follows:*

    *A.    Derivative financial instruments has the same meaning as defined by generally accepted accounting principles (see, e.g., FASB, Statement of Financial Accounting Standards No. 119, "Disclosure about Derivative Financial Instruments and Fair Value of Financial Instruments," ("FAS 119") paragraphs 5-7 (October 1994)), and includes futures, forwards, swaps, options, and other financial instruments with similar characteristics;*

    *B.    Other financial instruments means all financial instruments as defined by generally accepted accounting principles for which fair value disclosures are required (see, e.g., FASB, Statement of Financial Accounting Standards No. 107, "Disclosures about Fair Value of Financial Instruments," ("FAS 107") paragraphs 3 and 8 (December 1991)), except for derivative financial instruments, as defined above;*

C.    i.    *Other financial instruments include, but are not limited to, trade accounts receivable, investments, loans, structured notes, mortgage-backed securities, trade accounts payable, indexed debt instruments, interest-only and principal-only obligations, deposits, and other debt obligations;*

    ii.    *Other financial instruments exclude employers and plans obligations for pension and other post-retirement benefits, substantively extinguished debt, insurance contracts, lease contracts, warranty obligations and rights, unconditional purchase obligations, investments accounted for under the equity method, minority interests in consolidated enterprises, and equity instruments issued by the registrant and classified in stockholders' equity in the statement of financial position (see, e.g., FAS 107, paragraph 8 (December 1991)). For purposes of this item, trade accounts receivable and trade accounts payable need not be considered other financial instruments when their carrying amounts approximate fair value; and*

D.    *Derivative commodity instruments include, to the extent such instruments are not derivative financial instruments, commodity futures, commodity forwards, commodity swaps, commodity options, and other commodity instruments with similar characteristics that are permitted by contract or business custom to be settled in cash or with another financial instrument. For purposes of this paragraph, settlement in cash includes settlement in cash of the net change in value of the derivative commodity instrument (e.g., net cash settlement based on changes in the price of the underlying commodity).*

4.    A.    *In addition to providing required disclosures for the market risk sensitive instruments defined in instruction 2. of the General Instructions to Items 11(a) and 11(b), registrants are encouraged to include other market risk sensitive instruments, positions, and transactions within the disclosures required under Items 11(a) and 11(b). Such instruments, positions, and transactions might include commodity positions, derivative commodity instruments that are not permitted by contract or business custom to be settled in cash or with another financial instrument, cash flows from anticipated transactions, and certain financial instruments excluded under instruction 3.C.ii. of the General Instructions to Items 11(a) and 11(b).*

    B.    *Registrants that voluntarily include other market risk sensitive instruments, positions and transactions within their quantitative disclosures about market risk under the sensitivity analysis or value at risk disclosure alternatives are not required to provide separate market risk disclosures for any voluntarily selected instruments, positions, or transactions. Instead, registrants selecting the sensitivity analysis and value at risk disclosure alternatives are permitted to present comprehensive market risk disclosures, which reflect the combined market risk exposures inherent in both the required and any voluntarily selected instruments, position, or transactions. Registrants that choose the tabular presentation disclosure alternative should present voluntarily selected instruments, positions, or transactions in a manner consistent with the requirements in Item 11(a) for market risk sensitive instruments.*

    C.    *If a registrant elects to include voluntarily a particular type of instrument, position, or transaction in their quantitative disclosures about market risk, that registrant should include all, rather than some, of those instruments, positions, or transactions within those disclosures. For example, if a registrant holds in inventory a particular type of commodity position and elects to include that commodity position within their market risk disclosures, the registrant should include the entire commodity position, rather than only a portion thereof, in their quantitative disclosures about market risk.*

5.    A.    *Under Items 11(a) and 11(b), a materiality assessment should be made for each market risk exposure category within the trading and other than trading portfolios.*

    B.    *For purposes of making the materiality assessment under instruction 5.A. of the General Instructions to Items 11(a) and 11(b), registrants should evaluate both:*
    i.    *The materiality of the fair values of derivative financial instruments, other financial instruments, and derivative commodity instruments outstanding as of the end of the latest fiscal year; and*

    ii.    *The materiality of potential, near-term losses in future earnings, fair values, and cash flows from reasonably possible near-term changes in market rates or prices.*

    iii.    *If either paragraphs B.i. or B.ii. in this instruction of the General Instructions to Items 11(a) and 11(b) are material, the registrant should disclose quantitative and qualitative information about market risk, if such market risk for the particular market risk exposure category is material.*

37

C.   *For purposes of instruction 5.B.i. of the General Instructions to Items 11(a) and 11(b), registrants generally should not net fair values, except to the extent allowed under generally accepted accounting principles (see, e.g., FASB Interpretation No. 39, "Offsetting of Amounts Related to Certain Contracts" (March 1992)). For example, under this instruction, the fair value of assets generally should not be netted with the fair value of liabilities.*

D.   *For purposes of instruction 5.B.ii. of the General Instructions to Items 11(a) and 11(b), registrants should consider, among other things, the magnitude of:*

    i.   *Past market movements;*

    ii.   *Reasonably possible, near-term market movements; and*

    iii.   *Potential losses that may arise from leverage, option, and multiplier features.*

E.   *For purposes of instructions 5.B.ii. and 5.D.ii. of the General Instructions to Items 11(a) and 11(b), the term near term means a period of time going forward up to one year from the date of the financial statements (see generally SOP 946, at paragraph 7 (December 30, 1994)).*

F.   *For the purpose of instructions 5.B.ii. and 5.D.ii. of the General Instructions to Items 11(a) and 11(b), the term reasonably possible has the same meaning as defined by generally accepted accounting principles (see, e.g., FAS 5, paragraph 3 (March 1975)).*

6.   *For purposes of Items 11(a) and 11(b), registrants should present the information outside of, and not incorporate the information into, the financial statements (including the footnotes to the financial statements). In addition, registrants are encouraged to provide the required information in one location. However, alternative presentation, such as inclusion of all or part of the information in Management's Discussion and Analysis, may be used at the discretion of the registrant. If information is disclosed in more than one location, registrants should provide cross-references to the locations of the related disclosures.*

7.   *For purposes of the instructions to Items 11(a) and 11(b), trading purposes has the same meaning as defined by generally accepted accounting principles (see, e.g., FAS 119, paragraph 9a (October 1994)). In addition, anticipated transactions means transactions (other than transactions involving existing assets or liabilities or transactions necessitated by existing firm commitments) an enterprise expects, but is not obligated, to carry out in the normal course of business (see, e.g., FASB, Statement of Financial Accounting Standards No. 80, "Accounting for Futures Contracts," paragraph 9, (August 1984)).*

*[end of General Instructions to Items 11(a) and 11(b)]*

    (c)   Interim periods. If interim period financial statements are included or are required to be included by Article 3 of Regulation S-X (17 CFR 210), discussion and analysis shall be provided so as to enable the reader to assess the sources and effects of material changes in information that would be provided under Item 11 of Form 20-F from the end of the preceding fiscal year to the date of the most recent interim balance sheet.

***Instructions to Item 11(c).***

1.   *Information required by paragraph (c) of this Item 11 is not required until after the first fiscal year end in which this Item 11 is applicable.*

    (d)   Safe Harbor.

        (1)   The safe harbor provided in Section 27A of the Securities Act of 1933 (15 U.S.C. 77z-2) and Section 21E of the Securities Exchange Act of 1934 (15 U.S.C. 78u-5) ("statutory safe harbors") shall apply, with respect to all types of issuers and transactions, to information provided pursuant to paragraphs (a), (b), and (c) of this Item 11, provided that the disclosure is made by an issuer; a person acting on behalf of the issuer; an outside reviewer retained by the issuer making a statement on behalf of the issuer; or an underwriter, with respect to information provided by the issuer or information derived from information provided by the issuer.

        (2)   For purposes of this paragraph (d) of this Item 11 only:

      (i)    All information required by paragraphs (a), (b)(1)(i), (b)(1)(iii), and (c) of this Item 11 is considered forward looking statements for purposes of the statutory safe harbors, except for historical facts such as the terms of particular contracts and the number of market risk sensitive instruments held during or at the end of the reporting period; and

      (ii)   With respect to paragraph (a) of this Item 11, the meaningful cautionary statements prong of the statutory safe harbors will be satisfied if a registrant satisfies all requirements of that same paragraph (a) of this Item 11.

(e)     Small business issuers. Small business issuers, as defined in &#167; 230.405 of this chapter and § 240.12b-2 of this chapter, need not provide the information required by this Item 11, whether or not they file on forms specially designated as small business issuer forms.

