Douglas J. Clark (DC-8309)
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

Gideon A. Schor (GS-5932)
Kenneth M. Murray (KM-8728)
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Facsimile:   (212) 999-5899

*Attorneys for Defendants*
*Xinhua Finance Media Limited, Fredy Bush and*
*Shelly Singhal*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE XINHUA FINANCE MEDIA, LTD. SECURITIES LITIGATION<br><br><br>This Document Relates To:<br><br>ALL ACTIONS | **MASTER FILE 07 Civ. 3994 (LTS)**<br><br>**XINHUA DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................3

I. THE COMPLAINT FAILS TO STATE A SECTION 11 CLAIM.........................................3

    A. Plaintiffs Do Not Identify A Specific Legal Obligation To Disclose.........................3

    B. Regulations Applicable To Foreign Private Issuers Do Not Require
        Disclosure Of The Information That Plaintiffs Allege Was Wrongfully
        Omitted .................................................................................................................5

        Form F-1 Is Not Made Inapplicable Or Irrelevant By Virtue Of
        Regulation C .........................................................................................................6

        The SEC's Policy Decision To Reduce Disclosure Obligations Deserves
        Deference..............................................................................................................7

    C. No Untrue Statement Is Alleged In The Prospectus ...................................................12

    D. There Is No Omission Of A Material Fact Necessary To Make The
        Statements Made Not Misleading..............................................................................12

        The Omissions Concern Asserted Mismanagement, Which Need Not Be
        Disclosed .............................................................................................................14

        The Regulations Applicable To Foreign Private Issuers Are Relevant To
        Show That The Omitted Facts Are Not Material ......................................................17

    E. There Was No Failure To Disclose Acquisitions That "Enriched Insiders" ............19

II. THE COMPLAINT FAILS TO STATE A SECTION 12 CLAIM.....................................19

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. High-Income Trust v. Alliedsignal*, 329 F. Supp. 2d 534 (S.D.N.Y. 2004) ........................ 19, 20

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .................................................... 3

*Chevron U.S.A., Inc. v. Natural Res. Def. Council Inc.*, 467 U.S. 837 (1984)................................ 10

*Ciresi v. Citicorp.*, 782 F. Supp. 819 (S.D.N.Y. 1991), *aff'd*, 956 F.2d 1161 (2d Cir.
    1992) .......................................................................................... 17

*Cooperman v. Individual, Inc.*, 171 F.3d 43 (1st Cir. 1999).............................................. 13

*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005) ........................ 10

*DeMaria v. Andersen*, 153 F. Supp. 2d 300 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170
    (2d Cir. 2003)................................................................................. 20

*De Vries v. Tower Semiconductor Ltd.*, No. 03 Civ. 04999 (KMW), 2004 WL
    4088358 (S.D.N.Y. Aug. 23, 2004), *aff'd sub nom. Schiller v. Tower
    Semiconductor, Ltd.*, 449 F.3d 286 (2d Cir. 2006) ........................................ 3, 7, 12

*Donovan v. Am. Skandia Life Assurance Corp.*, No. 02 Civ. 9859 (MP), 2003 WL
    21757260 (S.D.N.Y. July 31, 2003), *aff'd*, 96 Fed. Appx. 779 (2d Cir. 2004)
    (unpublished) ................................................................................. 12

*Fisher v. Ross*, No. 93 Civ. 0275 (JGK), 1996 WL 586345 (S.D.N.Y. Oct. 11,
    1996) ......................................................................................... 17

*GAF Corp. v. Heyman*, 724 F.2d 727 (2d Cir. 1983)................................................*passim*

*Galati v. Commerce Bancorp, Inc.*, No. 04 Civ. 3252 (RBK), 2005 WL 3797764
    (D.N.J. Nov. 7, 2005) .......................................................................... 13

*Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008), *appeal
    docketed*, No. 08-1831-CV (2d Cir. Apr. 16, 2008) ........................................... 3, 5

*Gebhardt v. ConAgra Foods*, Inc., 335 F.3d 824 (8th Cir. 2003) .................................... 16

*Geiger v. The Solomon-Page Group, Ltd.*, 933 F. Supp. 1180 (S.D.N.Y. 1996)....................... 17, 18

*General Electric Co. v. Cathcart*, 980 F.2d 927 (3d Cir. 1992) ....................................... 18

*Greenhouse v. MCG Capital Corp.*, 392 F.3d 659 (4th Cir. 2004).................................... 16

*Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983) ............................................ 4

*Hockey v. Medhekar*, 30 F. Supp. 2d 1209 (N.D. Cal. 1998) ........................................ 20

*I. Meyer Pincus & Assocs. P.C., v. Oppenheimer & Co.*, 936 F.2d 759 (2d Cir. 1991) ...................................................................................................................14

*In re Alliance Pharms. Corp. Sec. Litig.*, 279 F. Supp. 2d 171 (S.D.N.Y. 2003) ............................13

*In re Arbinet-thexchange, Inc.*, No. 05 Civ. 4404 (JLL), 2006 WL 3831396 (D.N.J. Dec. 28, 2006).......................................................................................................13

*In re Citigroup, Inc. Securities Litigation*, 330 F. Supp. 2d 367 (S.D.N.Y. 2004) ..............14, 15, 17

*In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357 (3d Cir. 1993) ..........................................19

*In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865 (RMB), 2004 U.S. Dist. Lexis 9913 (S.D.N.Y. May 18, 2004) .......................................................................................3

*In re Merrill Lynch & Co., Research Reports Sec. Litig.*, 289 F. Supp. 2d 429 (S.D.N.Y. 2003)..................................................................................................6, 11

*In re Morgan Stanley Derivative Litig.*, No. 05 Civ. 6516 (LTS), 2008 WL 820718 (S.D.N.Y. March 27, 2008)........................................................................................12

*In re N2K, Inc. Securities Litigation*, 82 F. Supp. 2d 204 (S.D.N.Y. 2000), *aff'd per curiam*, 202 F.3d 81 (2d Cir. 2000)....................................................................4, 5, 8

*In re Prestige Brands Holding, Inc.*, No. 05 Civ. 06924 (CLB), 2006 WL 2147719 (S.D.N.Y. July 10, 2006) ...........................................................................................20

*In re Top Tankers, Inc. Sec. Litig.*, 528 F. Supp. 2d 408 (S.D.N.Y. 2007) ....................................7

*In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678 (S.D.N.Y. 2000) ....................................19, 20

*In the Matter of Franchard Corp.*, File No. 2-16936, 2-18633, 2-19405, 1964 WL 67454 (S.E.C. July 31, 1964) .............................................................................16

*J&R Mktg. v. General Motors Corp.*, 519 F.3d 552 (6th Cir. 2008).......................................3, 5, 13

*Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726 (2d Cir. 1987) .............................................4

*Lerner v. FNB Rochester Corp.*, 841 F. Supp. 97 (W.D.N.Y. 1993) ..............................................17

*Lewis v. Potlatch Corp.*, 716 F. Supp. 807 (S.D.N.Y. 1989).........................................................19

*Marsh & McLennan Cos., Inc., Sec. Litig.*, 536 F. Supp. 2d 313 (S.D.N.Y. 2007).............13, 14, 15

*Menkes v. Stolt-Nielsen S.A.*, No. 03 Civ. 409 (DJS), 2005 WL 3050970 (D. Conn. Nov. 10, 2005) .......................................................................................................5, 13

*Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220 (S.D.N.Y. 1999) ..............................................5

