# EXHIBIT 9

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 07-333 JVS (RNBx) | Date | March 14, 2008 |

| | |
|---|---|
| Title | National Account Management, Inc., et al. v. Shelly Singhal, et al. |

| | |
|---|---|
| Present: The Honorable | James V. Selna |

| | |
|---|---|
| Karla J. Tunis | Miriam Baird |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Nectaria Belantis | Pamela Johnston |
| | Michael B. McCollum |

**Proceedings:** Final Order Granting Defendants' Motion for Summary Judgment

Cause called and counsel make their appearances. The Court's tentative ruling is issued. Counsel make their arguments. The Court GRANTS the defendants' motion and rules in accordance with the tentative ruling as follows and vacates the pre trial conference and jury trial:

Defendant SBI-USA, LLC ("SBI") moves for summary judgment on all of Plaintiffs' National Account Management and Business Growth Funding, Inc. (collectively "NAMS") First Amended Complaint, pursuant to Federal Rule of Civil Procedure 56. NAMS opposes the motion.

## I.    Legal Standard

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-333 JVS (RNBx)                    Date   March 14, 2008

Title   National Account Management, Inc., et al. v. Shelly Singhal, et al.

functions," and are not to be engaged in by the Court in deciding a summary judgment motion.  Id.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact.  See id. at 322-23.

However, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); emphasis added.  "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Id.  On the other hand, if the non-moving party meets this burden, then the motion will be denied.  Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).

II.   Procedural Issues

As a preliminary matter, the Court addresses the effect of NAMS' Rule 36 admissions and NAMS' late-filed supplemental affidavits and additional evidence on the record before the Court.

A.   Rule 36 Admissions

On February 12, 2008, Magistrate Judge Block denied NAMS' Rule 36(b) motion to withdraw its admissions by default and to permit it to serve untimely responses. ("February 12 Order," Docket No. 163.)  This Court denies NAMS' Rule 72(a) request for reconsideration of that order in a separate ruling.  In NAMS' Opposition and again in its Sur-reply, which the Court denied it leave to file, NAMS insists that the evidence contradicts the admitted facts.  This assertion, even if true, does not provide any assistance to NAMS at this late stage of the proceedings.

It is well-established that "[e]vidence inconsistent with a Rule 36 admission is properly excluded."  999 v. C.I.T. Corp., 776 F.2d 866, 869-870 (9th Cir. 1985).  This is because:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-333 JVS (RNBx)                    Date   March 14, 2008

Title   National Account Management, Inc., et al. v. Shelly Singhal, et al.

"Rule 36(a) specifies that any matter admitted is 'conclusively established.' In form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party. An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible. This conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat a party's claim." American Automobile Association, Inc. v. AAA Legal Clinic of Jefferson Crooke, P.C., 930 F.2d 1117, 1120 (5th Cir. 1991) (internal citations and quotation marks omitted; emphasis added); see also Cook v. Allstate Insurance Company, 337 F. Supp. 2d 1206, 1210 (C.D. Cal. 2004) (quoting American Automobile Association, Inc.).

Similarly, a Rule 36 admission "is not merely another layer of evidence, upon which the district court can superimpose its own assessment of weight and validity." Airco Industrial Gases, Inc. v. The Teamsters Health and Welfare Pension Fund of Philadelphia, 850 F.2d 1028, 1037 (3d Cir. 1988). Rather, it is "an unassailable statement of fact that narrows the triable issues in the case." Id.; see also Tillamook Country Smoker, Inc., v. Tillamook County Creamery Association, 333 F. Supp. 2d 975, 984 (D. Or. 2004).

Accordingly, the Court views, as it must, the statements of fact made in the Requests for Admissions, which NAMS is deemed to have admitted, as conclusively established.

B.   Late Submissions of Evidence

In regard to the above-mentioned Sur-reply, the Court observes that even if it had granted NAMS' ex parte application to file that brief, the Court would have been free to disregard the affidavits and other evidence submitted in support of it.[1]

---

[1] Most of the exhibits attached to NAMS' Sur-reply brief are documents that were not previously in the record. However, Exhibits D, E and F are contained elsewhere in the record, viz. at SBI's Appendix of Evidence Exhibits 27 and 28. Accordingly, the Court considers this evidence at Part III.B.1, n. 2 and accompanying text, infra.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-333 JVS (RNBx) | Date | March 14, 2008 |

| | |
|---|---|
| Title | National Account Management, Inc., et al. v. Shelly Singhal, et al. |

First, the Court notes that it granted NAMS one continuance of the hearing on the summary judgment motion and additional time to file its response papers. (Docket No. 133.)