**General Instructions to Items 11(a), 11(b), 11(c), 11(d), and 11(e).**

*1.    Bank registrants, thrift registrants, and non-bank and non-thrift registrants with market capitalizations on January 28, 1997 in excess of $2.5 billion should provide Item 11 disclosures in filings with the Commission that include annual financial statements for fiscal years ending after June 15, 1997. Non-bank and non-thrift registrants with market capitalizations on January 28, 1997 of $2.5 billion or less should provide Item 11 disclosures in filings with the Commission that include annual financial statements for fiscal years ending after June 15, 1998.*

*2.  A.   For purposes of instruction 1. of the General Instructions to Items 11(a), 11(b), 11(c), 11(d), and 11(e), bank registrants and thrift registrants include any registrant which has control over a depository institution.*

      *B.   For purposes of instruction 2.A. of the General Instructions to Items 11(a), 11(b), 11(c), 11(d), and 11(e), a registrant has control over a depository institution if:*

        *i.    The registrant directly or indirectly or acting through one or more other persons owns, controls, or has power to vote 25% or more of any class of voting securities of the depository institution;*

        *ii.   The registrant controls in any manner the election of a majority of the directors or trustees of the depository institution; or*

        *iii.  The Federal Reserve Board or Office of Thrift Supervision determines, after notice and opportunity for hearing, that the registrant directly or indirectly exercises a controlling influence over the management or policies of the depository institution;*

      *C.   For purposes of instruction 2.B. of the General Instructions to Items 11(a), 11(b), 11(c), 11(d), and 11(e), a depository institution means any of the following:*

        *i.    An insured depository institution as defined in section 3(c)(2) of the Federal Deposit Insurance Act (12 U.S.C.A. Sec.1813 (c));*

        *ii.   An institution organized under the laws of the United States, any State of the United States, the District of Columbia, any territory of the United States, Puerto Rico, Guam, American Samoa, or the Virgin Islands, which both accepts demand deposits or deposits that the depositor may withdraw by check or similar means for payment to third parties or others and is engaged in the business of making commercial loans.*

      *D.   For purposes of instruction 1. of the General Instructions to Items 11(a), 11(b), 11(c), 11(d), and 11(e), market capitalization is the aggregate market value of common equity as set forth in General Instruction I.B.1. of Form S-3; provided however, that common equity held by affiliates is included in the calculation of market capitalization; and provided further that instead of using the 60 day period prior to filing referenced in General Instruction I.B.1. of Form S-3, the measurement date is January 28, 1997.*

**Appendix to Item 11 - Tabular Disclosures**

    The tables set forth below are illustrative of the format that might be used when a registrant elects to present the information required by paragraph (a)(1)(i)(A) of Item 11 regarding terms and information about derivative financial instruments, other financial instruments, and derivative commodity instruments. These examples are for illustrative purposes only. Registrants are not required to display the information in the specific format illustrated below. Alternative methods of display are permissible as long as the disclosure requirements of the section are satisfied. Furthermore, these examples were designed primarily to illustrate possible formats for presentation of the information required by the disclosure item and do not purport to illustrate the broad range of derivative financial instruments, other financial instruments, and derivative commodity instruments utilized by registrants.

**Interest Rate Sensitivity**

    The table below provides information about the Company's derivative financial instruments and other financial instruments that are sensitive to changes in interest rates, including interest rate swaps and debt obligations. For debt obligations, the table presents principal cash flows and related weighted average interest rates by expected maturity dates. For interest rate swaps, the table presents notional amounts and weighted average interest rates by expected (contractual) maturity dates. Notional amounts are used to calculate the contractual payments to be exchanged under the contract. Weighted average variable rates are based on implied forward rates in the yield curve at the reporting date. The information is presented in U.S. dollar equivalents, which is the Company's reporting currency. The instrument's actual cash flows are denominated in both U.S. dollars ($US) and German deutschmarks (DM), as indicated in parentheses.

**December 31, 19x1**                    **Expected Maturity Date**

| | 19x2 | 19x3 | 19x4 | 19x5 | 19x6 | There-after | Total | Fair Value |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | (US$ Equivalent in millions) | |
| **Liabilities** | | | | | | | | |
| Long-term Debt | | | | | | | | |
| Fixed Rate ($US) | $XXX | $XXX | $XXX | $XXX | $XXX | $XXX | $XXX | $XXX |
| Average interest rate | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | |
| | | | | | | | | |
| Fixed Rate (DM) | XXX | XXX | XXX | XXX | XXX | XXX | XXX | XXX |
| Average interest rate | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | |
| | | | | | | | | |
| Variable Rate ($US) | XXX | XXX | XXX | XXX | XXX | XXX | XXX | XXX |
| Average interest rate | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | |

**Expected Maturity Rate**

| **Interest Rate Derivatives** | 19x2 | 19x3 | 19x4 | 19x5 | 19x6 | There-after | Total | Fair Value |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | (In millions) | |
| Interest Rate Swaps | | | | | | | | |
| Variable to Fixed ($US) | $XXX | $XXX | $XXX | $XXX | $XXX | $XXX | $XXX | $XXX |
| Average pay rate | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | |
| Average receive rate | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | |
| | | | | | | | | |
| Fixed to Variable ($US) | XXX | XXX | XXX | XXX | XXX | XXX | XXX | XXX |
| Average pay rate | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | |
| Average receive rate | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | X.X% | |

**Exchange Rate Sensitivity**

The table below provides information about the Company's derivative financial instruments, other financial instruments, and firmly committed sales transactions by functional currency and presents such information in U.S. dollar equivalents.[1]  The table summarizes information on instruments and transactions that are sensitive to foreign currency exchange rates, including foreign currency forward exchange agreements, deutschmark (DM)-denominated debt obligations, and firmly committed DM sales transactions.  For debt obligations, the table presents principal cash flows and related weighted average interest rates by expected maturity dates.  For firmly committed DM-sales transactions, sales amounts are presented by the expected transaction date, which are not expected to exceed two years.  For foreign currency forward exchange agreements, the table presents the notional amounts and weighted average exchange rates by expected (contractual) maturity dates.  These notional amounts generally are used to calculate the contractual payments to be exchanged under the contract.

**December 31, 19x1**                                **Expected Maturity Date**

| | 19x2 | 19x3 | 19x4 | 19x5 | 19x6 | There-after | Total | Fair Value |
|---|---|---|---|---|---|---|---|---|
| **On-Balance Sheet Financial Instruments** | | | | | | | | |
| | (US$ Equivalent in millions) | | | | | | | |
| $US Functional Currency[2] | | | | | | | | |
| Liabilities | | | | | | | | |
| Long-Term Debt | | | | | | | | |
| Fixed Rate (DM) | $XXX | $XXX | $XXX | $XXX | $XXX | $XXX | $XXX | $XXX |
| | | | | | | | | |
| Average interest rate | X.X | X.X | X.X | X.X | X.X | X.X | X.X | |

**Expected Maturity or Transaction Date**

| | 19x2 | 19x3 | 19x4 | 19x5 | 19x6 | There-after | Total | Fair Value |
|---|---|---|---|---|---|---|---|---|
| **Anticipated Transactions and Related Derivatives[1]** | | | | | | | | |
| | (US$ Equivalent in millions) | | | | | | | |
| $US Functional Currency: | | | | | | | | |
| Firmly committed transactions: | | | | | | | | |
| Sales Contracts (DM) | $XXX | $XXX | - | - | - | - | $XXX | $XXX |
| | | | | | | | | |
| Forward Exchange Agreements | | | | | | | | |
| (Receive $US/Pay DM) | | | | | | | | |
| Contract Amount | XXX | XXX | - | - | - | - | XXX | XXX |
| Average Contractual | | | | | | | | |
| Exchange Rate X.X | X.X | - | - | - | - | X.X | | |

---

[1]  The information is presented in U.S. dollars because that is the registrant's reporting currency.

[2]  Similar tabular information would be provided for other functional currencies.

[3]  Pursuant to General Instruction 4 to Items 11(a) and 11(b) of Form 20-F, registrants may include cash flows from anticipated transactions and operating cash flows resulting from non-financial and non-commodity instruments.

**Commodity Price Sensitivity**

The table below provides information about the Company's corn inventory and futures contracts that are sensitive to changes in commodity prices, specifically corn prices. For inventory, the table presents the carrying amount and fair value at December 31, 19x1. For the futures contracts the table presents the notional amounts in bushels, the weighted average contract prices, and the

total dollar contract amount by expected maturity dates, the latest of which occurs one year from the reporting date. Contract amounts are used to calculate the contractual payments and quantity of corn to be exchanged under the futures contracts.

**December 31, 19x1**

**On Balance Sheet Commodity
Position and Related Derivatives**

|  | Carrying Amount | Fair Value |
|---|---|---|
|  | (In millions) | |
| Corn Inventory | $XXX | $XXX[4] |

---

[4]   Pursuant to General Instruction 4 to Items 305(a) and 305(b) of Regulation S-K, registrants may include information on commodity positions, such as corn inventory.

**Related Derivatives**

|  | Expected Maturity 1992 | Fair Value |
|---|---|---|
| Futures Contracts (Short) | | |
| Contract Volumes (100,000 bushels) | XXX | |
| Weighted Average Price (Per 100,000 bushels) | $X.XX | |
| Contract Amount ($US in millions) | $XXX | $XXX |

**Item 12.     Description of Securities Other than Equity Securities.**

**A.     *Debt Securities*.** If you are registering debt securities, provide the following information if it is relevant to the securities you are registering.

1.     Information about interest, conversions, maturity, redemption, amortization, sinking funds or retirement.

2.     The kind and priority of any lien securing the issue, as well as a brief identification of the principal properties subject to each lien.

3.     Subordination of the rights of holders of the securities to other security holders or creditors. If the securities are designated in their title as subordinated, give the aggregate amount of outstanding indebtedness as of the most recent practicable date that is senior to the subordinated debt and briefly describe any limitations on the issuance of additional senior indebtedness, or state that there is no limitation.

4.     Information about provisions restricting the declaration of dividends or requiring the creation or maintenance of any reserves or of any ratio of assets or requiring the maintenance of properties.

5.     Information about provisions permitting or restricting the issuance of additional securities, the withdrawal of cash deposited against the issuance of additional securities, the incurring of additional debt, the release or substitution of assets securing the issue, the modification of the terms of the security and similar provisions. You do not need to describe provisions permitting the release of assets upon the deposit of equivalent funds or the pledge of equivalent property, the release of property no longer required in the business, obsolete property or property taken by eminent domain, the application of insurance monies, and similar provisions.