*Natural Res. Def. Council v. S.E.C.*, 389 F. Supp. 689 (D.D.C. 1974) ...........................................10

*Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182 (11th Cir. 2002)..............................................4

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, No. 06 Civ. 12967 (PAC), 2008
WL 650292 (S.D.N.Y. March 11, 2008) ........................................................ 3, 5, 12

*Platsis v. E.F. Hutton & Co.*, 642 F. Supp. 1277 (W.D. Mich. 1986), *aff'd per
curiam*, 829 F.2d 13 (6th Cir. 1987) ................................................................. 18

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ............................................... 3

*Seibert v. Sperry Rand Corp.*, 586 F.2d 949 (2d Cir. 1978) ........................... 1, 13

*Sheppard v. TCW/DW Term Trust 2000*, 938 F. Supp. 171 (S.D.N.Y. 1996) ............... 19

*Shikles v. Sprint/United Management Company*, 426 F.3d 1304 (10th Cir. 2005)............ 11

*United States v. Matthews*, 787 F.2d 38 (2d Cir. 1986) ............................... 15, 17

*United States v. Mead Corp.*, 533 U.S. 218 (2001)............................................ 10

*United States v. Yuzary*, 55 F.3d 47 (2d Cir. 1995)......................................... 10

*Zell v. Intercapital Income Sec., Inc.*, 675 F.2d 1041 (9th Cir. 1982) ............... 16

## STATUTES, RULES AND REGULATIONS

5 U.S.C. § 553(b)(2) ......................................................................................... 10

5 U.S.C. § 553(b)(3) ......................................................................................... 10

15 U.S.C. § 77(g) ........................................................................................... 9, 11

15 U.S.C. § 77(j) ............................................................................................ 9, 11

15 U.S.C. § 77(s) ........................................................................................... 9, 11

15 U.S.C. § 77k(a) ............................................................................................ 4

15 U.S.C. § 77aa ............................................................................................... 9

17 C.F.R. § 229.401(f) ....................................................................................... 6

17 C.F.R. § 230.408(a) ...................................................................................... 6

## MISCELLANEOUS

Adoption of Foreign Issuer Integrated Disclosure System, Exchange Act Release
No. 33-6437, 7 Fed. Sec. L. Rep. (CCH) ¶ 72,407, 1982 WL 35947 (Dec. 6,
1982) ..................................................................................................... 9, 10

Adoption of Integrated Disclosure System for Foreign Private Issuers, Exchange
Act Release No. 33-6360, [1981-1982] Fed. Sec. L. Rep. (CCH) ¶ 83,054,
1981 WL 29914 (Nov. 20, 1981) .......................................................... 10

Form F-1, 2 Fed. Sec. L. Rep. (CCH) ¶ 6951 .......................................... 10

## INTRODUCTION

More than twenty years ago, the Second Circuit ruled that there is no duty to disclose unproven allegations of the sort alleged here. *GAF Corp. v. Heyman*, 724 F.2d 727, 743 (2d Cir. 1983). Otherwise, the Court warned,

> [v]ast numbers of allegations arguably implicate a prospective director's "integrity and fitness." The ruling below, if left intact, would lead to a situation where proxy contestants, in order to minimize the risk of having an election set aside, would have to include in their solicitation materials descriptions, explanations, and denials regarding allegations in derivative actions, class actions, matrimonial disputes, and a host of other legal matters, all unrelated to the business of the subject corporation.

*Id.* The *GAF* Court's prescient reasoning is apropos here. Of all the legal proceedings alleged in the Complaint,[1] only one suit named Mr. Singhal as a defendant,[2] and the court in that one suit has now *dismissed the complaint with prejudice as against Singhal*. *See* Schor Supp. Dec., Ex. 8 (order of 2/4/08). That court also recently *granted the motion for summary judgment filed by SBI*, the company Singhal founded, and dismissed all claims against it. *See* Schor Supp. Dec., Exs. 8, 9 (order of 3/14/08). Thus, the Complaint in this case does not allege a single proceeding pending against Singhal, and has never alleged a single judgment or injunction against Singhal. Rather, the Complaint alleges purely guilt by association, identifying only suits that did *not* name Singhal as a defendant and that involved acts *totally unrelated to Xinhua*. Including these proceedings in the Prospectus would simply have "swamp[ed] shareholders in an 'avalanche of trivial information . . . that is hardly conducive to informed decisionmaking.'" *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 951 (2d Cir. 1978) (citation omitted). Because the exclusion of such allegations from the Prospectus is not actionable, this Motion should be granted.

The Xinhua Defendants' other arguments also warrant granting of this Motion. The Xinhua Defendants demonstrated in their Opening Brief that this lawsuit was particularly baseless,

---

[1] All abbreviations and short forms defined in the Xinhua Defendants' opening brief ("Opening Brief" or "DOB") are incorporated herein by reference.

[2] CAC ¶ 25(e)-(l) (RICO action in *National Account Management*). Plaintiffs did not allege that Xinhua was a defendant in any cases identified in the Complaint or that any of the claims in such cases concerned Xinhua in any manner.

given that Xinhua, as a foreign private issuer, was not required to disclose legal proceedings that undisputedly do not implicate Xinhua. The Xinhua Defendants further demonstrated that the SEC's policy decision to reduce disclosure obligations for foreign private issuers was sound and deserves deference. In addition, the Xinhua Defendants established that the Prospectus's statements – which merely recited Singhal's positions in other entities and did not tout those entities' performance in any way – were not rendered misleading by the failure to include additional information about the entities' legal proceedings. In any event, the Xinhua Defendants showed that the omitted information is not material.

In response, Plaintiffs' opposition ("Opposition" or "Opp.") completely mischaracterizes the Xinhua Defendants' arguments. Plaintiffs assert that the Xinhua Defendants' discussion of the disclosure regulations applicable to foreign private issuers constitutes an argument that such issuers are not subject to Section 11. Opp. at 27 ("Because there is no foreign issuer exemption for Section 11 liability, Defendants' arguments here should be rejected."); *id.* at 4-5, 19, 23-26. The Xinhua Defendants have *never* suggested that foreign private issuers are not subject to Section 11. Rather, the Xinhua Defendants showed, based on statutory language and interpretive case law, that Plaintiffs' allegations fail to satisfy the elements of Section 11 liability, including and especially the existence of a disclosure duty independent of materiality.

Plaintiffs also argue that compliance with SEC regulations is a "red herring" and that the Prospectus, even while otherwise complying with Form F-1, could still violate Section 11 by omitting facts necessary to make statements therein not misleading. Opp. at 22. Plaintiffs, however, ignore the Xinhua Defendants' arguments, particularly that the Prospectus did not trumpet, or even address, the performance of Singhal's other entities and thus that the Prospectus's simple recitation of Singhal's positions in those entities was not misleading. DOB22-31. Moreover, compliance with SEC regulations is not a red herring: Those regulations define what was required to be disclosed and inform what is considered material in context. DOB30-32. Because the proceedings involving Singhal and Bush were not required to be disclosed by SEC regulation and were not otherwise required to be disclosed by virtue of the statements contained in

the Prospectus, Plaintiffs' claims under Sections 11, 12 and 15 fail.