Second, NAMS has not made a motion under Rule 56(f) for an extension of time to submit additional affidavits in support of its Opposition. Fed. R. Civ. P. 56(f)(2). Even if NAMS had made the appropriate motion under Rule 56(f), it would be well within the Court's discretion to deny such a request and to refuse to consider such supplemental support, because it was filed after the final briefs on this motion were due, and after the Court issued its tentative ruling against NAMS. See, Ashton-Tate Corp. v. Ross, 916 F.2d 516, 520 (9th Cir. 1990) (observing that "the process of evaluating a summary judgment motion would be flouted if requests for . . . the introduction of supplemental affidavits had to be considered even if requested well after the deadline set for the introduction of all information needed to make a ruling has passed").

Moreover, if the Court were to consider NAMS' supplemental documents, it would also need to give SBI an opportunity to respond, and would, "thus prolong the court's decision on the summary judgment motion." Pfeil v. Rogers, 757 F.2d 850, 858 (7th Cir. 1985). Accordingly, the "decision to disregard all material submitted after a reasonable filing deadline is certainly not an abuse of discretion because it allow[s] the district court to preserve the moving party's right to respond to the resisting party's arguments and to decide the summary judgment motion in a timely fashion." Id.

Therefore, the Court declines to consider NAMS' late-filed affidavits and evidence.

III.  Discussion

This suit arises from the alleged breach of an escrow agreement ("Escrow Agreement") entered into in December 2003, between SBI, the escrow agent, and NAMS, the depositor. NAMS sent SBI certain stock certificates to be held by it, and alleges that SBI violated the terms of the Escrow Agreement when it sent those certificates to Richard Hue ("Hue") in September 2004.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-333 JVS (RNBx)                     Date   March 14, 2008

Title   National Account Management, Inc., et al. v. Shelly Singhal, et al.


A.     Statutes of Limitations

1.     Breach of Escrow Agreement

SBI argues that the 2-year statute of limitations for breach of an oral agreement should apply, because "the parties operated under their oral understanding [that] SBI would hold plaintiffs' certificates in accord with the terms of the draft written December 2003 agreement." (SUF No. 19; Opening Br. p. 14; Cal. Civ. Proc. Code § 339.) NAMS counters that, because the Escrow Agreement was in writing and represented the terms of the parties' agreement, the contract was "founded upon an instrument of writing" and thus subject to the four-year statute of limitations. (Opposition Br. p. 11; Cal. Civ. Proc. Code § 337.)

A "contract may be 'in writing' for the purposes of the statute of limitations even though it was accepted orally or by an act other than signing." Amen v. Merced County Title Co., 58 Cal. 2d 528, 532 (1962). "If the escrow instructions are in writing and the escrow holder accepts them . . . an action for failure to comply with the instructions is on a written contract." Id.; Kim v. Pacific Bell, 1999 U.S. Dist. LEXIS 15289 at 8-9 (N.D. Cal. 1999). Therefore, since the parties agree that the Escrow Agreement "sets forth the terms and conditions governing [NAMS] relationship with SBI," that agreement is "founded upon an instrument of writing." (SUF No. 60; Cal. Civ. Proc. Code § 337.)

Accordingly, the four-year statute of limitations applies to the claim for breach of the Escrow Agreement. Moreover, the four-year statute of limitations applies to all of the claims, including negligence, fraud, breach of fiduciary duty, intentional and negligent interference with prospective advantage, and declaratory relief, that arise from the breach of the Escrow Agreement. Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc., 115 Cal. App. 4th 1145, 1153 (2004) ("What is significant for statute of limitations purposes is the primary interest invaded by defendant's wrongful conduct") (internal citation and quotation marks omitted).

Therefore, since the alleged breach of the Escrow Agreement occurred in September 2004, and this suit was commenced in February 2007, all of the aforementioned claims are timely.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-333 JVS (RNBx)                    Date   March 14, 2008

Title   National Account Management, Inc., et al. v. Shelly Singhal, et al.

<br>

      2.     State Securities Claim

California Corporations law provides that civil actions under the state securities laws must be brought "before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, <u>whichever shall first expire</u>." Cal. Corp. Code § 25506 (emphasis added).