43

6. The general type of event that constitutes a default and whether or not you are required to provide periodic evidence of the absence of a default or of compliance with the terms of the indenture.

7. Modification of the terms of the security or the rights of security holders.

8. If the rights evidenced by the securities you are registering are or may be materially limited or qualified by the rights of any other authorized class of securities, provide enough information about the other class of securities so investors will understand the rights evidenced by the securities you are registering. You do not need to provide information about the other class of securities if all of it will be retired, as long as you have taken appropriate steps to ensure that retirement will be completed on or before the time you deliver the securities you are registering.

9. The tax effects of any "original issue discount" as that term is defined in Section 1232 of the Internal Revenue Code (26 U.S.C. 1232), including cases where the debt security is being sold in a package with another security and the allocation of the offering price between the two securities may have the effect of offering the debt security at an original issue discount.

10. The name and address of the trustee and the nature of any material relationship between the trustee and you or any of your affiliates, the percentage of the class of securities that is needed to require the trustee to take action, and what indemnification the trustee may require before proceeding to enforce the lien.

11. The names and addresses of the paying agents.

12. The currency or currencies in which the debt is payable. If the debt may be paid in two or more currencies, state who has the option to determine the currency conversion and what the basis will be for that determination.

13. Any law or decree determining the extent to which the securities may be serviced.

14. The consequences of any failure to pay principal, interest, or any sinking or amortization installment.

15. If the securities are guaranteed, the name of the guarantor and a brief outline of the contract of guarantee.

B. **Warrants and Rights.** If the securities you are registering are being offered pursuant to warrants or rights, provide the following information, in addition to the description of the securities the warrants or rights represent.

1. The amount of securities called for by the warrants or rights.

2. The period during and the price at which the warrants or rights are exercisable.

3. The amount of warrants or rights outstanding.

4. Provisions for changes or adjustments in the exercise price.

5. Any other material terms of the warrants or rights.

C. **Other Securities.** If you are registering securities other than equity, debt, warrants or rights, briefly describe the rights evidenced by the securities you are registering. The description should be comparable in detail to the description you would be required to provide for equity, debt, warrants or rights.

D. **American Depositary Shares.** If you are registering American depositary shares represented by American depositary receipts, provide the following information.

1. Give the name of the depositary and the address of its principal executive office.

2. Give the title of the American depositary receipts and identify the deposited security. Briefly describe the American depositary shares, including provisions, if any, regarding:

(a) the amount of deposited securities represented by one unit of American depositary receipts;

44

(b)    any procedure for voting the deposited securities;

(c)    the procedure for collecting and distributing dividends;

(d)    the procedures for transmitting notices, reports and proxy soliciting material;

(e)    the sale or exercise of rights;

(f)    the deposit or sale of securities resulting from dividends, splits or plans of reorganization;

(g)    amendment, extension or termination of the deposit arrangements;

(h)    the rights that holders of American depositary receipts have to inspect the books of the depositary and the list of receipt holders;

(i)    any restrictions on the right to transfer or withdraw the underlying securities; and

(j)    any limitation on the depositary's liability.

3.    Describe all fees and charges that a holder of American depositary receipts may have to pay, either directly or indirectly. Indicate the type of service, the amount of the fees or charges and to whom the fees or charges are paid. In particular, provide information about any fees or charges in connection with (a) depositing or substituting the underlying shares; (b) receiving or distributing dividends; (c) selling or exercising rights; (d) withdrawing an underlying security; and (e) transferring, splitting or grouping receipts. Provide information about the depositary's right, if any, to collect fees and charges by offsetting them against dividends received and deposited securities.

***Instructions to Item 12:***

*1.    You do not need to provide the information called for by this item if you are using this form as an annual report.*

*2.    You do not need to include any information in a registration statement or prospectus in response to Item 305(a)(2) of the Trust Indenture Act of 1939, 15 U.S.C. 77aaa et seq., as amended, if the information is not otherwise required by this Item.*

*3.    If you are registering convertible securities or stock purchase warrants that are subject to redemption or call, include the following information in your description of the securities.*

*a.    Whether holders will forfeit the right to convert or purchase the securities unless they exercise that right before the date specified in the notice of redemption or call;*

*b.    The expiration or termination date of the warrants;*

*c.    The kinds, frequency and timing of the redemption or call notice, including the cities or newspapers in which you will publish the notice; and*

*d.    In the case of bearer securities, that investors are responsible for making arrangements to avoid losing the right to convert or purchase if there is a redemption or call, such as by reading the newspapers in which you will publish the redemption or call notice.*

*4.    When you are required to state the title of the securities, the title must indicate the type and general character of the securities.*

**PART II**

**Item 13.    Defaults, Dividend Arrearages and Delinquencies.**

A.    If there has been:

    1.    a material default in the payment of principal, interest, a sinking or purchase fund installment, or

    2.    any other material default not cured within 30 days, relating to indebtedness of you or any of your significant subsidiaries, and if the amount of the indebtedness exceeds 5% of your total assets on a consolidated basis, identify the indebtedness and state the nature of the default. If the default falls under paragraph A.1 above, state the amount of the default and the total arrearage on the date you file this report.

B.    If the payment of dividends is in arrears or there has been any other material delinquency not cured within 30 days, relating to:

    1.    any class of your preferred stock which is registered or ranks prior to any class of registered securities, or

    2.    any class of preferred stock of your significant subsidiaries, state the title of the class and the nature of the arrearage or delinquency. If the payment of dividends is in arrears, state the amount of this arrearage and the total arrearage on the date you file this report.

*Instructions to Item 13:*

    *1.    If you previously have reported information called for by this item in a report on Form 6-K, you may incorporate the information by specifically referring in this report to the previous report.*

    *2.    You do not have to provide the information called for by this Item if the default or arrearage relates to a class of securities held entirely by or for the account of you or any of your wholly owned subsidiaries.*

*Instructions to Item 13.A: This requirement only applies to events that have become defaults under the governing instruments, i.e., after any grace period has expired and any notice requirements have been satisfied.*

**Item 14.    Material Modifications to the Rights of Security Holders and Use of Proceeds.**

A.    If you or anyone else has modified materially the instruments defining the rights of holders of any class of registered securities, identify that class of securities and briefly describe the general effect of the modification on the rights of those security holders.

B.    If you or anyone else has modified materially or qualified the rights evidenced by any class of registered securities by issuing or modifying any other class of securities, briefly describe the general effect of the issuance or modification on the rights of holders of the registered securities.

C.    If you or anyone else has withdrawn or substituted a material amount of the assets securing any class of your registered securities, provide the following information.

    1.    Give the title of the securities.

    2.    Identify and describe briefly the assets withdrawn or substituted.

    3.    Indicate the provisions in the underlying indenture, if any, that authorize the withdrawal or substitution.

D.    If the trustees or paying agents for any registered securities have changed during the last financial year, give the names and addresses of the new trustees or paying agents.

E.    **Use of proceeds.** If required pursuant to Rule 463 under the Securities Act, report the use of proceeds after the effective date of the first Securities Act registration statement filed by you or your predecessor. You must report the use of proceeds:

(i)    on the first Form 20-F annual report you file pursuant to sections 13(a) and 15(d) of the Exchange Act after the Securities Act registration statement is effective, and

(ii)    on each of your subsequent Form 20-F annual reports filed pursuant to sections 13(a) and 15(d) of the Exchange Act.

You may cease reporting the use of proceeds on the later of the date you disclose application of all the offering proceeds, or the date you disclose termination of the offering. If a required report on the use of proceeds relates to the first effective registration statement of your predecessor, you must provide the report.

Provide the information required by paragraphs E.1 through E.4 below in the first Form 20-F annual report you file pursuant to sections 13(a) and 15 (d) of the Exchange Act. In subsequent Form 20-F annual reports, you only need to provide the information required by paragraphs E.2 through E.4 if that information has changed since the last Form 20-F annual report you filed.

1.    The effective date of the Securities Act registration statement for which the use of proceeds information is being disclosed and the Commission file number assigned to that registration statement;

2.    The offering date, if the offering has commenced, or an explanation of why it has not commenced;

3.    If the offering terminated before any securities were sold, an explanation for the termination; and

4.    If the offering did not terminate before any securities were sold, disclose:

(a)    Whether the offering has terminated and, if so, whether it terminated before all of the registered securities were sold;

(b)    The name(s) of the managing underwriter(s), if any;

(c)    The title of each class of securities registered and, if a class of convertible securities is being registered, the title of any class of securities into which the convertible securities may be converted;

(d)    For each class of securities (other than a class into which a class of registered convertible securities may be converted without additional payment to the issuer) the following information, provided for both the account of the issuer and the account(s) of any selling shareholder(s): the amount registered, the aggregate price of the offering amount registered, the amount sold and the aggregate offering price of the amount sold to date;

(e)    From the effective date of the Securities Act registration statement to the ending date of the reporting period, the amount of expenses incurred for the issuer's account in connection with the issuance and distribution of the registered securities for underwriting discounts and commissions, finders' fees, expenses paid to or for underwriters, other expenses and total expenses. Indicate if a reasonable estimate for the amount of expenses is provided instead of the actual amount of the expense. Indicate whether the payments were:

(i)    Direct or indirect payments to directors, officers, general partners of the issuer or their associates; to persons owning 10% or more of any class of the issuer's equity securities; and to affiliates of the issuer; or

(ii)    Direct or indirect payments to others;

(f)    The net offering proceeds to the issuer after deducting the total expenses described in paragraph E.4(e) of this Item;

(g) From the effective date of the Securities Act registration statement to the ending date of the reporting period, the amount of net offering proceeds to the issuer used for construction of plant, building and facilities; purchase and installation of machinery and equipment; purchases of real estate; acquisition of other business(es); repayment of indebtedness; working capital; temporary investments (which should be specified); and any other purposes for which at least 5% of the issuer's total offering proceeds or $100,000 (whichever is less) has been used (which should be specified). Indicate if a reasonable estimate for the amount of net offering proceeds applied instead of the actual amount of net offering proceeds used. Indicate whether such payments were:

    (i) Direct or indirect payments to directors, officers, general partners of the issuer or their associates; to persons owning 10% or more of any class of the issuer's equity securities; and to affiliates of the issuer; or

    (ii) Direct or indirect payments to others; and

(h) If the use of proceeds in paragraph E.4(g) of this Item represents a material change in the use of proceeds described in the prospectus, the issuer should describe briefly the material change.