## ARGUMENT

**I.    THE COMPLAINT FAILS TO STATE A SECTION 11 CLAIM**[3]

### A.    Plaintiffs Do Not Identify A Specific Legal Obligation To Disclose

Since at least 1935, the SEC has distinguished between domestic issuers and foreign private issuers. DOB5-6. In particular, different disclosure requirements for registration of public securities offerings apply depending on whether the issuer is domestic or foreign. *Id.* The reason for the distinction was to lessen the disclosure burden on foreign private issuers and thereby to encourage such issuers to offer securities in the U.S. markets. *De Vries v. Tower Semiconductor Ltd.*, No. 03 Civ. 04999 (KMW), 2004 WL 4088358, at *3 (S.D.N.Y. Aug. 23, 2004) (citing authorities), *aff'd sub nom. Schiller v. Tower Semiconductor, Ltd.*, 449 F.3d 286 (2d Cir. 2006). Plaintiffs do not dispute that foreign private issuers must use Form F-1, which does not require disclosure of legal proceedings of the kind alleged in the Complaint.

To state a Section 11 claim, Plaintiffs must plead not only that the information omitted from Xinhua's Prospectus was material but also that there was an independent obligation to disclose it. *See* DOB7-8. Where there is no duty of disclosure, courts routinely grant dismissal under Sections 11 and 12.[4]  Plaintiffs concede that "there is no duty to disclose every single fact

---

[3] Plaintiffs' citation to the dissent in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1975 (2007), in their discussion of the applicable standards (Opp. at 12-13), does not help Plaintiffs here. *Twombly* made clear that a plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id.* at 1965.

Furthermore, Rule 9(b) applies here, as the Complaint belies Plaintiffs' assertion (Opp. at 15) that "[t]here are no allegations of knowledge . . . or concealment." *See* CAC ¶¶ 76, 86 (defendants "concealed facts"); *id.* ¶ 46 (Bush "had known about the NASD problems of Singhal's brokerage firm"); *see* Opp. at 40 (citing "adverse, concealed facts"); *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004); *In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865 RMB, 2004 U.S. Dist. Lexis 9913, at *23 (S.D.N.Y. May 18, 2004).

[4] *See, e.g.*, *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 612-15 (S.D.N.Y. 2008), *appeal docketed*, No. 08-1831-CV (2d Cir. Apr. 16, 2008); *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, No. 06 Civ. 12967 (PAC), 2008 WL 650292, at *6-9 (S.D.N.Y. March 11, 2008); *J&R Mktg. v. General Motors Corp.*, 519 F.3d 552, 558-63 (6th Cir. 2008).

that could be material." Opp. at 41; *see* DOB7-8. Plaintiffs assert, however, that "Section 11 does not support separate inquiries of duty and materiality" and that separate inquiries occur only in 10(b) cases. Opp. at 41. While basing these assertions on a background footnote in *Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726, 730 n.8 (2d Cir. 1987), *see* Opp. at 41, Plaintiffs ignore two facts that dispose of their argument. First, the footnote is dictum. The issue on appeal, and the Court's actual holding, concerned materiality alone. 832 F.2d at 730 & n.8, 735-37. Second, the Court expressly stated that, while the case turned on whether the prospectus omitted material facts necessary to make statements not misleading, another question (not raised or pursued in the decision) was *whether there was an obligation to disclose material facts* in the first instance, and that the standard governing this other question is the *same* under both Section 11 and Rule 10b-5. *Id.* at 732, 735 & n.17.[5]

The plain language of Section 11 belies Plaintiffs' assertion that "the very wording of the Securities Act" does not impose a dual requirement. *Id.* at 38. Plaintiffs must plead that the registration statement "omitted to state a *material* fact *required to be stated therein* or *necessary* to make the statements therein not misleading." 15 U.S.C. § 77k(a) (emphasis added).[6] The Court in *In re N2K, Inc. Securities Litigation*, 82 F. Supp. 2d 204 (S.D.N.Y. 2000), discussed the elements of Section 11, but did not state, as plaintiffs would have it, that an omission is actionable if material. Instead, the Court stated that a "material omission . . . is actionable if the omitted facts (1) were required by SEC regulations to be stated therein, or (2) were necessary to make the disclosures in the registration statement not misleading." *Id.* at 207. The Second Circuit affirmed.

---

[5] Moreover, Plaintiffs rely on a misreading of the main authority cited in the *Kronfeld* footnote, *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983), which stated that a Section 11 plaintiff, to state a prima facie case, need "only" show a material misstatement or omission. By this statement, the *Herman* Court held that a Section 11 plaintiff need not establish scienter; the *Herman* Court, however, did *not* hold that such a plaintiff need not establish an independent duty of disclosure.

[6] *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1190 (11th Cir. 2002) (to require *all* material facts to appear in the prospectus "is simply to wholly ignore and render superfluous [Section 11's] qualifying language 'required to be stated therein or necessary to make the statements therein not misleading.'")

*In re N2K, Inc. Sec. Litig.*, 202 F.3d 81 (2d Cir. 2000) (*per curiam*).  As this Court recently stated:

> A successful section 11 claim meets two requirements: (1) the defendant has an affirmative duty to disclose the information but fails to do so, and, (2) the untrue or omitted information was material.  Materiality alone does not demand disclosure, nor does the duty to disclose encompass non-material information. . . .  Materiality is a separate matter.

*Panther*, 2008 WL 650292, at *4 (citation omitted); *see Garber*, 537 F. Supp. 2d at 610.[7]

Under these standards, the Complaint fails.  SEC regulations did not require Xinhua, as a foreign private issuer, to disclose the omitted information.  Plaintiffs' attempt to elide their failure to allege an independent duty to disclose the omitted information should therefore be rejected.  Moreover, as argued in Section I.D., *infra*, the Prospectus's discussion concerning management was not made misleading by the omission of unadjudicated proceedings.

> **B.    Regulations Applicable To Foreign Private Issuers Do Not Require Disclosure Of The Information That Plaintiffs Allege Was Wrongfully Omitted**

Plaintiffs concede that SEC regulations "'answer the question as to what material facts are required to be stated in an issuer's registration statement and prospectus.'"  Opp. at 21 (citing *N2K*, 82 F. Supp. 2d at 207 (cited in DOB8)).  Form F-1 and Form 20-F, which are filed by foreign private issuers, do not require the disclosure of any proceeding or litigation in which any director, or any member of senior management, was involved at any time, unless an officer or director is a party adverse to the company or has a material interest adverse to the company.  DOB9-10.  The Complaint alleges no such adverse party status or adverse interest.  DOB9-10.  Item 8.a.7 of Form 20-F requires information on "any legal or arbitration proceedings, including those relating to bankruptcy, receivership or similar proceedings and those involving any third party, which may have, or have had in the recent past, significant effects on the company's financial position or profitability."  Plaintiffs *concede that this provision is inapplicable*:  "the undisclosed litigation in this case does not speak to that concern."  Opp. at 21-22.

---

[7] *See Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 227 (S.D.N.Y. 1999) ("to maintain a claim for failure to disclose information pursuant to § 11, a plaintiff must demonstrate both that the defendant had an affirmative duty to disclose the information and that the omitted information was material."); *J&R*, 519 F.3d at 557-58; *Menkes v. Stolt-Nielsen S.A.*, No. 03 Civ. 409 (DJS), 2005 WL 3050970, at *7 (D. Conn. Nov. 10, 2005).