Here, the acts giving rise to NAMS' state securities claim were known to it at the latest on December 6, 2004, when Nathan Drage ("Drage") wrote to Arthur Marcus ("Marcus") demanding return of the shares at issue and threatening to sue if that demand was not satisfied. (SBI Appx. 75.) The alleged violations took place in September 2004. Therefore, the two-year period after the discovery of the facts constituting the violation expired before the expiration of the five-year period after the alleged acts. Accordingly, the two-year limitations period applies.

Therefore, since NAMS discovered the violations in December 2004, but did not file suit until February 2007, its claims under California securities laws are time-barred.

    B.    Evidence in Support of the Individual Claims

      1.     Breach of Escrow Agreement

A claim for breach of contract requires proof of the following elements: "[1] the existence of the contract, [2] performance by the plaintiff or excuse for nonperformance, [3] breach by the defendant and [4] damages. First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (Cal. Ct. App. 2001) (citing 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476, p. 570).

Here, NAMS asserts that "SBI's breach of the agreement and the release of the Certificates to Hue resulted in a series of events that deprived [NAMS] of their ability to sell their shares in the open market," and calculates its damages based on the price at which it asserts it would have been able to sell the shares, had SBI not sent the certificates to Hue. (Opposition Br. pp. 6-7; Negrete Decl. Ex. C.) SBI presents substantial evidence that NAMS has not, in fact, suffered damage due to SBI's transfer of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-333 JVS (RNBx) | Date | March 14, 2008 |
|---|---|---|---|

| Title | National Account Management, Inc., et al. v. Shelly Singhal, et al. |
|---|---|

the certificates to Hue.

First, SBI argues that the shares at issue were never registered with the SEC and therefore NAMS could not have sold them. (Opening Br. pp. 6-8.) NAMS admits that its shares were not registered. (Opposition Br. p. 9; SBI Appx. Ex. 5 at p. 60, Ex. 6 at p. 83; February 12 Order.) Second, SBI notes that the shares at issue were restricted and so could not be legally sold on the market under Rule 144 at the relevant time. (SUF No. 52; 17 C.F.R. § 230.144.) NAMS has admitted that 1) the shares were restricted, 2) it was required to execute Form 144 in order to sell the shares, 3) it never executed Form 144,[2] and 4) that the shares "were ineligible to be sold to the public when the . . . Certificates were allegedly deposited with SBI." (17 C.F.R. § 230.144(h)(2); SBI Appx. Ex. 5 at p. 60, Ex. 6 at p. 83; February 12, 2008 Order.) Accordingly, SBI has shown that NAMS could not have sold the shares at issue, and NAMS has failed to rebut that showing.

SBI also cites evidence that shows that the certificates were invalid under the applicable Maryland laws.[3] The Maryland Commercial Code provides that "[a]n unauthorized signature placed on a security certificate before or in the course of issue is ineffective." Md. Comm. Law Code Ann. § 8-205. An "unauthorized signature" is one "made without actual, implied, or apparent authority and includes a forgery." Md. Comm. Law Code Ann. § 1-201. Authorized signatures include those by "the president, a vice president, the chief executive officer, the chief operating officer, the chief financial officer, the chairman of the board, or the vice chairman of the board and countersigned by

---

[2] NAMS contends that it did, in fact, execute Form 144, and points to the documents in SBI's Appendix of Evidence at Exhibits 27 and 28 as proof. Even if NAMS could thus overcome the conclusive admission contained in the Requests for Admission, which it cannot, the mere fact that NAMS executed Form 144 does not create a genuine issue of fact as to whether such executed form was ever transmitted the SEC so as to have any effect.

[3] It is undisputed that Perfisans Holdings, Inc. ("Perfisans") is incorporated under the laws of Maryland. (Response to SUF No. 10.) Therefore, under the internal affairs doctrine, Maryland law applies to the issuance of Perfisans' shares. State Farm Mutual Automobile Ins. Co. v. Superior Court, 114 Cal. App. 4th 434, 442 (Cal. Ct. App. 2003). The Court does not credit NAMS' unsupported assertions that "Maryland law is not relevant to this matter." (Response to Conclusions of Law ("COL") Nos. 8, 10.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-333 JVS (RNBx) | Date | March 14, 2008 |
|---|---|---|---|

| Title | National Account Management, Inc., et al. v. Shelly Singhal, et al. |
|---|---|

the secretary, an assistant secretary, the treasurer, or an assistant treasurer." Md. Corp. and Assn. Code Ann. Md.§ 2-212.