*Instruction to Item 14: If you previously have reported information called for by this item in a report on Form 6-K, you may incorporate the information by specifically referring in this report to the previous report.*

*Instruction to Item 14.B: You should report any working capital restrictions or other limitations on the payment of dividends.*

*Instruction to Item 14.C: You do not have to provide the information called for by Item 14.C. if the withdrawal or substitution is made pursuant to the terms of an indenture qualified under the Trust Indenture Act of 1939.*

**Item 15.     Controls and Procedures.**

(a) Disclosure Controls and Procedures. Where the Form is being used as an annual report filed under Section 13(a) or 15(d) of the Exchange Act, disclose the conclusions of the issuer's principal executive and principal financial officers, or persons performing similar functions, regarding the effectiveness of the issuer's disclosure controls and procedures (as defined in 17 CFR 240.13a-15(e) or 240.15d-15(e)) as of the end of the period covered by the report, based on the evaluation of these controls and procedures required by paragraph (b) of 17 CFR 240.13a-15 or 240.15d-15.

(b) Management's annual report on internal control over financial reporting. Where the Form is being used as an annual report filed under Section 13(a) or 15(d) of the Exchange Act, provide a report of management on the issuer's internal control over financial reporting (as defined in 17 CFR 240.13a-15(f) or 240.15d-15(f)) that contains:

    (1) A statement of management's responsibility for establishing and maintaining adequate internal control over financial reporting for the issuer;

    (2) A statement identifying the framework used by management to evaluate the effectiveness of the issuer's internal control over financial reporting as required by paragraph (c) of 17 CFR 240.13a-15 or 240.15d-15;

    (3) Management's assessment of the effectiveness of the issuer's internal control over financial reporting as of the end of the issuer's most recent fiscal year, including a statement as to whether or not internal control over financial reporting is effective. This discussion must include disclosure of any material weakness in the issuer's internal control over financial reporting identified by management. Management is not permitted to conclude that the issuer's internal control over financial reporting is effective if there are one or more material weaknesses in the issuer's internal control over financial reporting; and

    (4) A statement that the registered public accounting firm that audited the financial statements included in the annual report containing the disclosure required by this Item has issued an attestation report on management's assessment of the issuer's internal control over financial reporting.

(c) Attestation report of the registered public accounting firm. Where the Form is being used as an annual report filed under Section 13(a) or 15(d) of the Exchange Act, provide the registered public accounting firm's attestation report on management's assessment of the issuer's internal control over financial reporting in the issuer's annual report

containing the disclosure required by this Item.

(d)     Changes in internal control over financial reporting. Disclose any change in the issuer's internal control over financial reporting identified in connection with the evaluation required by paragraph (d) of 17 CFR 240.13a-15 or 240.15d-15 that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the issuer's internal control over financial reporting.

Instructions to Item 15.

1. An issuer need not comply with paragraphs (b) and (c) of this Item until it either had been required to file an annual report pursuant to Section 13(a) or 15(d) of the Exchange Act (15 U.S.C. 78m(a) or 78o(d)) for the prior fiscal year or had filed an annual report with the Commission for the prior fiscal year. An issuer that does not comply shall include a statement in the first annual report that it files in substantially the following form:

> "This annual report does not include a report of management's assessment regarding internal control over financial reporting or an attestation report of the company's registered public accounting firm due to a transition period established by rules of the Securities and Exchange Commission for newly
> public companies."

2. The issuer must maintain evidential matter, including documentation, to provide reasonable support for management's assessment of the effectiveness of the issuer's internal control over financial reporting.

**Item 15T. Controls and Procedures.**

**Note to Item 15T:** This is a special temporary section that applies instead of Item 15 only to: (1) an issuer that is an "accelerated filer," but not a "large accelerated filer," as those terms are defined in §240.12b-2 of this chapter and only with respect to an annual report that the issuer is required to file for a fiscal year ending on or after July 15, 2006 but before July 15, 2007; or (2) an issuer that is neither a "large accelerated filer" nor an "accelerated filer" as those terms are defined in §240.12b-2 of this chapter and only with respect to an annual report that the issuer is required to file for a fiscal year ending on or after December 15, 2007 but before December 15, 2008.

(a) Disclosure Controls and Procedures. Where the Form is being used as an annual report filed under section 13(a) or 15(d) of the Exchange Act, disclose the conclusions of the issuer's principal executive and principal financial officers, or persons performing similar functions, regarding the effectiveness of the issuer's disclosure controls and procedures (as defined in 17 CFR 240.13a-15(e) or 240.15d-15(e)) as of the end of the period covered by the report, based on the evaluation of these controls and procedures required by paragraph (b) of 17 CFR 240.13a-15 or 240.15d-15.

(b) Management's annual report on internal control over financial reporting. Where the Form is being used as an annual report filed under section 13(a) or 15(d) of the Exchange Act, provide a report of management on the issuer's internal control over financial reporting (as defined in §240.13a-15(f) or 240.15d-15(f) of this chapter). The report shall not be deemed to be filed for purposes of section 18 of the Exchange Act or otherwise subject to the liabilities of that section, unless the issuer specifically states that the report is to be considered "filed" under the Exchange Act or incorporates it by reference into a filing under the Securities Act or the Exchange Act. The report must contain:

(1) A statement of management's responsibility for establishing and maintaining adequate internal control over financial reporting for the issuer;

(2) A statement identifying the framework used by management to evaluate the effectiveness of the issuer's internal control over financial reporting as required by paragraph (c) of §240.13a-15 or 240.15d-15 of this chapter; and

(3) Management's assessment of the effectiveness of the issuer's internal control over financial reporting as of the end of the issuer's most recent fiscal year, including a statement as to whether or not internal control over financial reporting is effective. This discussion must include disclosure of any material weakness in the issuer's internal control over financial reporting identified by management. Management is not permitted to conclude that the issuer's internal control over financial reporting is effective if there are one or more material weaknesses in the issuer's internal control over financial reporting; and

(4) A statement in substantially the following form: "This annual report does not include an attestation report of the company's registered public accounting firm regarding internal control over financial reporting. Management's report was not subject to attestation by the company's registered public accounting firm pursuant to temporary rules of the Securities and Exchange Commission that permit the company to provide only management's report in this annual report."

(c) Changes in internal control over financial reporting. Disclose any change in the issuer's internal control over financial reporting identified in connection with the evaluation required by paragraph (d) of §240.13a-15 or 240.15d-15 of this chapter that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the issuer's internal control over financial reporting.

(d) This temporary Item 15T, and accompanying note and instructions, will expire on June 30, 2009.

Instructions to Item 15T

1. An issuer need only comply with paragraph (b) of this Item until it either had been required to file an annual report pursuant to section 13(a) or 15(d) of the Exchange Act (15 U.S.C. 78m(a) or 78o(d)) for the prior fiscal year or had filed an annual report with the Commission for the prior fiscal year. An issuer that does not comply shall include a statement in the first annual report that it files in substantially the following form: "This annual report does not include a report of management's assessment regarding internal control over financial reporting or an attestation report of the company's registered public accounting firm due to a transition period established by rules of the Securities and Exchange Commission for newly public companies."

2. The registrant must maintain evidential matter, including documentation, to provide reasonable support for management's assessment of the effectiveness of the issuer's internal control over financial reporting.

**Item 16.        [Reserved]**

**Item 16A.      Audit committee financial expert.**

(a)    (1)      Disclose that the registrant's board of directors has determined that the registrant either:

(i)      Has at least one audit committee financial expert serving on its audit committee; or

(ii)     Does not have an audit committee financial expert serving on its audit committee.

(2)      If the registrant provides the disclosure required by paragraph (a)(1)(i) of this Item, it must disclose the name of the audit committee financial expert If the registrant provides the disclosure required by paragraph (a)(1)(i) of this Item, it must disclose the name of the audit committee financial expert and whether that person is <u>independent</u>, as that term is defined in the listing standards applicable to the registrant if the registrant is a listed issuer, as defined in 17 CFR 240.10A-3. If the registrant is not a listed issuer, it must use a definition of audit committee member independence of a national securities exchange registered pursuant to section 6(a) of the Exchange Act (15 U.S.C. 78f(a)) or a national securities association registered pursuant to section 15A(a) of the Exchange Act (15 U.S.C. 78o-3(a)) that has been approved by the Commission (as such definition may be modified or supplemented) in determining whether its audit committee financial expert is independent, and state which definition was used.