Plaintiffs also fail to rebut the Xinhua Defendants' argument that their disclosures even satisfied the more onerous requirements of Form S-1, which is filed by *domestic* issuers. In their Opening Brief, the Xinhua Defendants contrasted Form F-1's requirements with the more extensive disclosure obligations applicable to domestic issuers – specifically, the disclosure obligations concerning officers' and directors' involvement in legal proceedings. *See* Regulation S-K, Item 401(f), 17 C.F.R. § 229.401(f); DOB10-11. The numerous proceedings alleged in the Complaint would not trigger a disclosure duty even under the more demanding disclosure obligations applicable to domestic issuers. DOB13-17.[8] Thus, if the Xinhua Defendants had no obligation to make disclosures concerning the legal proceedings had they been obligated to file on Form S-1, *a fortiori* they had no obligation to make such disclosures on Form F-1. *In re Merrill Lynch & Co., Research Reports Sec. Litig.*, 289 F. Supp. 2d 429, 434 (S.D.N.Y. 2003) ("Given the extensive regulatory regime governing mutual funds and what they must disclose, the absence of a specific directive requiring the particular disclosure . . . presents a serious obstacle to [plaintiffs'] claim which they cannot overcome."); *see* DOB11-13.

**Form F-1 Is Not Made Inapplicable Or Irrelevant By Virtue Of Regulation C.** Plaintiffs do not dispute that Form F-1 excludes those broader categories of disclosure for foreign private issuers. Instead, Plaintiffs assert that the Xinhua Defendants cannot appeal "to the formal requirements of filing Form F-1 for foreign investors," that Xinhua "cannot hide behind SEC regulations," and that "compliance with Form F-1" is no excuse. Opp. at 20, 21, 23. Plaintiffs' overriding thesis is that because foreign private issuers must also comply with Regulation C, Rule 408(a), 17 C.F.R. § 230.408(a), which "mirrors the requirements of Section 11," Opp. at 30, 21-22, 25-26, the requirements of Form F-1 are irrelevant.

This argument fails for two reasons. First, the Xinhua Defendants have exhaustively shown that none of the statements in the Prospectus was rendered misleading by the omission of

---

[8] Plaintiffs continue to cite an investigation against Bedrock Securities, Opp. at 7-9, but nowhere dispute that the temporary cease and desist order was lifted against Bedrock by the time of the IPO, and was never asserted against Singhal. DOB14-15.

unadjudicated proceedings, and thus that Xinhua was not required to disclose those proceedings. DOB22-31; *see* Section I.D., *infra*. Second, Plaintiffs erroneously assume that the specific requirements of what must be disclosed pursuant to Form F-1 have nothing to do with the so-called "catch-all" provision of Regulation C, Rule 408(a). In fact, Form F-1's requirements very much inform the issue of whether a particular fact is material. *See GAF Corp.*, 724 F.2d at 739 ("[t]he regulation's emphasis on orders, judgments, decrees, and findings in civil proceedings, in stark contrast to its express coverage of all pending criminal proceedings, strongly suggests that regardless of how serious they may appear on their face, unadjudicated allegations in a pending civil action against a director-nominee should not automatically be deemed material"). *See* DOB30-32; Section I.D., *infra*.

   **The SEC's Policy Decision To Reduce Disclosure Obligations Deserves Deference.** The SEC's decision to reduce disclosure obligations of foreign private issuers in Form F-1 deserves judicial deference. DOB17-22. This Court accorded such deference in *De Vries*, 2004 WL 4088358.[9] In *De Vries*, the Court acknowledged the SEC's recognition that "foreign companies whose investment opportunities are available to Americans may need to be held to a different disclosure standard from domestic companies in order to remain consistent with, *inter alia*, their own country's disclosure rules." *Id.* at *3. In their Opening Brief, the Xinhua Defendants demonstrated that the SEC's decision to reduce disclosure requirements in Forms F-1 and 20-F, as the SEC itself explained, resulted from the careful balancing of the need for material disclosure with the need both to encourage foreign registrations in the U.S. and to harmonize international standards. DOB17-21.

   Plaintiffs principally argue that *De Vries* is inapplicable because foreign private issuers

---

   [9] This Court continues to defer to the SEC's determination of the disclosure obligations of foreign private issuers. *See In re Top Tankers, Inc. Sec. Litig.*, 528 F. Supp. 2d 408, 416 (S.D.N.Y. 2007) ("Contrary to plaintiff's contention, there is no reason why [the Company] should have [disclosed the reasons for its auditors' resignation], because defendants are not in violation of SEC regulations relating to change-of-auditor letters. [The Company] is a foreign private issuer, and foreign private issuers are not subject to SEC Regulation S-K, and more particularly to Item 304 of Regulation S-K regarding changes in auditors.").

have no "exemption" from Section 11, as they do from Section 14(a). Opp. at 23-25. The Xinhua Defendants acknowledge that foreign private issuers still have disclosure obligations in Form F-1 and thus are not exempt from Section 11. However, the now-upheld policy underlying the exemption from Section 14(a) also underlies the reduced disclosure obligations in Form F-1; because of those reduced obligations, Plaintiffs fail to allege any duty to disclose the legal proceedings mentioned in the Complaint. DOB17-22.

Plaintiffs' other arguments against judicial deference similarly fail. Plaintiffs first argue that Congress did not delegate to the SEC the authority to have Form F-1 define materiality for purposes of Section 11. Opp. at 27-28. As a preliminary matter, this formulation – purporting to make the validity of the delegation depend on whether Congress had Section 11 in mind – is vastly too narrow. Congress's delegation of authority to define the contents of registration statements for (and hence the disclosure obligations of) foreign private issuers is valid regardless of whether Congress mentioned or invoked Section 11 at the time of the delegation; similarly, the SEC's adoption of Form F-1, with its reduced disclosure obligations, is valid regardless of whether the SEC mentioned or invoked Section 11 at the time of the adoption.[10] But given that the delegation and adoption here were valid (as argued more fully below), the consequent deference-worthy regime of reduced disclosure obligations necessarily affects Section 11 liability by (a) circumscribing the disclosure duties that could give rise to Section 11 liability, *see* DOB8-13, and (b) informing the decision as to what facts are material, *see* DOB31-32.

Moreover, Plaintiffs ignore the fact that, in adopting the integrated disclosure system for foreign private issuers (which included adoption of Form F-1), the SEC identified several provisions of the Securities Act and the Exchange Act that form the statutory basis for its rule-

---

[10] Indeed, one would not expect Congress or the SEC to mention or invoke Section 11 in these circumstances. In Section 11, Congress did not even purport to define disclosure obligations or materiality but rather left those matters for SEC regulations to define, and made liability depend on whether those regulations were violated. *See In re N2K, Inc. Sec. Litig.*, 82 F. Supp. 2d at 207. Thus, the relevant portion of Section 11 conditions liability on a violation of the regulations, *see id.*, but the regulations create obligations independent of Section 11.

making power.[11]  Pertinent to Form F-1 are Sections 7, 10 and 19(a) of the Securities Act, which are respectively codified at 15 U.S.C. § 77(g), 15 U.S.C. § 77(j), and 15 U.S.C. § 77(s).  Section 7, governing information required in registration statements, requires such statements to contain the information listed in Schedule A, codified at 15 U.S.C. § 77aa, and authorizes the SEC by "rules or regulations" to require disclosure of additional information that the SEC considers "necessary or appropriate in the public interest or for the protection of the investors."  Notably, Schedule A does not require disclosure of officers' and directors' legal proceedings.  *See id*.  Section 10(c), governing information required in prospectuses, authorizes the SEC by "rules or regulations" to require disclosure in the prospectus of information additional to that required in the registration statement, *see* Section 10(a)(1), as may be "necessary or appropriate in the public interest or for the protection of the investors."  Section 10(d) authorizes the SEC "by rules and regulations . . . to prescribe as to each class [of prospectuses] the form and contents which it may find appropriate and consistent with the public interest and the protection of investors."[12]  Thus, contrary to Plaintiffs' unsupported assertion, Congress has expressly delegated to the SEC the rule-making authority to define the contents of registration statements and prospectuses and to prescribe the forms on which information must be disclosed.  In this case, Congress did not itself require disclosure of officers' and directors' legal proceedings, leaving it up to the SEC to decide whether and to what extent such disclosure would be required, and the SEC decided to require it of domestic issuers but not foreign private issuers.  That differential decision was fully within the SEC's delegated authority.