Here, the parties do not dispute that the certificates at issue were signed by Landon Barretto, as CEO of Perfisans, and dated September 14, 2004. (SBI Appx. Exs. 2, 4; Response to SUF Nos. 35, 39.) Nor do the parties dispute that Landon Barretto "was neither an officer nor director of Griffin, nor any successor entity," including Perfisans, after April 2003. (Response to SUF Nos. 23, 27.) Barretto did not hold the position and hence lacked the capacity in which he allegedly signed. Therefore, Landon Barretto was not authorized to sign the Perfisans stock certificates in September 2004.

Maryland law provides for an exception for the authorized signature requirement and allows that an unauthorized "signature is effective in favor of a purchaser for value of the certificated security if the purchaser is without notice of the lack of authority and the signing has been done by" a specified person. Md. Comm. Law Code Ann. § 8-205. SBI provides substantial evidence that NAMS was not a purchaser for value, since it did not provide any consideration in order to obtain the shares. (SBI Appx. 24, Drage Depo. 140:18-141:2, 142:12-15, 146:16-17.) NAMS does not dispute that it paid nothing for the debt it received from Portsmith Partners of Nevada, Inc., debt which was later converted into the shares at issue here. (Response SUF No. 25.) Accordingly, NAMS effectively concedes that it does not qualify for the exception to Maryland's requirement that security certificates bear an authorized signature,[4] and therefore that the certificates were ineffective.

SBI produces evidence, which NAMS fails to rebut, that conclusively demonstrates

---

[4] The Court notes that NAMS does not address SBI's argument related to the validity of the certificates under Maryland law in its brief. Notwithstanding, with its Sur-reply, NAMS seeks to submit a certificate of stock signed by Landon Barretto that it contends evidences that the certificates were, in fact, transferable under Maryland law. While the Court refuses to consider that evidence for the reasons discussed at Part II.B supra, it notes a stock certificate, taken alone, is not evidence that the shares represented by that particular certificate were actually transferred, as NAMS argues, or even transferable. Moreover, SBI notes that this certificate is for shares owned by another entity, one which, in contrast to NAMS, was a purchaser for value and thus potentially eligible for the exception under the Maryland statute. Md. Comm. Law Code Ann. § 8-205.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-333 JVS (RNBx) | Date | March 14, 2008 |

| Title | National Account Management, Inc., et al. v. Shelly Singhal, et al. |

that NAMS could not have sold the shares, irrespective of whether SBI had transferred the certificates to Hue, because the shares were neither registered nor complied with the requirements of Rule 144.[5]  The evidence further demonstrates that the certificates themselves were invalid, because they bore an unauthorized signature.  Accordingly, NAMS cannot prove that it lost potential trading profits because SBI sent the certificates to Hue, and therefore cannot prove that it was damaged by SBI's alleged breach.

NAMS submits with its Sur-reply various documents that it claims support a finding that it was damaged.[6]  First, in light of the finding that NAMS could not have sold its shares even if SBI had not sent the certificates to Hue, the "[t]rading [h]istory of Defendants establishing illegal activity and value of shares/damages" is irrelevant, no matter what the value of the shares was.  (Negrete Decl. in Supp. of Sur-reply, pp.2-3, Ex. B.)  Second, NAMS includes a letter from David B. Stocker which purportedly opines that NAMS' shares were transferable and "Perfisans Shares provided to transfer agent pursuant to opinion and Rule 144."  (Id., p. 4, Exs. I, J.)  These documents are insufficient to create a genuine issue as to whether NAMS could have sold its shares during the relevant time period.

Accordingly, a reasonable jury could not find that NAMS is entitled to recover under its theory for breach of Escrow Agreement.  Moreover, as discussed below, NAMS' consent to the transfer vitiates any claim for breach of contract.  (See, Part III.B.3, infra.)  The Court grants SBI's motion as to this claim.[7]

---

[5]  NAMS submits with its Sur-reply a letter from Nathan Drage stating "[a]ny sales following the release [of the shares from escrow] will have to be in conformance with Rule 144."  (Sur-reply Br., Ex. D.)  Contrary to NAMS' contentions, however, this statement does not support a finding that Rule 144 was actually complied with so as to make sale of the share permissible.