(3)      If the registrant provides the disclosure required by paragraph (a)(1)(ii) of this Item, it must explain why it does not have an audit committee financial expert.

*Instruction to paragraph (a) of Item 16A:*

*If the registrant's board of directors has determined that the registrant has more than one audit committee financial expert serving on its audit committee, the registrant may, but is not required to, disclose the names of those additional persons.*

(b)    For purposes of this Item, an "audit committee financial expert" means a person who has the following attributes:

(1)      An understanding of generally accepted accounting principles and financial statements;

(2)      The ability to assess the general application of such principles in connection with the accounting for estimates, accruals and reserves;

(3)      Experience preparing, auditing, analyzing or evaluating financial statements that present a breadth and level of complexity of accounting issues that are generally comparable to the breadth and complexity of issues that can reasonably be expected to be raised by the registrant's financial statements, or experience actively supervising one or more persons engaged in such activities;

(4)      An understanding of internal controls over financial reporting;

(5)      An understanding of audit committee functions.

   (c)     A person shall have acquired such attributes through:

       (1)     Education and experience as a principal financial officer, principal accounting officer, controller, public accountant or auditor or experience in one or more positions that involve the performance of similar functions;

       (2)     Experience actively supervising a principal financial officer, principal accounting officer, controller, public accountant, auditor or person performing similar functions;

       (3)     Experience overseeing or assessing the performance of companies or public accountants with respect to the preparation, auditing or evaluation of financial statements; or

       (4)     Other relevant experience.

   (d)     Safe Harbor

       (1)     A person who is determined to be an audit committee financial expert will not be deemed an "expert" for any purpose, including without limitation for purposes of section 11 of the Securities Act of 1933 (15 U.S.C. 77k), as a result of being designated or identified as an audit committee financial expert pursuant to this Item 16A.

       (2)     The designation or identification of a person as an audit committee financial expert pursuant to this Item 16A does not impose on such person any duties, obligations or liability that are greater than the duties, obligations and liability imposed on such person as a member of the audit committee and board of directors in the absence of such designation or identification.

       (3)     The designation or identification of a person as an audit committee financial expert pursuant to this Item 16A does not affect the duties, obligations or liability of any other member of the audit committee or board of directors.

*Instructions to Item 16A:*

1.     Item 16A applies only to annual reports, and does not apply to registration statements, on Form 20-F.

2.     If a person qualifies as an audit committee financial expert by means of having held a position described in paragraph (c)(4) of this Item, the registrant shall provide a brief listing of that person's relevant experience. Such disclosure may be made by reference to disclosures required under Item 6.A.

3.     In the case of a foreign private issuer with a two-tier board of directors, for purposes of this Item 16A, the term board of directors means the supervisory or non-management board. In the case of a foreign private issuer meeting the requirements of 17 CFR 240.10A-3(c)(3), for purposes of this Item 16A, the term board of directors means the issuer's board of auditors (or similar body) or statutory auditors, as applicable. Also, in the case of a foreign private issuer, the term generally accepted accounting principles in paragraph (b)(1) of this Item means the body of generally accepted accounting principles used by that issuer in its primary financial statements filed with the Commission.

**Item 16B.    Code of Ethics.**

   (a)     Disclose whether the registrant has adopted a code of ethics that applies to the registrant's principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions. If the registrant has not adopted such a code of ethics, explain why it has not done so.

   (b)     For purposes of this Item 16B, the term "code of ethics" means written standards that are reasonably designed to deter wrongdoing and to promote:

       (1)     Honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships;

       (2)     Full, fair, accurate, timely, and understandable disclosure in reports and documents that a registrant files with,

or submits to, the Commission and in other public communications made by the registrant;

    (3)    Compliance with applicable governmental laws, rules and regulations;

    (4)    The prompt internal reporting of violations of the code to an appropriate person or persons identified in the code; and

    (5)    Accountability for adherence to the code.

(c)    The registrant must:

    (1)    File with the Commission a copy of its code of ethics that applies to the registrant's principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions, as an exhibit to its annual report;

    (2)    Post the text of such code of ethics on its Internet website and disclose, in its annual report, its Internet address and the fact that it has posted such code of ethics on its Internet website; or

    (3)    Undertake in its annual report filed with the Commission to provide to any person without charge, upon request, a copy of such code of ethics and explain the manner in which such request may be made.

(d)    The registrant must briefly describe the nature of any amendment to a provision of its code of ethics that applies to the registrant's principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions and that relates to any element of the code of ethics definition enumerated in Item 16B(b), which has occurred during the registrant's most recently completed fiscal year.

(e)    If the registrant has granted a waiver, including an implicit waiver, from a provision of the code of ethics to one of the officers or persons described in Item 16B(a) that relates to one or more of the items set forth in Item 16B(b) during the registrant's most recently completed fiscal year, the registrant must briefly describe the nature of the waiver, the name of the person to whom the waiver was granted, and the date of the waiver.

*Instructions to Item 16B:*

1.    Item 16B applies only to annual reports, and does not apply to registration statements, on Form 20-F.

2.    A registrant may have separate codes of ethics for different types of officers. Furthermore, a "code of ethics" within the meaning of paragraph (b) of this Item may be a portion of a broader document that addresses additional topics or that applies to more persons than those specified in paragraph (a). In satisfying the requirements of paragraph (c), a registrant need only file, post or provide the portions of a broader document that constitutes a "code of ethics" as defined in paragraph (b) and that apply to the persons specified in paragraph (a).

3.    If a registrant elects to satisfy paragraph (c) of this Item by posting its code of ethics on its website pursuant to paragraph (c)(2), the code of ethics must remain accessible on its website for as long as the registrant remains subject to the requirements of this Item and chooses to comply with this Item by posting its code on its website pursuant to paragraph (c)(2).

4.    The registrant does not need to provide any information pursuant to paragraphs (d) and (e) of this Item if it discloses the required information on its Internet website within five business days following the date of the amendment or waiver and the registrant has disclosed in its most recently filed annual report its Internet address and intention to provide disclosure in this manner. If the registrant elects to disclose the information required by paragraphs (d) and (e) through its website, such information must remain available on the website for at least a 12-month period. Following the 12-month period, the registrant must retain the information for a period of not less than five years. Upon request, the registrant must furnish to the Commission or its staff a copy of any or all information retained pursuant to this requirement.

5.    The registrant does not need to disclose technical, administrative or other non-substantive amendments to its code of ethics.

6.    For purposes of this Item 16B:

a. The term "waiver" means the approval by the registrant of a material departure from a provision of the code of ethics; and

b. The term "implicit waiver" means the registrant's failure to take action within a reasonable period of time regarding a material departure from a provision of the code of ethics that has been made known to an executive officer, as defined in Rule 3b-7 (§240.3b-7 of this chapter), of the registrant.

**Item 16C.    Principal Accountant Fees and Services.**

(a) Disclose, under the caption Audit Fees, the aggregate fees billed for each of the last two fiscal years for professional services rendered by the principal accountant for the audit of the registrant's annual financial statements or services that are normally provided by the accountant in connection with statutory and regulatory filings or engagements for those fiscal years.

(b) Disclose, under the caption Audit-Related Fees, the aggregate fees billed in each of the last two fiscal years for assurance and related services by the principal accountant that are reasonably related to the performance of the audit or review of the registrant's financial statements and are not reported under paragraph (a) of this Item. Registrants shall describe the nature of the services comprising the fees disclosed under this category.

(c) Disclose, under the caption Tax Fees, the aggregate fees billed in each of the last two fiscal years for professional services rendered by the principal accountant for tax compliance, tax advice, and tax planning. Registrants shall describe the nature of the services comprising the fees disclosed under this category.

(d) Disclose, under the caption All Other Fees, the aggregate fees billed in each of the last two fiscal years for products and services provided by the principal accountant, other than the services reported in paragraphs (a) through (c) of this Item. Registrants shall describe the nature of the services comprising the fees disclosed under this category.

(e)
  (1) Disclose the audit committee's pre-approval policies and procedures described in paragraph (c)(7)(i) of Rule 2-01 of Regulation S-X.
  (2) Disclose the percentage of services described in each of paragraphs (b) through (d) of this Item that were approved by the audit committee pursuant to paragraph (c)(7)(i)(C) of Rule 2-01 of Regulation S-X.

(f) If greater than 50 percent, disclose the percentage of hours expended on the principal accountant's engagement to audit the registrant's financial statements for the most recent fiscal year that were attributed to work performed by persons other than the principal accountant's full-time, permanent employees.

Instruction to Item 16C.

1. You do not need to provide the information called for by this Item 16C unless you are using this form as an annual report.

**Item 16D. Exemptions from the Listing Standards for Audit Committees.**

If applicable, provide the disclosure required by Exchange Act Rule 10A-3(d) (17 CFR 240.10A-3(d)) regarding an exemption from the listing standards for audit committees. You do not need to provide the information called for by this Item 16D unless you are using this form as an annual report.

**Item 16E Purchases of Equity Securities by the Issuer and Affiliated Purchasers.**

(a) In the following tabular format, provide the information specified in paragraph (b) of this Item with respect to any purchase made by or on behalf of the issuer or any "affiliated purchaser," as defined in §240.10b-18(a)(3), of shares or other units of any class of the issuer's equity securities that is registered by the issuer pursuant to section 12 of the Exchange Act (15 U.S.C. 78*l*).