Because Congress has expressly delegated to the SEC the authority to define the contents

---

[11] *See* Adoption of Foreign Issuer Integrated Disclosure System, Exchange Act Release No. 33-6437, 7 Fed. Sec. L. Rep. (CCH) ¶ 72,407, at 62,033, 1982 WL 35947, at *66 (Dec. 6, 1982) (listing as statutory authority Sections 6, 7, 8, 10 and 19(a) of Securities Act and Sections 12, 13, 15(d) and 23(a) of Exchange Act, among others).

[12] Section 19(a) authorizes the SEC to "make, amend, and rescind" such rules and regulations as may be necessary "to carry out the provisions of [the Securities Act]," including those governing registration statements and prospectuses, and authorizes the SEC to "prescribe the *form or forms* in which required information shall be set forth."  (Emphasis added.)

of the registration statement and prospectus for both domestic issuers and foreign private issuers, the SEC's rule-making in this regard is recognized as "legislative" rulemaking and should be afforded the highest degree of deference. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council Inc.*, 467 U.S. 837, 844 (1984). Plaintiffs' cases do not hold otherwise. *See* Opp. at 27-28 & n.10 (citing *United States v. Mead Corp.*, 533 U.S. 218 232, 226-27 (2001) (upholding *Chevron* deference where Congress expressly delegated rule-making authority to administrative agency); *United States v. Yuzary*, 55 F.3d 47, 51 (2d Cir. 1995) (regulations resulting from authority delegated by Congress constituted legislative rules with force of law)).[13]

As a "legislative" rule, Form F-1 was subject to the notice-and-comment requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(b)(2) & (3), (c), designed to ensure "the fairness and deliberation that should underlie a pronouncement of such force." *Mead*, 533 U.S. at 230; *see also Yuzary*, 55 F.3d at 50 (noting that regulation was properly promulgated under APA); *Natural Res. Def. Council v. S.E.C.*, 389 F. Supp. 689, 694, 699-701 (D.D.C. 1974) (reviewing SEC's Release adopting amendments to Forms S-1, S-7, S-9, 10, 10-K and 8-K as "agency action" for compliance with APA). The SEC complied with the APA requirements when it adopted Form F-1,[14] and Plaintiffs' conclusory assertion to the contrary, *see* Opp. at 30 n.12, is

---

[13] Plaintiffs' argument that the Xinhua Defendants lack "standing" to invoke deference to the SEC's regulation is nonsensical. Opp. at 28 n.10. The Xinhua Defendants are seeking not to challenge, but to enforce, the SEC's regulation (*i.e.*, the SEC's decision not to require disclosure of officers' and directors' legal proceedings on Form F-1). The Complaint itself alleges that the Xinhua Defendants were obligated to make such legal-proceeding disclosure, *see, e.g.*, CAC ¶¶ 2, 25, and thus entitles the Xinhua Defendants to invoke the SEC's regulation and deference thereto. Plaintiffs' reliance on *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 37 (2d Cir. 2005), is misplaced because *Dabit* addressed standing by a private litigant to bring suit under Rule 10b-5.

[14] The proposing, adopting and amending releases for Form F-1 were each submitted to the public for comment and published in the Federal Register. *See* Adoption of Integrated Disclosure System for Foreign Private Issuers, Exchange Act Release No. 33-6360, [1981-1982] Fed. Sec. L. Rep. (CCH) ¶ 83,054 at 84,641, 1981 WL 29914, at *1 (Nov. 20, 1981) (proposed Release); Form F-1, 2 Fed. Sec. L. Rep. (CCH) ¶ 6951, at 6061-6065 (listing Federal Register references for adopting and amending Releases). The SEC received over sixty letters of comment on the proposed foreign issuer disclosure regime, including with respect to Form F-1, mostly urging the SEC to "make significantly more accommodations in the requirements applicable to foreign issuers." Adoption of Foreign Issuer Integrated Disclosure System, Exchange Act Release No. 33-6437, 7 Fed. Sec. L. Rep. (CCH) ¶ 72,407, at 62,033, 1982 WL 35947, at *2 (Dec. 6, 1982). *See* (continued...)

simply false.

Plaintiffs also argue that adoption of a form, as opposed to a rule or regulation, is not agency interpretation, establishes no rules and thus presents no occasion for judicial deference. Opp. at 28-31.  This argument fails because Plaintiffs' underlying assumption, that the SEC was not acting pursuant to the congressional mandate in adopting Form F-1, is baseless.[15]  Moreover, Form F-1 is not an empty grid, devoid of requirements:  Rather, it sets forth numerous, verbally articulated requirements.  *See, e.g.*, Schor Dec., Ex. 5 (Items 1 and 3, requiring information required by Items 501 and 503 of Regulation S-K, respectively).  Furthermore, courts look to SEC forms to determine what must and must not be disclosed.  *Merrill Lynch*, 289 F. Supp. 2d at 436 ("The information required to be disclosed . . . is specifically set forth in SEC Form N-1A. . . . [F]inancial incentives . . . are not required to be disclosed in Form N-1A").

Finally, Plaintiffs argue that the absence of disclosure requirements for legal proceedings in Form F-1, in contrast to their inclusion in Form S-1, is "not the product of any interpretation whatsoever."  Opp. at 27 n.10.  Plaintiffs suggest that refraining from requiring disclosure of legal proceedings, as opposed to exempting foreign issuers from such disclosure, evidences an accidental, non-interpretative act unworthy of deference.  Opp. at 29.  Congress, however, granted the SEC not only exemptive authority but also authority to determine the contents of the registration statement and other public filings.  *See* Securities Act §§ 7, 10, 19(a).  The SEC has exercised this authority, expressly choosing less onerous disclosure obligations for foreign private

---

(...continued from previous page)
SEC Files S7-915 and S7-849, *id.* at *2 n.3.  The SEC has considered the public commentary in adopting the final version of Form F-1.  *See id.*

[15] Plaintiffs' reliance on *Shikles v. Sprint/United Management Company*, 426 F.3d 1304 (10th Cir. 2005), Opp. at 31, misses the mark.  There, the court found that the EEOC's position laid out in the Dismissal and Notice of Rights form was not entitled to deference because there was no indication that the form "represents the sort of 'deliberative conclusions as to the meaning of [the] laws' the EEOC is charged with enforcing," and because the "general phraseology" of the form did not support "the specific proposition" that the EEOC was advancing.  426 F.3d at 1316 n.7.  Here, Form F-1 resulted from a deliberate "legislative" rule-making effort by the SEC, and deliberately does not require of foreign private issuers the legal-proceeding disclosure that is required of domestic issuers.

issuers while simultaneously choosing more onerous obligations for domestic issuers.  DOB18-21.[16]  In light of both the SEC's stated intent to avoid over-burdening foreign private issuers and the contemporaneous adoption of Form S-1, the SEC has acted intentionally in excluding from Form F-1, while including on Form S-1, the requirement that the issuer disclose its officers' and directors' legal proceedings.  DOB17-21 & 11 n.13.  Thus, the SEC's decision not to require foreign private issuers to disclose officers' and directors' legal proceedings was a deliberate decision warranting deference.[17]

### C.    No Untrue Statement Is Alleged In The Prospectus

The Complaint does not identify any affirmative statements that were false.  DOB22-23.  Thus, the Complaint does not and cannot allege a claim under the first clause of Section 11, which creates liability where the registration statement "contained an untrue statement of a material fact."  Indeed, Plaintiffs expressly concede the truth of the Prospectus's statement about Singhal, which statement merely listed his position at Xinhua and its parent, the time period, his degree, and his positions at several unrelated entities.  Opp. at 38; *see* CAC ¶ 32.