[6]  The Court notes that NAMS' Sur-reply discusses, but does not include copies of, Exhibits A, B, C and I.  Neither did NAMS file those documents under seal, notwithstanding counsel's representation at oral argument to the contrary.

[7]  As described below, the failure of proof on damages is also a fatal defect under each of the remaining causes of action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | SACV 07-333 JVS (RNBx) | | Date | March 14, 2008 |

| | |
|---|---|
| Title | National Account Management, Inc., et al. v. Shelly Singhal, et al. |

2.  <u>Negligence</u>

The parties agree that the terms of the Escrow Agreement govern their relationship. (SUF No. 60.)  The Escrow Agreement expressly limits SBI's liability:  "The Escrow Agent shall not be liable for any error of judgment or for any act done or step taken or omitted by it in good faith, or for any mistake of fact or law, or for anything which it may do or refrain from doing in connection herewith, <u>except</u> <u>its</u> <u>own</u> <u>willful</u> <u>misconduct.</u>"  (<u>Id.</u> No. 61; SBI Appx. 80, p. 608.)  The Escrow Agreement further exempts SBI from liability for the acts of its agents:  "The Escrow Agent shall not be answerable, liable, or otherwise responsible for the default or misconduct of any agent, attorney or employee appointed by it if such agent, attorney or employee shall have been selected with reasonable care."  (SBI Appx. 80, p. 608.)

Thus, the Escrow Agreement precludes any claim against SBI for negligence. While NAMS disputes that SBI is not liable for acts of negligence, it fails to produce a shred of evidence in support of that contention.  (Response to SUF No. 61.)

Accordingly, the Court finds that there is no genuine issue as to whether SBI can be held liable for negligent acts under the terms of the parties' Escrow Agreement. Therefore, the Court grants SBI's motion as to this claim.

3.  <u>Fraud</u>

"[T]he elements of fraud [] are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  <u>Buckland</u> v. <u>Threshold</u> <u>Enterprises, Ltd.</u>, 155 Cal. App. 4th 798, 806-807 (Cal. Ct. App. 2007) (internal quotation marks and citations omitted).

Here, SBI has established that "no one from SBI specifically intended to harm [NAMS]."  (SUF No. 56.)  It has also established that "SBI did not intend to induce detrimental reliance on any representations regarding the location of [NAMS'] certificates for the restricted shared."  (SUF No. 57.)  It has pointed to evidence that indicates NAMS cannot prove its claimed damages.  (SUF Nos. 54, 55.)  Most significantly, SBI conclusively establishes that "a representative of NAMS consented to SBI sending NAMS' certificates to Hue," and, similarly, that "a representative of BGF

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-333 JVS (RNBx) | Date | March 14, 2008 |

| | |
|---|---|
| Title | National Account Management, Inc., et al. v. Shelly Singhal, et al. |

consented to SBI sending BGF's certificates to Hue."[8]  (SUF Nos. 37, 38.)  Thus, SBI establishes that a jury could not reasonably find that there was misrepresentation, intent to defraud, or damages.

NAMS has failed to produce any evidence in support of its claims sufficient to create a genuine issue of fact in the face of SBI's showing.  (See e.g., Response to SUF No. 56.)  First, the fact that NAMS consented to SBI sending the certificates to Hue is deemed admitted.  (SBI Appx. Ex. 5 p. 59, Ex. 6 p. 82; February 12, 2008 Order.)

The only evidence that NAMS produces in support of its claim that it suffered damages is a few lines of Wayne Mower's deposition testimony, in which he describes how he came up with the damages figure listed in response to an interrogatory.  (Response to SUF Nos. 54, 55, 57.)  Mr. Mower simply asserts that the stock was worth $2.44 per share.  (Negrete Decl. Ex. C, 139:18-21.)  This is insufficient to create a genuine issue of fact as to whether NAMS incurred any damages as a result of SBI's alleged conduct, particularly in light of SBI's substantial showing, discussed above, that NAMS did not suffer damages.  See Villiarimo v. Aloha Island Air, Inc., 281 F3d 1054, 1061 (9th Cir. 2002) (noting that where the only evidence presented is "uncorroborated and self-serving" testimony, there is no genuine issue).