**Issuer Purchases of Equity Securities**

| Period | (a) Total Number of Shares(0r Units) Puchased | (b) Average Price Paid per Share (or Units) | (c) Total Number of Shares (or Units) Purchased as Part of Publicly Announced Plans or Programs | (d) Maximum Number (or Approximate Dollar Value) of Shares ( or Units) that May Yet Be Purchased Under the Plans or Programs |
|---|---|---|---|---|
| Month # 1 (identify beginning and ending dates) | | | | |
| Month # 2 (identify beginning and ending dates) | | | | |
| Month # 3 (identify beginning and ending dates) | | | | |
| Month # 4 (identify beginning and ending dates) | | | | |
| Month # 5 (identify beginning and ending dates) | | | | |
| Month # 6 (identify beginning and ending dates) | | | | |
| Month # 7 (identify beginning and ending dates) | | | | |
| Month # 8 (identify beginning and ending dates) | | | | |
| Month # 9 (identify beginning and ending dates) | | | . | |
| Month # 10 (identify beginning and ending dates) | | | | |

| Period | (a) Total Number of Shares (0r Units) Puchased | (b) Average Price Paid per Share (or Units) | (c) Total Number of Shares (or Units) Purchased as Part of Publicly Announced Plans or Programs | (d) Maximum Number (or Approximate Dollar Value) of Shares ( or Units) that May Yet Be Purchased Under the Plans or Programs |
|---|---|---|---|---|
| Month # 11 (identify beginning | | | | |
| Month # 12 (identify beginning and ending  Total | | | | |

(b) The table shall include the following information for each class or series of securities for each month included in the period covered by the report:

(1) The total number of shares (or units) purchased (column (a)).

*Instruction to paragraph (b)(1) of Item 16E*

Include in this column all issuer repurchases, including those made pursuant to publicly announced plans or programs and those not made pursuant to publicly announced plans or programs. Briefly disclose, by footnote to the table, the number of shares purchased other than through a publicly announced plan or program and the nature of the transaction (e.g., whether the purchases were made in open-market transactions, tender offers, in satisfaction of the company's obligations upon exercise of outstanding put options issued by the company, or other transactions).

(2) The average price paid per share (or unit) (column (b)).
(3) The number of shares (or units) purchased as part of a publicly announced repurchase plan or program (column (c)).
(4) The maximum number (or approximate dollar value) of shares (or units) that may yet be purchased under the plans or programs (column (d)).

*Instructions to paragraphs (b)(3) and (b)(4) of Item 16E*

1. In the table, disclose this information in the aggregate for all plans or programs publicly announced.

2. By footnote to the table, indicate:
    a. The date each plan or program was announced;
    b. The dollar amount (or share or unit amount) approved;
    c. The expiration date (if any) of each plan or program;
    d. Each plan or program that has expired during the period covered by the table; and
    e. Each plan or program the issuer has determined to terminate prior to expiration, or under which the issuer does not intend to make further purchases.

Instruction to Item 16E

Disclose all purchases covered by this item, including purchases that do not satisfy the conditions of the safe harbor of §240.10b-18. Price data and other data should be stated in the same currency used in the issuer's primary financial statements provided in Item 8 of this Form.

**PART III**
*[See General Instruction E(c)]*

**Item 17.    Financial Statements.**

(a)    The registrant shall furnish financial statements for the same fiscal years and accountants' certificates that would be required to be furnished if the registration statement were on Form 10 or the annual report on Form 10-K. Schedules designated by §§ 210.12-04, 210.12-09, 210.12-15, 210.12-16, 210.12-17, 210.12-18, 210.12-28, and 210.12-29 of this chapter shall be furnished if applicable to the registrant.

(b)    The financial statements shall disclose an information content substantially similar to financial statements that comply with U.S. generally accepted accounting principles and Regulation S-X.

(c)    The financial statements and schedules required by paragraph (a) above may be prepared according to U.S. generally accepted accounting principles. Alternatively, such financial statements and schedules may be prepared according to a comprehensive body of accounting principles other than those generally accepted in the United States if the following are disclosed:

   (1)    An indication, in the accountant's report or in a reasonably prominent headnote before the financial statements, of the comprehensive body of accounting principles used to prepare the financial statements.

   (2)    A discussion of the material variations in the accounting principles, practices, and methods used in preparing the financial statements from the principles, practices, and methods generally accepted in the United States and in Regulation S-X. Such material variations shall be quantified in the following format:

      (i)    For each year and any interim periods for which an income statement is presented, net income shall be reconciled in a tabular format, substantially similar to the one shown below, on the face of the income statement or in a note thereto. Each material variation shall be described and quantified as a separate reconciling item, but several material variations may be combined on the face of the income statement if shown separately in a note. However, reconciliation of net income of the earliest of the three years may be omitted if that information has not previously been included in a filing made under the Securities Act or Exchange Act.

| | |
|---|---|
| Net income as shown in the financial statements ............... | XXX |
| | |
| Description of items having the effect of increasing reported income | |
| Item 1 ...................................................................... | XXX |
| Item 2, etc. .................................................... ........... | XXX |
| | |
| Description of items having the effect of decreasing reported income | |
| Item 1 ...................................................................... | (XXX) |
| Item 2, etc. .............................................................. | (XXX) |
| | |
| Net income according to generally accepted accounting principles in the United States ........................................... | <u>XXX</u> |

      (ii)    For each balance sheet presented, indicate the amount of each material variation between an amount of a line item appearing in a balance sheet and the amount determined using U.S. generally accepted accounting principles and Regulation S-X. Such amounts may be shown in parentheses, in columns, as a reconciliation of the equity section, as a restated balance sheet, or in any similar format that clearly presents the differences in the amounts.

      (iii)    For each period for which an income statement is presented and required to be reconciled to generally accepted accounting principles in the United States, provide either a statement of cash flows prepared

in accordance with generally accepted accounting principles in the United States or with International Accounting Standard No. 7, as amended in October 1992; or furnish in a note to the financial statements a quantified description of the material differences between cash or funds flows reported in the primary financial statements and cash flows that would be reported in a statement of cash flows prepared in accordance with accounting principles generally accepted in the United States.

(iv)    (A)    Issuers that prepare their financial statements on a basis of accounting other than U.S. generally accepted accounting principles in a reporting currency that comprehensively includes the effects of price level changes in its primary financial statements using the historical cost/constant currency or current cost approach, may omit the disclosures specified by paragraphs (c)(2)(i), (c)(2)(ii), and (c)(2)(iii) of this Item relating to effects of price level changes.  The financial statements should describe the basis of presentation, and that such effects have not been included in the reconciliation.

      (B)    Issuers that prepare their financial statements on a basis of accounting other than U.S. generally accepted accounting principles that translates amounts in financial statements stated in a currency of a hyperinflationary economy into the issuer's reporting currency in accordance with International Accounting Standards No. 21, "The Effects of Changes in Foreign Exchange Rates," as amended in 1993, using the historical cost/constant currency approach, may omit the disclosures specified by paragraphs (c)(2)(i), (c)(2)(ii), and (c)(2)(iii) of this Item relating to the effects of the different method of accounting for an entity in a hyperinflationary environment.

      (C)    If the method of accounting for an operation in a hyperinflationary economy complies with IAS 21, a statement to that effect must be included in the financial statements.  The reconciliation shall state that such amounts presented comply with Item 17 of Form 20-F and are different from that required by U.S. generally accepted accounting principles.

(v)    Issuers that prepare financial statements on a basis of accounting other than U.S. generally accepted accounting principles that are furnished for a business acquired or to be acquired pursuant to §210.305 of this chapter may omit the disclosures specified by paragraphs (c)(2)(i), (c)(2)(ii) and (c)(2)(iii) of this Item if the conditions specified in the definition of a significant subsidiary in § 210.1-02(v) of this chapter do not exceed 30 percent.

(vi)    Issuers that prepare financial statements on a basis of accounting other than U.S. generally accepted accounting principles that are furnished for a less-than-majority-owned investee pursuant to §210.309 of this chapter may omit the disclosures specified by paragraphs (c)(2)(i), (c)(2)(ii) and (c)(2)(iii) of this Item if the first and third conditions specified in the definition of a significant subsidiary in §210.102(v) of this chapter do not exceed 30 percent.

(vii)    Issuers that prepare financial statements on a basis of accounting other than U.S. generally accepted accounting principles that allows proportionate consolidation for investments in joint ventures that would be accounted for under the equity method pursuant to U.S. generally accepted accounting principles may omit differences in classification or display that result from using proportionate consolidation in the reconciliation to U.S. generally accepted accounting principles specified by paragraphs (c)(2)(i), (c)(2)(ii) and (c)(2)(iii) of this Item; *Provided*, the joint venture is an operating entity, the significant financial operating policies of which are, by contractual arrangement, jointly controlled by all parties having an equity interest in the entity.  Financial statements that are presented using proportionate consolidation must provide summarized balance sheet and income statement information using the captions specified in §210.1-02(aa) of this chapter and summarized cash flow information resulting from operating, financing and investing activities relating to its pro rata interest in the joint venture.

(viii)    Issuers that prepare financial statements on a basis of accounting other than U.S. generally accepted accounting principles and which basis conforms with the guidance in International Accounting Standards No. 22, as amended in 1993, with respect to the period of amortization of goodwill and negative goodwill may omit the disclosures specified by paragraphs (c)(2)(i), (c)(2)(ii), and (c)(2)(iii) of this Item

regarding the effects of differences attributable solely to the period of amortization. Goodwill and negative goodwill that is subject to the amortization period under IAS 22 is based on the amount determined in accordance with U.S. generally accepted accounting principles.