### D.    There Is No Omission Of A Material Fact Necessary To Make The Statements Made Not Misleading

Plaintiffs do not contend that any statement made in the Prospectus required disclosure concerning Ms. Bush's settlement of a personal tax liability (CAC ¶ 25(jj), kk)) in order to make the statement not misleading.  Plaintiffs rely solely on a general notion of materiality.  *See* Opp. at 45

---

[16] Plaintiffs' argument that the multiple amendments of Form F-1 suggest inaction, Opp. at 29, is specious. The SEC's preservation of disclosure limitations over time, notwithstanding the repeated opportunity to modify it, demonstrates deliberate action, not oversight. *See De Vries*, 2004 WL 4088358, at *4.

[17] *See In re Morgan Stanley Derivative Litig.*, No. 05 Civ. 6516 (LTS), 2008 WL 820718, *7 (S.D.N.Y. March 27, 2008) (Swain, J.) (dismissing Section 14 claim for failure to plead demand futility where demonstration of substantial risk of liability is undermined; there is no allegation that statements were required under "established SEC regulations or any rules implicit in the regulations that specifically govern proxy statements"); *Panther Partners*, 2008 WL 650292, at *4 ("[w]hether a duty to disclose exists depends largely on the itemized disclosures required by the securities laws and the regulations promulgated thereunder"); *Donovan v. Am. Skandia Life Assurance Corp.*, No. 02 Civ. 9859 (MP), 2003 WL 21757260 (S.D.N.Y. July 31, 2003) (similar), *aff'd*, 96 Fed. Appx. 779 (2d Cir. 2004) (unpublished).

(information about tax dispute would be material information for shareholder to "assess[] the abilities or business acumen of a principal in a corporation"). Plaintiffs' reliance on that general notion, however, improperly seeks to obscure the difference between materiality and an independent duty to disclose, and is manifestly insufficient to establish such a duty. *See In re Alliance Pharms. Corp. Sec. Litig.*, 279 F. Supp. 2d 171, 182 (S.D.N.Y. 2003); *Cooperman v. Individual, Inc.*, 171 F.3d 43, 49-51 (1st Cir. 1999); DOB7-8, 24-25.

With respect to the listings of Mr. Singhal's memberships on committees at Xinhua or his positions at unrelated entities, the Prospectus did not discuss, much less tout, his or the entities' performance. DOB23-25. Plaintiffs even acknowledge the self-limited nature of the Prospectus's statement regarding Singhal, terming it "a skeletal picture of Singhal's past and overall experience." Opp. at 32. That some entities may have been involved in legal proceedings unrelated to Xinhua does not make the statement of Singhal's positions misleading. *See Seibert*, 586 F.2d at 950-51 (affirming summary judgment among other things where omission of fact that J.P. Stevens, on whose board director at Sperry also served, was involved in labor dispute did not make director's biographical information in Sperry's proxy statement misleading).[18] *See* DOB24-25. Nor did the statements that were made require disclosure of unproven allegations under a "completeness" theory. Opp. at 38. *See Menkes*, 2005 WL 3050970, at *7 (disclosure of uncharged criminal conduct is not required "for the sake of merely improving an investor's perspective"); *Marsh*, 536 F. Supp. 2d at 323 (similar); *J&R*, 519 F.3d at 561 (statement did not prompt disclosure of "all material, non-public, adverse information about that general topic. . . .

---

[18] *See Marsh & McLennan Cos., Inc., Sec. Litig.*, 536 F. Supp. 2d 313, 325 (S.D.N.Y. 2007) (implicit statement that auditor could carry out its obligations was not misleading for failure to disclose prior audit failures); *Menkes*, 2005 WL 3050970, at *7 (failure of statements to discuss competition did not have link or connection to illegal circumvention of competition); *J&R*, 519 F.3d at 561 ("The coupon rate was in fact true . . . . GMAC never went further and stated the coupon rate was the fairest rate . . ."); *In re Arbinet-thexchange, Inc.*, No. 05 Civ. 4404 (JLL), 2006 WL 3831396, at *9 (D.N.J. Dec. 28, 2006) (omissions that anonymous trading was undesirable to many carriers did not make statements misleading where they did not tout anonymous nature of exchange); *Galati v. Commerce Bancorp, Inc.*, No. 04 Civ. 3252 (RBK), 2005 WL 3797764, at *7 (D.N.J. Nov. 7, 2005) (earnings reports were not rendered inaccurate by omitting that revenues were generated in part from bid rigging and illegal activities where reports "state[d] nothing more than empirical facts"). *See also* DOB23-25.

This is surely not the law.") (internal quotation marks omitted).

Plaintiffs' arguments concerning other statements in the Prospectus are equally unavailing. Plaintiffs argue that the statement, "Our management team is one of our strongest assets," should have added that the management team "included a member (Singhal) with close ties with numerous public companies that have been sued or been investigated." Opp. at 33-34. But Plaintiffs do not explain why this discussion of the management team, having failed to identify Mr. Singhal at all (CAC ¶ 32), should have disclosed his associations with unrelated entities, or, more pertinently, legal proceedings brought against those entities. *See Marsh*, 536 F. Supp. 2d at 324 (dismissing for failure to state claim and noting that specific employees were not identified at all and that discussion of general employee compensation plan did not require statement that plan could benefit employees engaged in bid rigging).

Similarly, Plaintiffs contend that the statement, "Our business depends substantially on the continuing efforts of our key executives," which appears in the Prospectus's risk disclosures, should have also stated that Singhal's "questionable dealings" "adversely impacted the investors' abilities to reasonably evaluate the risk." Opp. at 33. This contention makes no sense. The risk disclosure *did not even mention Mr. Singhal* in the discussion of the "key executives," CAC ¶ 40, and thus plainly did not "highlight[] Singhal as a person the Company could not get along without." Opp. at 43. This warning that Xinhua's business could be disrupted if it lost key executives was not "presented in such a way as to obscure or distort [its] significance." *I. Meyer Pincus & Assocs. P.C., v. Oppenheimer & Co*., 936 F.2d 759, 761 (2d Cir. 1991) (internal quotation marks omitted). Thus, no such affirmative statement in the Prospectus was made misleading by omission of the unproven allegations.

**The Omissions Concern Asserted Mismanagement, Which Need Not Be Disclosed.**
Plaintiffs' contention that the omissions at issue were relevant and should have been disclosed is foreclosed by Second Circuit law. As recognized in *In re Citigroup, Inc. Securities Litigation*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) (Swain, J.), the Second Circuit has long rejected any requirement to disclose unproven claims that concern management's integrity or competence. *Id*.