Finally, NAMS purportedly disputes that SBI did not intend to harm it and that SBI did not intend to induce detrimental reliance, but cites no evidence in support of its assertions.  (Response to SUF Nos. 56, 57; Opposition Br. p. 16.)  NAMS fails, therefore, to create a genuine issue of fact as to SBI's intent.

Accordingly, the Court grants SBI's motion as to this claim.

### 4.  Breach of Fiduciary Duty

"The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach." Mendoza v. Continental Sales Co., 140 Cal. App. 4th 1395, 1405 (Cal. Ct. App. 2006).

---

[8]  NAMS' protestations to the contrary are unavailing against the backdrop of its Rule 36 admissions, as discussed at Part II.A, supra.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-333 JVS (RNBx) | Date | March 14, 2008 |
|---|---|---|---|

| Title | National Account Management, Inc., et al. v. Shelly Singhal, et al. |
|---|---|

NAMS' unsupported assertion that "[t]he evidence does not support [SBI's] contention [that it owed only ministerial duties]" is insufficient to create a genuine issue as to whether SBI had a fiduciary duty to NAMS. (Opposition Br. p. 18.) Neither is the unauthenticated account application form NAMS attached to its Sur-reply. Even assuming SBI had a fiduciary duty to NAMS simply because it acted as an escrow agent, NAMS has failed to produce evidence that the duty was breached, or that it was damaged by that breach. See generally, St. Paul Title Co. v. Meier, 181 Cal. App. 3d 948, 952 (Cal. Ct. App. 1986). As discussed in the preceding sections, NAMS has not produced evidence to support a reasonably jury finding that it was damaged by SBI's actions.

Accordingly, the Court grants SBI's motion for summary judgment as to this claim.

> 5.    State Securities Fraud

As discussed above in Part III.A.2, NAMS claims for violation of California securities laws are time-barred.

However, even if the claim were timely, NAMS fails to present evidence sufficient to create a genuine factual issue as to each of the elements necessary for a securities fraud claim under California law.

The California Corporations Code provides that "[a]ny person who willfully participates in any act or transaction in violation of Section 25400 shall be liable to any other person who purchases or sells any security at a price which was affected by such act or transaction." Cal. Corp. Code § 25500; emphasis added. Section 25400 sets forth various unlawful acts to induce purchase or sale of securities. Id. § 25400.

NAMS does not allege nor does it provide any evidence to support a reasonable jury finding, that it purchased or sold a security at a price affected by SBI's alleged violations. In fact, NAMS' entire theory is that SBI deprived NAMS of possession of its shares and therefore prevented NAMS from selling those shares.

Accordingly, the Court finds that NAMS does not meet its burden to show genuine issues of material fact as to its state law securities claims, and accordingly grants SBI's motion as to this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-333 JVS (RNBx) | Date | March 14, 2008 |

| | |
|---|---|
| Title | National Account Management, Inc., et al. v. Shelly Singhal, et al. |

     6.    Civil RICO

NAMS' Complaint does not specify the section or sections of the civil RICO statute, 18 U.S.C. §§ 1962, 1964, under which it seeks to recover.

In order to recover under section 1962(a), plaintiffs must show "that he or she was injured by the use or investment of racketeering income." See Wagh v. Metris Direct, Inc., 363 F.3d 821, 828 (9th Cir. 2003) (quoting Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co., 981 F.2d 429, 437 (9th Cir. 1992), discussing 1962(a) in the context of 12(b)(6)).

In order to recover under section 1962(b), a plaintiff must prove two elements: First, that the activities of the defendant "led to its control or acquisition over a RICO enterprise," and second that the plaintiff was injured as a result of "defendant's control or acquisition of a RICO enterprise." Id. at 830.

Finally, in order to recover under section 1962(c), a plaintiff must prove "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Odom v. Microsoft, 486 F.3d 541, 547 (9th Cir. 2007) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).

Here, SBI indicates that there is evidence to show that NAMS was not injured by funds derived from SBI's alleged racketeering activity. (SUF No. 69.) NAMS purports to dispute this fact and cites to one piece of evidence, but uses a format, apparently a Bates number, which does not allow the Court to find it in the record. (Response to SUF No. 69.) On the present record, therefore, the Court finds that there is no genuine issue of fact as to whether SBI violated section 1962(a).

As to section 1962(b), neither party discusses or provides any evidence related to SBI's acquisition of control over a RICO enterprise. Accordingly, the Court finds that there is no issue of fact as to whether SBI violated that section.