*Instructions:*

1. *If the variations quantified pursuant to paragraph (c) are significant, the registrant should consider presenting them on the face of the financial statements.*

2. *Earnings per share computed according to generally accepted accounting principles in the United States shall be presented if materially different from the earnings per share otherwise presented.*

3. *If the registrant presents its financial statements according to generally accepted accounting principles in the United States except for SFAS No. 131 and if it furnishes the information relating to categories of activity required by Items 4.B.1 and 4.B.2 of Form 20-F, then such financial statements will be considered to comply with this Item, even if the auditor's report is qualified for noncompliance with SFAS No. 131. Such report and financial statements, however, must comply with all other applicable requirements.*

4. *If the cash flows statement prepared under the basis of accounting used in the primary financial statements complies with International Accounting Standard No. 7 or U.S. generally accepted accounting principles, a statement to this effect must be included in the financial statements or the accountant's report. If the cash flows statement in the primary financial statements is prepared in accordance with either U.S. generally accepted accounting principles or International Accounting Standard No. 7 but such presentation departs from the comprehensive body of accounting principles otherwise followed in the financial statements, the reference to the departure in the accountant's report must identify the body of accounting standards used in preparing the cash flow statement. If a supplemental cash flows statement that complies with either International Accounting Standards or U.S. generally accepted accounting principles is furnished in a note to the financial statements, the body of accounting standards used in preparing the statement must be indicated. The basis of presentation must be consistent for all periods.*

5. *For purposes of this Item, a hyperinflationary economy is one that has cumulative inflation of approximately 100% or more over the most recent three year period.*

6. (a) *A business combination which would be deemed a uniting of interests under International Accounting Standards No. 22, as amended in 1993 ("IAS 22"), and was accounted for using that method in the primary financial statements may be deemed to be, for purposes of the reconciliation to U.S. generally accepted accounting principles, a pooling of interests. A business combination which would be deemed an acquisition under IAS 22 and was accounted for using that method in the primary financial statements may be deemed to be, for purposes of the reconciliation to U.S. generally accepted accounting principles, a purchase. This paragraph is not applicable for promoter transactions, leveraged buyouts, mergers of entities under common control, reverse acquisitions and other transactions not addressed by IAS 22. Once the method of accounting is determined, the reconciliation to U.S. generally accepted accounting principles should quantify differences between the balances in the primary financial statements and the amounts determined in accordance with U.S. generally accepted accounting principles as required by this Item.*

   (b) *To obtain relief from the reconciliation requirement regarding the method of accounting, or the amortization period of goodwill or negative goodwill, the primary financial statements should apply the respective provisions of IAS 22 to all business combinations consummated on or after January 1, 1995. Issuers can either retroactively adopt IAS 22 in the primary financial statements for all business combinations consummated prior to January 1, 1995, or provide a full reconciliation to U.S. generally accepted accounting principles for such prior business combinations.*

   (c) *If the method of accounting for a business combination and/or the provisions for amortization of goodwill or negative goodwill complies with IAS 22, a statement to that effect must be included in the financial statements. The reconciliation shall state that the amounts presented comply with Item 17 of Form 20-F and are different from that required by U.S. generally accepted accounting principles.*

**Item 18.**     **Financial Statements.**

Provide the following information:

(a)     All of the information required by Item 17 of this Form, and

(b)     All other information required by U.S. generally accepted accounting principles and Regulation S-X unless such requirements specifically do not apply to the registrant as a foreign issuer. However, information may be omitted (i) for any period in which net income has not been presented on a basis reconciled to United States generally accepted accounting principles, or (ii) if the financial statements are furnished for a business acquired or to be acquired pursuant to §210.3-05 or less-than-majority-owned investee pursuant to §210.3-09 of this chapter.

*Instruction to Item 18: All of the instructions to Item 17 also apply to this Item, except Instruction 3 to Item 17, which does not apply.*

**Item 19.**     **Exhibits.**

List all exhibits filed as part of the registration statement or annual report, including exhibits incorporated by reference.

*Instruction to Item 19: If you incorporate any financial statement or exhibit by reference, include the incorporation by reference in the list required by this Item. Note Rule 12b-23 regarding incorporation by reference. Note also the Instructions to Exhibits at the end of this Form.*

## SIGNATURES

The registrant hereby certifies that it meets all of the requirements for filing on Form 20-F and that it has duly caused and authorized the undersigned to sign this registration statement [annual report] on its behalf.

_____

(Registrant)

_____

(Signature)*

Date: _____

*Print the name and title of the signing officer under this signature.

## INSTRUCTIONS AS TO EXHIBITS

File the exhibits listed below as part of an Exchange Act registration statement or report. Exchange Act Rule 12b-32 explains the circumstances in which you may incorporate exhibits by reference. Exchange Act Rule 24b-2 explains the procedure to be followed in requesting confidential treatment of information required to be filed.

Previously filed exhibits may be incorporated by reference. If any previously filed exhibits have been amended or modified, file copies of the amendment or modification or copies of the entire exhibit as amended or modified.

If the Form 20-F registration statement or annual report requires the inclusion, as an exhibit or attachment, of a document that is in a foreign language, you must provide instead either an English translation or an English summary of the foreign language document in accordance with Exchange Act Rule 12b-12(d) (17 CFR 240.12b-12(d)) for both electronic and paper filings. You may submit a copy of the unabridged foreign language document along with the English translation or summary as permitted by Regulation S-T Rule 306(b) (17 CFR 232.306(b)) for electronic filings or by Exchange Act Rule 12b-12(d)(4) (17 CFR 240.12b-12(d)(4)) for paper filings.

Include an exhibit index in each registration statement or report you file, immediately preceding the exhibits you are filing. The exhibit index must list each exhibit according to the number assigned to it below. If an exhibit is incorporated by reference, note that fact in the exhibit index. For paper filings, the pages of the manually signed original registration statement should be numbered in sequence, and the exhibit index should give the page number in the sequential numbering system where each exhibit can be found.

1.      The articles of incorporation or association and bylaws, or comparable instruments, as currently in effect and any amendments to those documents. If you are filing an amendment, file a complete copy of the document as amended.

2.    (a)    All instruments defining the rights of holders of the securities being registered. You do not have to file instruments that define the rights of participants, rather than security holders, in an employee benefit plan.

      (b)    All instruments defining the rights of holders of long-term debt issued by you or any subsidiary for which you are required to file consolidated or unconsolidated financial statements, except that you do not have to file:

            (i)    Any instrument relating to long-term debt that is not being registered on this registration statement, if the total amount of securities authorized under that instrument does not exceed 10% of the total assets of you and your subsidiaries on a consolidated basis and you have filed an agreement to furnish us a copy of the instrument if we request it;

            (ii)    Any instrument relating to a class of securities if, on or before the date you deliver the securities being registered, you take appropriate steps to assure that class of securities will be redeemed or retired; or

            (iii)    Copies of instruments evidencing script certificates for fractions of shares.

      (c)    A copy of the indenture, if the securities being registered are or will be issued under an indenture qualified under the Trust Indenture Act of 1939. Include a reasonably itemized and informative table of contents and a cross-reference sheet showing the location in the indenture of the provisions inserted pursuant to sections 310 through 318(a) inclusive of the Trust Indenture Act.

3.      Any voting trust agreements and any amendments to those agreements.

4.    (a)    Every contract that is material to you and (i) is to be performed in whole or in part on or after the date you file the registration statement or (ii) was entered into not more than two years before the filing date. Only file a contract if you or your subsidiary is a party or has succeeded to a party by assumption or assignment or if you or your subsidiary has a beneficial interest.

      (b)    If a contract is the type that ordinarily accompanies the kind of business you and your subsidiaries conduct, we will consider it have been made in the ordinary course of business and will not require you to file it, unless it falls within one or more of the following categories. Even if it falls into one of these categories, you do not have to file the contract if it is immaterial in amount or significance.

            (i)    Any contract to which (A) directors, (B) officers, (C) promoters, (D) voting trustees or (E) security holders named in the registration statement are parties, unless the contract involves only the purchase or sale of current assets that have a determinable market price and the assets are purchased or sold at that price;

            (ii)    Any contract upon which your business is substantially dependent. Examples of these types of contracts might be (a) continuing contracts to sell the major part of your products or services or to purchase the major part of your requirement of goods, services or raw materials, or (b) any franchise or license or other agreement to use a patent, formula, trade secret, process or trade name if your business depends to a material extent on that patent, formula, trade secret processor trade name;

            (iii)    Any contract for the acquisition or sale of any property, plant or equipment if the consideration exceeds 15% of your fixed assets on a consolidated basis; or

(iv)    Any material lease under which you hold part of the property described in the registration statement.

(c)    We will consider any management contract or compensatory plan, contract or arrangement in which your directors or members of your administrative, supervisory or management bodies participate to be material. File these management contracts or compensatory plans, contracts or arrangements unless they fall into one of the following categories:

(i)    Ordinary purchase and sale agency agreements;

(ii)    Agreements with managers of stores in a chain or similar organization;

(iii)    Contracts providing for labor or salesmen's bonuses or for payments to a class of security holders in their capacity as security holders;

(iv)    Any compensatory plan, contract or arrangement that is available by its terms to employees, officers or directors generally, if the operation of the plan, contract or arrangement uses the same method to allocate benefits to management and nonmanagment participants; and

(v)    Public filing of the management contract or compensatory plan, contract or arrangement, or portion thereof, is not required in the company's home country and is not otherwise publicly disclosed by the company.