-14-

(citing, *inter alia*, *GAF*, 724 F.2d at 740); *see United States v. Matthews*, 787 F.2d 38, 48 (2d Cir. 1986); *Marsh*, 536 F. Supp. 2d at 321-226; *see also* DOB26-30.

In a facile attempt to distinguish the cases that the Xinhua Defendants (and this Court in *Citigroup*) cited, Plaintiffs simply posit that "[t]he omitted information here is material." Opp. at 46. This is not a distinction at all; rather, it is a purely conclusory assertion. Plaintiffs contend that, in *GAF*, the "litigation at issue . . . [was] 'an unrelated intrafamily dispute' . . . entirely different from the legal and other proceedings directly involving Singhal and Bush." Opp. at 45. But Plaintiffs do not explain why the two are meaningfully different. The allegations in *GAF* centered exclusively on acts, specifically diversion of partnership assets and failure to provide access to financial information, committed by the individual in question. *GAF*, 724 F.2d at 735. Here, the omissions concern alleged acts committed not by Singhal but by others with whom Singhal was associated; in some instances, the alleged acts occurred when there was not even such an association. *See, e.g.*, CAC ¶ 25(ff) (criminal allegations brought in Canada against officer of Chell three years before Singhal was director). Notably, in the numerous proceedings asserted in the Complaint, Singhal was *not* a defendant, s*ee* DOB15-16 – except in *National Account Management* (CAC ¶ 25(e)-(l)), where he was recently dismissed with prejudice. *See* Schor Supp. Dec., Ex. 8. Thus, it is not apparent why the "unrelated intrafamily dispute" in *GAF* is effectively any different from the disputes alleged here.

Plaintiffs' attempt to distinguish *Matthews*, 787 F.2d 38, is equally meritless. Opp. at 45-46. Plaintiffs argue that *Matthews* is distinguishable because it involved a general counsel and not a CFO or CEO. Opp. at 46. This is a distinction without a difference. In *Matthews*, the defendant's statements about himself in the proxy merely recited his age and positions, and thus did not require greater disclosure as a matter of law, particularly since courts "almost universally have rejected efforts to require that management make qualitative disclosures that were not at least implicit in the Commission's rules." 787 F.2d at 48. Plaintiffs suggest that the holding was in part due to the SEC's unsuccessful efforts to increase disclosure. Opp. at 46. Yet, Plaintiffs simultaneously ignore the absence of relevant disclosure obligations in Form F-1. Moreover, if the

catch-all provision under Regulation C is enough to trigger a disclosure obligation in this case, then it would have been sufficient in *Matthews*, notwithstanding the unsuccessful efforts of the SEC to expand disclosure requirements in specific regulations.[19]

Realizing that the theory of their case is undermined by Second Circuit law, Plaintiffs resort to a jumble of inconsistent contentions. On the one hand, Plaintiffs assert that the "Defendants made misstatements and omissions that directly related to Xinhua's operations, business, controls, and foreseeable prospects. . . . Information going directly to the financial well being of a company" is "important" to a shareholder. Opp. at 46. On the other hand, Plaintiffs squarely concede that the allegations involve proceedings against entities not related to Xinhua or its "financial position or profitability": "the undisclosed litigation in this case does not speak to . . . concern" about "the financial outlook of the company and the impact of litigation on a company's bottom line." Opp. at 21-22. Another contradiction starts with Plaintiffs' assertion that "the gravamen of the Complaint is not mismanagement of Xinhua but . . . the background and dealings of its principals." Opp. at 45 n.21. Elsewhere, however, Plaintiffs state the *opposite*: the "undisclosed litigation . . . *speaks to management capabilities, experience, and competence* with

---

[19] Unavailingly, Plaintiffs cite *In the Matter of Franchard Corp.*, File No. 2-16936, 2-18633, 2-19405, 1964 WL 67454, at *7 (S.E.C. July 31, 1964), for the proposition that management's integrity is "always a material factor." Opp. at 43-44. This SEC stop order case, in which the SEC suspended the effectiveness of registration statements, predated *GAF* by nearly 20 years. Significantly, the registration statements at issue did not disclose that the controlling shareholder and CEO, for whom the company had been named, *continuously diverted unauthorized large sums from the company to his own wholly owned corporation*, and thereby created a likelihood of a shift in control. 1964 WL 67454, at *4-7. The Fourth Circuit recently addressed *Franchard*, finding it unpersuasive both because it preceded relevant Supreme Court case law and because the omission at issue was the CEO's diversion of corporate assets. *Greenhouse v. MCG Capital Corp.*, 392 F.3d 659-60 (4th Cir. 2004).

The Fourth Circuit in *Greenhouse,* noting that integrity concerns that are merely derivative of the underlying representation are not themselves actionable, distinguished two decisions (both cited in Opp. at 44) where the omissions consisted of a misrepresented fact that was actually material. *Id.* at 659. *See Gebhardt v. ConAgra Foods*, Inc., 335 F.3d 824, 827, 830 (8th Cir. 2003) (defendant parent restated financials due to subsidiary's admitted overstatement of income and violation of GAAP); *Zell v. Intercapital Income Sec., Inc.*, 675 F.2d 1041, 1043, 1047-48 (9th Cir. 1982) (defendant failed to disclose that 22 lawsuits seeking more than 25% of consolidated assets of Dean Witter corporations were filed against parent and subsidiary of fund's investment manager, which companies were "in substance a single interrelated business entity").

regard to Xinhua." *Id.* at 21-22 (emphasis added); *id.* at 40 (the "concealed facts bear directly on the competency of the Company's management"). Plaintiffs' contradictions notwithstanding, the omissions amount to claims of mismanagement and hence are inactionable. *See Citigroup*, 330 F. Supp. 2d at 377; *Lerner v. FNB Rochester Corp.*, 841 F. Supp. 97, 101-02 (W.D.N.Y. 1993); *Ciresi v. Citicorp.*, 782 F. Supp. 819, 823 (S.D.N.Y. 1991), *aff'd*, 956 F.2d 1161 (2d Cir. 1992) (unpublished table decision).

> **The Regulations Applicable To Foreign Private Issuers Are Relevant To Show That The Omitted Facts Are Not Material.** Plaintiffs baselessly refuse to acknowledge that materiality is informed by relevant SEC disclosure obligations and the absence thereof. *See GAF*, 724 F.2d at 739 ("regulation . . . provide[s SEC's] expert view of the types of involvement in legal proceedings that are most likely to be matters of concern to shareholders in a proxy contest"); *Matthews*, 787 F.2d at 48 (courts "almost universally have rejected efforts to require that management make qualitative disclosures that were not at least implicit in the [SEC's] rules"); *see* DOB30-32.

*Fisher v. Ross*, No. 93 Civ. 0275 (JGK), 1996 WL 586345 (S.D.N.Y. Oct. 11, 1996), is instructive. There, the defendant officers and directors had previously been employed by a company that went bankrupt, and plaintiffs claimed that the prospectus failed to disclose that fact. Plaintiffs conceded that, because the bankruptcy occurred beyond the relevant time period, SEC regulations required no disclosure. There, as here, plaintiffs relied on the catch-all provision under Regulation C to argue that the information was material under Section 11. *Id.* at *9. Plaintiffs failed to show why the bankruptcy of the other entity six years before the offering was relevant to the issuer's financial condition or prospects. *Id.* at *10; *compare* Opp. at 21-22. The court granted summary judgment holding the information not material, "particularly in light of the fact that disclosure of this particular piece of information was not required under applicable SEC regulations. . . ." 1996 WL 586345, at *10.