Finally, SBI argues that NAMS' evidence shows, at best, one isolated "transgression" which, without more, cannot prove the "pattern" of activity required for a section 1962(c) claim. (SUF Nos. 68, 71; Opening Br. p. 21.) NAMS disputes that it claims only one incident, but again cites to only one piece of evidence in a format which

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-333 JVS (RNBx) | Date | March 14, 2008 |
|---|---|---|---|

| Title | National Account Management, Inc., et al. v. Shelly Singhal, et al. |
|---|---|

does not allow the Court to locate it in the record. (Response to SUF Nos. 68, 71.) Accordingly, the Court finds that there is no genuine issue of fact as to SBI violated section 1962(c).

Therefore, the Court grants SBI's motion as to this claim.

7.     Intentional and Negligent Interference with Prospective Advantage

A claim for interference with prospective economic advantage includes the following elements: "[1] an economic relationship between [the plaintiff] and a third party that carries a probability of future economic benefit to the plaintiff, [2] defendant's knowledge of the relationship, [3] intentional acts by the defendant designed to disrupt the relationship, [4] actual disruption of the relationship, and [5] economic harm to the plaintiff proximately caused by the defendant's acts." Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc., 138 Cal. App. 4th 1215, 1220 (2006).

SBI points to evidence in the record that indicates that NAMS cannot prove that it had any economic relationships that were disrupted, and argues that "[NAMS] cannot even identify an economic relationship let alone prove one." (SUF No. 72; Opening Br. p. 22.) In response, NAMS states generally that the "unauthorized transfer of shares affected [its] business." (Response to SUF No. 72.) However, conduct which affects a plaintiff's business, without more, involves no protected relationships. Moreover, NAMS cites no evidence in support of this contention, or in support of its assertion that "[i]ssues of fact remain as to the business relationships or agreements between [NAMS] and their customers or clients." (Opposition Br. p. 22.)

Accordingly, the Court grants SBI's motion as to the claims for intentional and negligent interference with prospective advantage.

8.     Quasi-Contract and Restitution

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-333 JVS (RNBx)                      Date   March 14, 2008

Title   National Account Management, Inc., et al. v. Shelly Singhal, et al.

 

"[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights."

Cal. Medical Ass'n v. Aetna U. S. Healthcare of Cal., 94 Cal. App. 4th 151, 172-173 (Cal. Ct. App. 2001). Therefore, "[w]hen parties have an actual contract covering a subject, a court cannot--not even under the guise of equity jurisprudence--substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." Hedging Concepts v. First Alliance Mortgage Co., 41 Cal. App. 4th 1410, 1420 (Cal. Ct. App. 1996).

Here, the parties all agree that the terms of the Escrow Agreement express the parties agreement. (SUF No. 60.) Therefore, NAMS may not bring claims for quasi-contract and restitution, since those claims cannot stand in the face of the parties' express agreement.[9]

Accordingly, the Court grants summary judgment against NAMS as to this claim.

      9.    Declaratory Relief

This Court has the authority to declare the rights and legal relations of interested parties seeking such a declaration. 28 U.S.C. § 2201(a); Fed. R. Civ. P. 57. Declaratory relief is proper in a contract action such as this one where a party seeks to resolve a dispute over the meaning or validity of a contract agreement. See, e.g., Black Gold Marine, Inc. v. Jackson Marine Co., 759 F.2d 466, 471 (5th Cir. 1985); Topps Chewing Gum, Inc. v. Fleer Corp., 799 F.2d 851, 856 (2d Cir. 1986).

---

[9] NAMS notes that it is entitled to plead in the alternative. (Opposition Br. p. 23.) However, in the context of a summary judgment motion, the evidence in support of each claim, and not the pleading, is dispositive. Since the uncontested facts preclude recovery on a quasi-contract or restitution theory, summary judgment on those claims is appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-333 JVS (RNBx) | Date | March 14, 2008 |

| | |
|---|---|
| Title | National Account Management, Inc., et al. v. Shelly Singhal, et al. |

Since the Court grants SBI summary judgment on NAMS' claim for breach of the Escrow Agreement and related claims in this Order, SBI is entitled to a declaration in its favor on all theories advanced by NAMS.

IV.    Conclusion

For the foregoing reasons, the Court GRANTS SBI's motion for summary judgment in its entirety.

|  | : | 10 |
|---|---|---|
| Initials of Preparer | sdm | |