If you are filing compensatory plans, contracts or arrangements, only file copies of the plans and not copies of each individual's personal agreement under the plans, unless there are particular provisions in a personal agreement that should be filed as an exhibit so investors will understand that individual's compensation under the plan.

5.    A list showing the number and a brief identification of each material foreign patent for an invention not covered by a United States patent, but only if we request you to file the list.

6.    A statement explaining in reasonable detail how earnings per share information was calculated, unless the computation is clear from material contained in the registration statement or report.

7.    A statement explaining in reasonable detail how any ratio of earning to fixed charges, any ratio of earnings to combined fixed charges and preferred stock dividends or any other ratios in the registration statement or report were calculated.

8.    A list of all your subsidiaries, their jurisdiction of incorporation and the names under which they do business. You may omit the names of subsidiaries that, in the aggregate, would not be a "significant subsidiary" as defined in rule 1-02(w) of Regulation S-X as of the end of the year covered by the report. You may omit the names of multiple wholly owned subsidiaries carrying on the same line of business, such as chain stores or service stations, if you give the name of the immediate parent company, the line of business and the number of omitted subsidiaries broken down by U.S. and foreign operations.

9.    Statement pursuant to the instructions to Item 8.A.4, regarding the financial statements filed in registration statements for initial public offerings of securities.

10.    Any notice required by Rule 104 of Regulation BTR (17 CFR 245.104 of this chapter) that you sent during the past fiscal year to directors and executive officers (as defined in 17 CFR 245.100(d) and (h) of this chapter) concerning any equity security subject to a blackout period (as defined in 17 CFR 245.100(c) of this chapter) under Rule 101 of Regulation BTR (17 CFR 245.101 of this chapter). Each notice must have included the information specified in 17 CFR 245.104(b) of this chapter.

**Note:** The exhibit requirement in paragraph (10) applies only to an annual report, and not to a registration statement, on Form 20-F. The Commission will consider the attachment of any Rule 104 notice as an exhibit to a timely filed Form 20-F annual report to satisfy an issuer's duty to notify the Commission of a blackout period in a timely manner. Although an issuer need not submit a Rule 104 notice under cover of a Form 6-K, if an issuer has already submitted this notice under cover of Form 6-K, it need not attach the notice as an exhibit to a Form 20-F annual report.

11.    Any code of ethics, or amendment thereto, that is the subject of the disclosure required by Item 16B of Form 20-F, to the extent that the registrant intends to satisfy the Item 16B requirements through filing of an exhibit.

12.    The certifications required by Rule 13a-14(a) (17 CFR 240.13a-14(a)) or Rule 15d-14(a) (17 CFR 240.15d-14(a)) exactly as set forth below:

## CERTIFICATIONS*

I, [identify the certifying individual], certify that:

1.  I have reviewed this annual report on Form 20-F of [identify company];

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report;

4.  The company's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the company and have:

    (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    (b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    (c) Evaluated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (d) Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the company's internal control over financial reporting; and

5.  The company's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the company's auditors and the audit committee of the company's board of directors (or persons performing the equivalent functions):

    (a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and

    (b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

Date:_____

_____
[Signature]

_____
[Title]

\* Provide a separate certification for each principal executive officer and principal financial officer of the company. See Rules 13a-14(a) and 15d-14(a).

13.   (a)      The certifications required by Rule 13a-14(b) (17 CFR 240.13a-14(b)) or Rule 15d-14(b) (17 CFR 240.15d-14(b)) and Section 1350 of Chapter 63 of Title 18 of the United States Code (18 U.S.C. 1350).

(b)    A certification furnished pursuant to Rule 13a-14(b) (17 CFR 240.13a-14(b)) or Rule 15d-14(b) (17 CFR 240.15d-14(b)) and Section 1350 of Chapter 63 of Title 18 of the United States Code (18 U.S.C. 1350) will not be deemed "filed" for purposes of Section 18 of the Exchange Act [15 U.S.C. 78r], or otherwise subject to the liability of that section. Such certification will not be deemed to be incorporated by reference into any filing under the Securities Act or the Exchange Act, except to the extent that the company specifically incorporates it by reference.

14.    The legal opinion required by Instruction 3 of Item 7.B of this Form

15.    (a)    Any additional exhibits you wish to file as part of the registration statement or report, clearly marked to indicate their subject matter, and

       (b)    any document or part of a document incorporated by reference in this filing if it is not otherwise required to be filed or is not a Commission filed document incorporated in a Securities Act registration statement.

16 through 99  [Reserved]

100.    *XBRL-Related Documents*. XBRL-Related Documents (§232.11 of this chapter).

## APPENDIX A TO ITEM 4.D — OIL AND GAS

**Reserve and Production Disclosure.**

Registrants specified in Item 4.D shall furnish the following information under appropriate captions (in tabular form if practicable, and with cross reference, where applicable, to related information disclosed in financial statements):

*(a) Reserves.* As of the end of each of the last three fiscal years (but not for fiscal years ending prior to December 31, 1979), estimated net quantities of: (i) proved oil and gas reserves; (ii) proved developed oil and gas reserves; and (iii) oil and gas applicable to long-term supply or similar agreements with foreign governments or authorities in which the registrant acts as producer.

*Instructions.* 1. The following definitions shall apply to this Appendix:
(i)    Proved oil and gas reserves. Proved oil and gas reserves are the estimated quantities of crude oil, natural gas, and natural gas liquids which geological and engineering data demonstrate with reasonable certainty to be recoverable in future years from known reservoirs under existing economic and operating conditions, i.e., prices and costs as of the date the estimate is made. Prices include consideration of changes in existing prices provided only by contractual arrangements, but not on escalations based upon future conditions.

       (A)    Reservoirs are considered proved if economic producibility is supported by either actual production or conclusive formation test. The area of a reservoir considered proved includes (1) that portion delineated by drilling and defined by gas-oil and/or oil-water contacts, if any, and (2) the immediately adjoining portions not yet drilled, but which can be reasonably judged as economically productive on the basis of available geological and engineering data. In the absence of information on fluid contacts, the lowest known structural occurrence of hydrocarbons controls the lower proved limit of the reservoir.
       (B)    Reserves which can be produced economically through application of improved recovery techniques (such as fluid injection) are included in the ''proved'' classification when successful testing by a pilot project, or the operation of an installed program in the reservoir, provides support for the engineering analysis on which the project or program was based.
       (C)    Estimates of proved reserves do not include the following: (1) oil that may become available from known reservoirs but is classified separately as "indicated additional reserves;" (2) crude oil, natural gas, and natural gas liquids, the recovery of which is subject to reasonable doubt because of uncertainty as to geology, reservoir characteristics, or economic factors; (3) crude oil, natural gas, and natural gas liquids, that may occur in undrilled prospects; and (4) crude oil, natural gas, and natural gas liquids, that may be

recovered from oil shales, coal, gilsonite and other such sources.

(ii)    Proved developed oil and gas reserves. Proved developed oil and gas reserves are reserves that can be expected to be recovered through existing wells with existing equipment and operating methods. Additional oil and gas expected to be obtained through the application of fluid injection or other improved recovery techniques for supplementing the natural forces and mechanisms of primary recovery should be included as "proved developed reserves" only after testing by a pilot project or after the operation of an installed program has confirmed through production response that increased recovery will be achieved.

(iii)   Other definitions. The definitions in Rule 210.4-10(a) of Regulation S-X (§210.4-10(a) of this chapter) shall apply to this Appendix.

2. If any foreign government restricts the disclosure of estimated reserves for properties under its governmental authority, or amounts under long-term supply, purchase, or similar agreements, or if the foreign government requires the disclosure of reserves other than proved, the registrant should notify the Office of Engineering, Division of Corporation Finance, of the Commission. If the required information is not disclosed or if categories of reserves other than proved are disclosed for these reasons, the document should identify the country, cite the law or regulation which restricts or requires such disclosure, and indicate that the reported reserve estimates or amounts do not include figures for the named country or that the reserve estimates include reserves other than proved.

3. If these reserves are located entirely within the registrant's home country, that fact shall be disclosed. If some or all of the reserves are located in foreign countries, the disclosure of net quantities of reserves of oil and gas shall be separately reported for the entity's home country (if significant reserves are located there) and each foreign geographic area in which significant reserves are located. Foreign geographic areas are individual countries or groups of countries, as appropriate, for meaningful disclosure in the circumstances.

4. Disclosure shall be given of the effect on ownership of reserves of any takeover or nationalization within the most recent fiscal year by foreign governments of properties owned by the registrant, including any change of a property interest into a long-term supply, purchase, or similar agreement.

*[end of Instructions to paragraph (a)].*

(b) *Production.* Net quantities of oil (including condensate and natural gas liquids) and of gas produced for each of the last three fiscal years (but not for fiscal years ending prior to December 31, 1979) and the net quantities of each received during each of these years applicable to long-term supply or similar agreements with foreign governments or authorities in which the registrant acts as producer, by areas no larger than the geographic areas used for estimated reserves in paragraph (a) above.

*Instructions.*

1.    Generally, net production should include only production that is owned by the registrant and produced to its interest, less royalties and production due others. However, in special situations (e.g., foreign production) net production before royalties may be provided if more appropriate. If ''net before royalty'' production figures are furnished, the change from the common usage of ''net production'' shall be noted.

2.    2. Any part of natural gas liquids production obtained through or from plant ownership rather than through leasehold ownership should be reported separately, if material.