Plaintiffs try but fail to minimize *Geiger v. The Solomon-Page Group, Ltd.*, 933 F. Supp. 1180 (S.D.N.Y. 1996). There, the court, in dismissing Section 11 claims, found immaterial the

omission of a statement setting forth the relationship among individual selling shareholders and their employment by the underwriter. *Id.* at 1187-88. Plaintiffs argue that *Geiger* is distinguishable because the "statement was of 'plain unimportance.'" Opp. at 26 n.9. This distinction wholly ignores the court's rationale for its holding: "that the SEC does not require disclosure of this fact is further support for this conclusion because it reflects the SEC's expert view that such disclosure is not required." 933 F. Supp. at 1187-88. The Court added: "The absence of a regulation requiring disclosure, in the face of the detailed requirements of what information about selling shareholders must be disclosed, is some evidence that the information the plaintiff seeks to require is not in fact material." *Id.* at 1187.

Plaintiffs also fail to adequately distinguish *Platsis v. E.F. Hutton & Co.*, 642 F. Supp. 1277 (W.D. Mich. 1986), *aff'd per curiam*, 829 F.2d 13 (6th Cir. 1987). The court specifically held that "plaintiff has failed to prove that the above omissions were material." *Id.* at 1294. This holding was based neither on the statute of limitations nor on a finding that plaintiff was aware of the risks, Opp. at 26 n.9, but on the fact that "materials specifically exempted from disclosure by the Securities and Exchange Commission cannot, by their omission from offering documents, form the basis of a [12(a)(2)] violation . . . . [T]he exemption is evidence that the information sought by plaintiff is not 'material' and probably misleading." *Id.* at 1296; *see id.* at 1301 (dismissing Section 11 claims on same basis).[20] *See General Electric Co. v. Cathcart*, 980 F.2d 927, 937 (3d Cir. 1992) (rejecting contention that proxy solicitation should make broader litigation disclosure than that required by regulation: "Although not determinative, Schedule 14A is persuasive authority as to the required scope of disclosure in proxy materials, as the regulation provides 'us with the [SEC's] expert view of the types of involvement in legal proceedings that are most likely to be matters of concern . . . .'") (quoting *GAF*, 724 F.2d at 739). Because Xinhua made all the

---

[20] Plaintiffs argue (Opp. at 26 n.9) that there was an exemption from disclosure in *Platsis*, but do not explain how an exemption is effectively any different from the deliberate absence of litigation-related disclosure requirements in Form F-1. DOB20-22.

disclosures required by Form F-1, it should not be held to an even more onerous standard.

**E.    There Was No Failure To Disclose Acquisitions That "Enriched Insiders"**

Xinhua disclosed in detail the Upper Step and Accord Group acquisitions, including the consideration paid to Xinhua's parent and Sino Investment Holdings, and Singhal's ownership interest in Sino.  DOB32-34.[21]  The information was hardly "buried."  Opp. at 48.  The Complaint likewise shows that the Xinhua Financial Network and Freestar transactions were publicly disclosed well before the offering.  CAC ¶ 31.  Plaintiffs' only argument is that the Xinhua Defendants should have disparaged these transactions.  Opp. at 47-48 (Singhal got "windfall" and "profited handsomely"; insiders were "enriched").  Defendants, however, are not "obligated to describe in pejorative terms" the basic facts.  *Sheppard v. TCW/DW Term Trust 2000,* 938 F. Supp. 171, 175 (S.D.N.Y. 1996).[22]

**II.    THE COMPLAINT FAILS TO STATE A SECTION 12 CLAIM**

The Xinhua Defendants argued that a Section 12(a)(2) claim fails where plaintiffs undisputedly lack standing, as demonstrated by their declarations.  DOB34-35 & nn.36, 37.  This Court has made clear that "Section 12(a)(2) liability does not apply to aftermarket purchases."  *Am. High-Income Trust v. Alliedsignal*, 329 F. Supp. 2d 534, 547 n.8 (S.D.N.Y. 2004) (Swain, J.) (citations omitted).[23]  Under Section 12, only initial purchasers have standing.  *See Ultrafem*, 91 F. Supp. 2d at 694.

Plaintiffs fail to establish standing under Section 12.  Inexplicably, Plaintiffs discuss standing requirements under Section 11.  Opp. at 55 n.24.  Moreover, Plaintiffs generically assert that they purchased "pursuant *and/or traceable to*" the IPO.  CAC ¶ 9 (emphasis added).  This

---

[21] Plaintiffs' Complaint makes clear that *the source* of the New York Post article cited in the Complaint (CAC ¶ 29) *was the Prospectus itself.  See* Dec. 21, 2007 Holland Dec. Ex. E at 1.

[22] *See also In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 375 (3d Cir. 1993) (rejecting claim where prospectus "failed to describe its debt-equity ratio as either 'unwarranted' or 'excessive.'"); *Lewis v. Potlatch Corp.*, 716 F. Supp. 807, 809-11 (S.D.N.Y. 1989).

[23] *See In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 693-94 (S.D.N.Y. 2000).

assertion fails. *See In re Prestige Brands Holding, Inc.*, No. 05 Civ. 06924 (CLB), 2006 WL 2147719, at *9 (S.D.N.Y. July 10, 2006) (allegation that shares were "traceable to" IPO held insufficient under Section 12(a)(2)).[24]

Plaintiffs here did not simply rely on a generic allegation. The Complaint incorporates by reference the Declarations attesting to the terms of the purchases of the ADSs. CAC ¶ 9. Those Declarations demonstrate that the lead plaintiffs herein bought at prices *different from the $13.00 per share price of the March 9, 2007 offering* (CAC ¶ 19), and *at dates well after that offering*. DOB34 nn.36, 37. Plaintiffs, therefore, could not possibly have *bought in the offering*. Yet Plaintiffs completely ignore the facts that they submitted in the Declarations. Opp. at 55. Plaintiffs may not change their pleading when the Declarations that they submitted assert contradictory facts.[25]

## CONCLUSION

Because the omissions asserted in the Complaint are inactionable as a matter of law, the claims under Sections 11, 12 and 15 fail.[26] Plaintiffs nowhere suggest how they could amend the Complaint. Accordingly, the Complaint in its entirety should be dismissed with prejudice.

Dated: May 15, 2008

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Gideon A. Schor
Gideon A. Schor (GS-5932)

---

[24] *See Alliedsignal*, 329 F. Supp. 2d at 547 (plaintiffs state claim "to the extent their claim is premised on notes acquired through the Exchange Offering, but not as to notes purchased in the aftermarket"); *Ultrafem*, 91 F. Supp. 2d at 694 (similar); *DeMaria v. Andersen*, 153 F. Supp. 2d 300, 307-08 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170, 173 n.3 (2d Cir. 2003).

[25] *See Hockey v. Medhekar*, 30 F. Supp. 2d 1209, 1220-21 (N.D. Cal. 1998) ("While plaintiffs contend in ¶ 65 that Intel was, in actuality, no longer a major customer, they later maintain that Intel remained Alliance's largest customer as of December 1995. As plaintiffs contradict themselves . . . , the court finds that this allegation must be dismissed.").

[26] *See* DOB35 n.38.