UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

IN RE XINHUA FINANCE MEDIA, LTD.
SECURITIES LITIGATION

Master File 07 Civ. 3994 (LTS)

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE UNDERWRITER
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT**

CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY  10019
(212) 878-8000

*Attorneys for Defendants JP Morgan
Securities, Inc., UBS AG, CIBC World Markets
Corp. and W.R. Hambrecht + Co. LLC*

NYA 891631.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ..............................................................................................................2

**I.**  **PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION UNDER SECTION 11 OR SECTION 12** ........................................2

    **A.**  Unproven Allegations Against Singhal are Not Actionable Omissions .................2

    **B.**  The Prospectus' Single Sentence About Xinhua's Strong Management Team is Not an Actionable Misstatement ...............................................................6

    **C.**  Plaintiffs Concede that Singhal's Related Party Transactions Were Disclosed.......................................................................................................9

    **D.**  Plaintiffs Concede that an Alleged Failure to Conduct Due Diligence Does Not State a Claim Under Sections 11 or 12(a)(2) ...................................................10

    **E.**  Defendants Are Not Liable for the Stock Drop Before the Corrective Disclosure ...........................................................................................11

**II.**  **PLAINTIFFS LACK SECTION 12 STANDING BECAUSE THEY DID NOT PURCHASE SHARES IN THE IPO AND DO NOT ALLEGE A DIRECT PURCHASE FROM ANY UNDERWRITER DEFENDANT**.........................................12

    **A.**  Plaintiffs' Cited Authority Confirms that There Is No Section 12(a)(2) Liability to Aftermarket Purchasers Such As Plaintiffs.........................................12

    **B.**  Plaintiffs Still Fail to Allege that They Themselves Purchased Shares Directly from the Underwriter Defendants ...........................................................14

CONCLUSION................................................................................................................15

NYA 891631.1

## TABLE OF AUTHORITIES

**Page**

### CASES

*In re Adams Golf, Inc. Sec. Litig.*,
381 F.3d 267 (3d Cir. 2004)......................................................................6

*Am. High-Income Trust v. AlliedSignal*,
329 F. Supp. 2d 534 (S.D.N.Y. 2004).................................................12, 13

*In re Azurix Corp. Sec. Litig.*,
198 F. Supp. 2d 892 (S.D. Tex. 2002),
*aff'd,* 332 F.3d 854 (5th Cir. 2003).......................................................12

*In re Computer Assocs. Class Action Sec. Litig.*,
75 F. Supp. 2d 68 (E.D.N.Y. 1999) ...........................................................7

*Dartley v. ErgoBilt, Inc.*,
2001 WL 313964 (N.D. Tex. Mar. 29, 2001) ...........................................12

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)....................................................................13

*In re Donald J. Trump Casino Sec. Litig.*,
7 F.3d 357 (3d Cir. 1993),
*cert. denied*, 510 U.S. 1178 (1994)........................................................10

*In re Donna Karan Int'l Sec. Litig.*,
1998 WL 637547 (E.D.N.Y. Aug. 14, 1998)............................................10

*In re Franchard Corp.*,
Release No. 33-4710, 42 S.E.C. 163 (July 31, 1964) ............................. 4-5

*GAF Corp. v. Heyman*,
724 F.2d 727 (2d Cir. 1983)..........................................................2-3, 5-6

*Garber v. Legg Mason, Inc.*,
537 F. Supp. 2d 597 (S.D.N.Y. 2008),
*appeal docketed*, No. 08-1831-CV (2d Cir. Apr. 16, 2008) .......................3, 9

*Gebhardt v. ConAgra Foods, Inc.*,
335 F.3d 824 (8th Cir. 2003) ....................................................................5

*In re Global Crossing, Ltd. Sec. Litig.*,
313 F. Supp. 2d 189 (S.D.N.Y. 2003).......................................................13

NYA 891631.1

## TABLE OF AUTHORITIES

**Page**

*Greenhouse v. MCG Capital Corp.*,
  392 F.3d 650 (4th Cir. 2004). ..................................................................4

*Grossman v. Novell, Inc.*,
  120 F.3d 1112 (10th Cir. 1997) ............................................................ 7-8

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1996).........................................................................12

*Kline v. First W. Gov't Sec., Inc.*,
  24 F.3d 480 (3d Cir.),
  *cert. denied*, 513 U.S. 1032 (1994)..................................................... 6-7

*Komanoff v. Mabon, Nugent & Co.*,
  884 F. Supp. 848 (S.D.N.Y. 1995).......................................................12

*Lasker v. N.Y. State Elec. & Gas Corp.*,
  85 F.3d 55 (2d Cir. 1996) ..................................................................8

*In re Marsh & McLennan Cos. Sec. Litig.*,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006)...................................................7

*Nat'l Account Mgmt. Inc. v. Shelly S. Singhal*,
  Case #8:07-cv-00333-JVS-RNB (C.D. Cal. Feb. 4, 2008) ...........................2

*In re N.Y. Cmty. Bancorp, Inc. Sec. Litig.*,
  448 F. Supp. 2d 466 (E.D.N.Y. 2006) ..................................................8

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir.),
  *cert. denied*, 531 U.S. 1012 (2000).....................................................7

*In re PMA Capital Corp. Sec. Litig.*,
  2005 WL 1806503 (E.D. Pa. July 27, 2005)..............................................7

*In re Prestige Brands Holding, Inc.*,
  2006 WL 2147719 (S.D.N.Y. July 10, 2006) ................................12, 13, 14

*Rosen v. Textron, Inc.*,
  321 F. Supp. 2d 308 (D.R.I. 2004)...........................................................8

*Schoenhaut v. Am. Sensors, Inc.*,
  986 F. Supp. 785 (S.D.N.Y. 1997)....................................................... 12-13

NYA 891631.1

# TABLE OF AUTHORITIES

**Page**

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
266 F. Supp. 2d 1150 (C.D. Cal. 2003) ............................................................12, 13

*Sheppard v. TCW/DW Term Trust 2000*,
938 F. Supp. 171 (S.D.N.Y. 1996)...............................................................................10

*U.S. S.E.C. v. Fehn*,
97 F.3d 1276 (9th Cir. 1996),
*cert. denied*, 522 U.S. 813 (1997) .......................................................................... 3-4

*United States v. Matthews*,
787 F.2d 38 (2d Cir. 1986)........................................................................................6

*In re U.S.A. Classic Sec. Litig.*,
1995 WL 363841 (S.D.N.Y. June 19, 1995) ............................................................13

*In re WorldCom, Inc. Sec. Litig.*,
346 F. Supp. 2d 628 (S.D.N.Y. 2004)......................................................................14

*Zell v. InterCapital Income Sec., Inc.*,
675 F.2d 1041 (9th Cir. 1982) ...................................................................................5

## STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)...................................................................................................1

15 U.S.C. § 77k.......................................................................................... *passim*

15 U.S.C. § 77l(a)(2)................................................................................ *passim*

- iv -

NYA 891631.1

Defendants JP Morgan Securities, Inc., UBS AG, CIBC World Markets Corp. and W.R. Hambrecht + Co. LLC (collectively, the "Underwriter Defendants") submit this reply memorandum in further support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition asks this Court to create a whole new category of disclosure obligations. Plaintiffs concede that no current SEC regulation required Xinhua's Registration Statement and Prospectus (together, "Prospectus") to disclose unproven civil allegations against an executive arising out of his involvement with an unrelated company. Nor do Plaintiffs cite any regulation imposing a duty to disclose the executive's past association with unrelated companies that were later accused of wrongdoing, although the executive himself was not. Nowhere in their 60-page submission do Plaintiffs cite a *single* case holding that such allegations must be disclosed.

This case underscores why the securities laws do not require such disclosure. The RICO lawsuit against Singhal that was a centerpiece of Plaintiffs' Complaint and Opposition has now been dismissed with prejudice. Yet, Plaintiffs urge this Court to create a new rule requiring disclosure of such unfounded allegations. This Court should reject Plaintiffs' invitation to legislate, and dismiss the Complaint for failure to plead an actionable omission or misstatement under Section 11 or Section 12(a)(2).

Plaintiffs' Opposition also confirms their inability to plead Section 12(a)(2) standing. Plaintiffs' own authority requires them to allege that they purchased Xinhua shares directly in the IPO, yet Plaintiffs make no such allegation. Similarly, assertions that the Underwriter Defendants sold Xinhua shares, and that Plaintiffs purchased Xinhua shares, do not "add up" to

---

[1]  The Underwriter Defendants' Reply Memorandum addresses only those portions of Plaintiffs' Opposition which responded to arguments in the Underwriter Defendants' Moving Memorandum.

the requisite allegation that the Underwriter Defendants sold shares *directly* to Plaintiffs.  For these reasons as well, Plaintiffs' Section 12(a)(2) claim should be dismissed.

## ARGUMENT

## I.

## PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION UNDER SECTION 11 OR SECTION 12

### A.    Unproven Allegations Against Singhal are Not Actionable Omissions

Plaintiffs' omissions claims now focus on a single paragraph about Singhal's background in Xinhua's 210-page Prospectus.[2]  According to Plaintiffs, even though that paragraph was "literally 'true,'"[3] Sections 11 and 12(a)(2) required that paragraph to also disclose that:  (1) one month earlier, a lawsuit made unproven RICO allegations against Singhal about his involvement with an unrelated company, Perfisans; (2) another unrelated company, Bedrock, which Singhal ran, was the subject of an ongoing NASD investigation; and (3) Singhal formerly had some tangential association with other unrelated companies accused of wrongdoing, although Singhal himself never was accused of such wrongdoing.[4]  Nothing in Plaintiffs' Opposition supports their position.

As a threshold matter, the Perfisans complaint against Singhal was *dismissed with prejudice* in February 2008.[5]  That dismissal is a perfect example of why, "[i]n a society as

---

[2]    Pl. Opp. at 32-33; Compl. ¶ 32.  The Prospectus is attached to the Declaration of Mark Holland dated May 16, 2008 ("Holland Reply Decl.") as Exhibit A.  The paragraph Plaintiffs rely on appears at page 157.

[3]    Pl. Opp. at 38.

[4]    *See* Pl. Opp. at 7-11.

[5]    *See* Minutes of Motion Hearing, *Nat'l Account Mgmt. Inc. v. Shelly S. Singhal*, Case #8:07-cv-00333-JVS-RNB (C.D. Cal. Feb. 4, 2008), Docket Item No. 166.  The Xinhua Defendants are submitting a copy of that docket with their Reply Memorandum in further support of their motion to dismiss.

NYA 891631.1

litigious as ours," the Second Circuit has refused to require disclosure of "bald, untested allegations in a civil complaint not involving the subject corporation."[6]

Further, Plaintiffs concede that Item 8.A.7 of Form 20-F, which required Xinhua's Prospectus to provide information on any legal or arbitration proceedings *involving Xinhua*, "is geared towards alerting investors to the financial outlook of the company and the impact of litigation on a company's bottom line," and that the alleged omissions about Singhal "do[] not speak to that concern."[7]  Plaintiffs thus acknowledge that no SEC rule required disclosure of those unproven allegations about Singhal.  As noted in the Underwriter Defendants' Moving Memorandum, courts have dismissed Section 11 and 12(a)(2) claims where the relevant SEC rules did not require disclosure of the allegedly omitted information.[8]  *See also Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 612-14 (S.D.N.Y. 2008) (Chin, J.) (Sections 11 and 12(a)(2) claims dismissed because there was no duty to disclose the omitted information), *appeal docketed*, No. 08-1831-CV (2d Cir. Apr. 16, 2008).

Plaintiffs instead rely on Regulation C's general instruction to disclose all information to make the required statements not misleading.[9]  Yet Plaintiffs fail to cite a *single* case requiring disclosure of unproven civil allegations against a company's executive concerning totally unrelated companies.  While Plaintiffs' Opposition cites many cases for the unremarkable proposition that disclosures must be complete in order to not be misleading, they make no attempt to show why the facts of those cases support their omissions claim here.[10]  The only case where Plaintiffs do mention the facts is easily distinguished.  In *United States Securities and*

---

[6]    *GAF Corp. v. Heyman*, 724 F.2d 727, 739 (2d Cir. 1983).

[7]    Pl. Opp. at 21.

[8]    *See* Underwriter Def. Moving Mem. at 12-13 & n.37.

[9]    *See* Pl. Opp. at 20.

[10]    *See* Pl. Opp. at 38-40.

NYA 891631.1

*Exchange Commission v. Fehn*, 97 F.3d 1276, 1290 (9th Cir. 1996), *cert. denied*, 522 U.S. 813 (1997) (cited in Pl. Opp. at 40), the court held that past securities law violations by a company and its promoter which resulted in an injunction and conviction -- not mere unproven allegations -- must be disclosed because of the potential lawsuits against the company arising from those violations. Here, by contrast, there has been no injunction, no conviction, and no threat that Singhal's past associations with unrelated companies would generate any litigation against Xinhua -- other than this lawsuit.

Plaintiffs argue that this Court should mandate such disclosure as a policy matter because "management's integrity is 'always a material factor,'" particularly since Xinhua's securities offering -- in retrospect -- supposedly was "largely predicated" on Singhal's reputation and abilities.[11] Plaintiffs proffer only ancient authority for this proposition, *In re Franchard Corp.*, Release No. 33-4710, 42 S.E.C. 163 (July 31, 1964), and that case involved completely different facts.[12]

In *Franchard*, a real estate developer and investor named Glickman formed Franchard Corporation to group together several of his businesses. The SEC noted that Franchard's IPO "was made primarily, if not solely, on Glickman's name and reputation as a successful real estate investor and operator," and that prospective purchasers of Franchard's securities "were, in effect, being offered an opportunity to 'buy' Glickman management of real estate investments." *Id.* at *6. A few days after Franchard's IPO, Glickman began secretly transferring money from Franchard to one of Glickman's wholly owned corporations. The SEC concluded that the prospectus should have disclosed Glickman's intent to make those withdrawals because they were "material transactions" between Franchard and its management and were diverting funds

---

[11]    Pl. Opp. at 43-44.

[12]    Indeed, the Fourth Circuit has remarked that *Franchard*'s statements about materiality are superceded by more recent United States Supreme Court precedent. *See Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 659-60 (4th Cir. 2004).

NYA 891631.1

from Franchard's operations, and also because they were "germane to an evaluation of the integrity of [Glickman's] management." *Id.* at *7. Glickman's actions thus involved the issuer's assets and direct harm to those assets.

In contrast to *Franchard*, Plaintiffs here do not allege that Singhal engaged in any wrongdoing involving Xinhua or its assets. Plaintiffs claim that Xinhua's Prospectus "highlighted Defendant Singhal as a person the Company could not get along without," but fail to cite to any such Prospectus statements, nor could they.[13] Singhal was one of several Xinhua executives and directors and is not even mentioned by name until page 156 of Xinhua's 210-page prospectus. *Franchard* thus fails to support Plaintiffs' claims.[14]

Lacking any supporting authority for their position, Plaintiffs instead try -- and fail -- to distinguish Defendants' cases.[15] For example, Plaintiffs claim that *GAF Corporation*, 724 F.2d at 727, is "inapposite" because the undisclosed litigation in that case involved an intrafamily dispute about a loan transaction, whereas the unproven allegations about Singhal here supposedly are "material information on which a shareholder would rely in assessing the abilities or business acumen of a principal in a corporation."[16] However, the Second Circuit in *GAF Corporation* squarely rejected that distinction. It noted that "[v]ast numbers of allegations arguably implicate a prospective director's 'integrity and fitness,'" but concluded that requiring

---

[13] Pl. Opp. at 43; *see* Holland Reply Decl. Ex. A.

[14] Plaintiffs' other cases on "management's credibility" (Pl. Opp. at 44) are even more easily distinguishable. *See Gebhardt v. ConAgra Foods, Inc.* 335 F.3d 824, 830 (8th Cir. 2003) (parent company's alleged misstatement of its revenues "would probably be important to investors" because it meant that its senior managers were either oblivious to, or actively engaged in, the deceptive practices of its subsidiary which inflated the parent's overall revenues); *Zell v. InterCapital Income Sec., Inc.*, 675 F.2d 1041, 1047 (9th Cir. 1982) (proxy statement asking mutual fund shareholders to continue management services with the same investment adviser which was now owned by a different company "depended upon the receipt of accurate information about the new owners," since "[t]here was no other issue" in the proxy statement).

[15] Pl. Opp. at 44-46.

[16] Pl. Opp. at 45.

NYA 891631.1

disclosure of the pending litigation at issue in *GAF Corporation* would force companies to make "descriptions, explanations, and denials regarding allegations in derivative actions, class actions, matrimonial disputes, and a host of other legal matters, all unrelated to the business of the subject corporation." *Id.* at 743.

Plaintiffs also try to distinguish *United States v. Matthews*, 787 F.2d 38 (2d Cir. 1986), saying that the evidence of a conspiracy in that case was "thin," so "it was difficult to conclude that any 'true' facts were actually omitted."[17]  Yet Plaintiffs' factual allegations here are even thinner.  The recently dismissed Perfisans RICO lawsuit and the ongoing NASD investigation of Bedrock have not yielded any "evidence" of Singhal's wrongdoing that had to be disclosed.  Just the opposite is true -- the NASD cease and desist order was lifted *before* the Xinhua IPO, and the RICO suit has been  dismissed with prejudice.  Plaintiffs simply cannot show how unproven allegations against Singhal about unrelated companies somehow constitute "[i]nformation going directly to the financial well being" of Xinhua or are "directly related to Xinhua's operations, business, controls, and foreseeable prospects."[18]  And absent such a showing, they cannot state a claim under Sections 11 or 12(a)(2).[19]

**B.    The Prospectus' Single Sentence About Xinhua's Strong Management Team is Not an Actionable Misstatement**

Plaintiffs' Opposition also fails to demonstrate that those same unproven allegations about Singhal and unrelated companies "directly contradict" and render false the statement in the Prospectus that Xinhua's management is "one of our strongest assets."[20]

---

[17]  Pl. Opp. at 46.

[18]  Pl. Opp. at 46.

[19]  *See* Underwriter Def. Moving Mem. at 12-13.

[20]  Holland Reply Decl. Ex. A, Prospectus at 101; *see* Pl. Opp. at 36.  In contrast, Plaintiffs' cited cases involved alleged omissions directly relating to the misstatement at issue and thus are inapposite.  *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 271-74 (3d Cir. 2004) (prospectus statement about the company's reliance on a network of authorized distributors for its golf equipment was allegedly false for failing to mention an industry-wide glut of golf equipment carried by unauthorized discount retailers); *Kline v. First W. Gov't Sec., Inc.*, 24 F.3d 480, 490-91 (3d Cir.), *cert. denied*, 513 U.S.

NYA 891631.1

Plaintiffs' own cited authority confirms that the statement about Xinhua's "strong management" is inactionable puffery.  In *In re Marsh & McLennan Companies, Inc. Securities Litigation*, 501 F. Supp. 2d 452, 475 (S.D.N.Y. 2006) (discussed in Pl. Opp. at 35 and n.16), where the defendant had allegedly steered clients to certain insurers to maximize its contingent commission revenue, the court dismissed the plaintiffs' claims that certain statements by the defendant had "misrepresented its commitment to clients and adherence to ethical practices." The court noted that the company's "[b]road, general statements" that it had a "culture of excellence," "dedicat[ion] to client service" and "commit[ment] to building value for shareholders" were insufficient to state a claim because they "amount to no more than puffery." *Id.* (internal quotations omitted).[21]

Similarly, in *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1121 (10th Cir. 1997) (cited in Pl. Opp. at 35 n.15), the Tenth Circuit affirmed dismissal of the plaintiff's complaint because, among other things, the allegedly misleading statements were "immaterial statements of corporate optimism."  The court held that statements that the merger presented a "compelling set of opportunities" for the company and that "[b]y moving rapidly to a fully integrated sales force, we are leveraging our combined knowledge of the expanding scope of network solutions" were

---

1032 (1994) (law firm's tax opinion letter allegedly omitted information that bore directly on the accuracy of that opinion); *In re PMA Capital Corp. Sec. Litig.*, 2005 WL 1806503, at *16 (E.D. Pa. July 27, 2005) (allegations that the company's internal control deficiencies caused understated loss reserves were directly related to the prospectus' statements about the company's underwriting discipline and actuarial expertise).  *See also Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir.), *cert. denied*, 531 U.S. 1012 (2000) (positive statements about inventory were misrepresentations of existing facts about the status of those inventories, not mere expressions of optimism) and *In re Computer Assocs. Class Action Sec. Litig.*, 75 F. Supp. 2d 68, 73 (E.D.N.Y. 1999) (positive statements about company's growth and health were false when made because of the allegedly improper accounting practices which prematurely recognized and inflated revenues) (both cited in Pl. Opp. at 37 n.17).

[21]    The statements that the court in *Marsh & McLennan* did find actionable were far more specific and, as Plaintiffs acknowledge, directly related to the allegations of steering clients to specific insurance brokers.  (*See* Pl. Opp. at 35 n.16.)  Here, as noted above, the unproven allegations against Singhal about unrelated companies do not contradict the statement that Xinhua's entire management team -- of which Singhal was only one part -- was a "strong asset."

NYA 891631.1

"the sort of soft, puffing statements, incapable of objective verification, that courts routinely dismiss as vague statements of corporate optimism." *Id.* at 1121-22.[22]

Plaintiffs' attempt to distinguish the Underwriter Defendants' "puffery" cases is unavailing.[23]   Plaintiffs argue that Xinhua's Prospectus made "specific statements about [Xinhua's] management team" which were different from the "very general statements" at issue in *Lasker v. New York State Electric & Gas Corporation*, 85 F.3d 55, 59 (2d Cir. 1996).[24]  Yet the statements in *Lasker* about the company's "commitment to create earnings opportunities" and that "business strategies [would] lead to continued prosperity,"[25] which the court found inactionable puffery, are, if anything, even more specific than the "strong management" statement in Xinhua's Prospectus.  And in *In re New York Community Bancorp, Inc. Securities Litigation*, 448 F. Supp. 2d 466, 480 (E.D.N.Y. 2006), the court expressly held that "[g]eneralized statements regarding a company's fiscal discipline and risk management amount to no more than inactionable puffery."[26]

Further, Xinhua's "management" is composed of many individuals, not just Singhal, and the portion of Xinhua's Prospectus containing that "strong assets" statement does not even

---

[22]   *Rosen v. Textron, Inc.*, 321 F. Supp. 2d 308, 320 (D.R.I. 2004) (Pl. Opp. at 35), similarly is distinguishable. There, the court noted that the defendant's general statement about growth opportunities from the company's global network was "immediately" followed by "detailed comment[s]" about the viability of a particular aircraft and its ability to increase the company's profit, which ability was later weakened when a report found that the aircraft was "not operationally suitable."  *Id.* (internal quotations omitted). In contrast, Xinhua's general statement about management being a "strong asset" is not followed by any detailed comments which are rendered misleading by the unproven allegations against Singhal.  *See* Holland Reply Decl. Ex. A, Prospectus at 101.

[23]   Pl. Opp. at 35-37.

[24]   Pl. Opp. at 37.

[25]   *Lasker*, 85 F.3d at 59 (internal quotations omitted).

[26]   While the court made an *additional* finding that those oral statements were contradicted by language in the Prospectus, its "puffery" holding was not dependent upon that fact.  *New York Community Bancorp*, 448 F. Supp. 2d at 480.

NYA 891631.1

mention Singhal.[27]   Tangential events such as a lifted cease and desist order and pending NASD

inquiry of Bedrock -- a company completely separate from Xinhua with which only one Xinhua

executive was involved -- do not somehow "weaken" Xinhua's entire management team.[28]

Plaintiffs thus have failed to plead an actionable misstatement under Section 11 or 12(a)(2).

## C.    Plaintiffs Concede that Singhal's Related Party Transactions Were Disclosed

Plaintiffs' Opposition also confirms their inability to articulate an omissions claim arising

out of Singhal's related party transactions with Xinhua.[29]

Plaintiffs explicitly acknowledge that Xinhua's Prospectus disclosed that Sino

Investments, a company controlled by Singhal, "sold to Xinhua a 37 percent stake in Upper Step

and 61 percent of Accord Group for a total of $9.1 million in cash, 6.92 million class A shares,

and 4.1 million warrants,"[30] so their argument on the same page that the information "was never

disclosed" is baffling.[31]   The Prospectus contained the precise dollar and share amounts Sino

Investments received in those transactions.   Plaintiffs do not identify any other "true and

complete facts" about those transactions which should have been disclosed.[32]   Nor do Plaintiffs

dispute the Underwriter Defendants' argument that the 1933 Act does not impose any duty to

disclose information which is publicly available.[33]   *See, e.g., Garber*, 537 F. Supp. 2d at 612

(dismissing Section 11 and 12(a)(2) claims where the allegedly omitted information was publicly

reported).   Instead, Plaintiffs apparently contend that Xinhua's Prospectus should have stated that

---

[27]   *See* Holland Reply Decl. Ex. A, Prospectus at 101, 156.

[28]   *See* Pl. Opp. at 8-9.

[29]   Pl. Opp. at 47-49.

[30]   Pl. Opp. at 48.

[31]   Pl. Opp. at 48.

[32]   Pl. Opp. at 48; *see* Underwriter Def. Moving Mem. at 7-8.

[33]   Underwriter Def. Moving Mem. at 9; *see* Pl. Opp. at 47.

Sino Investments' transactions with Xinhua "had the effect of enriching insiders."[34]   However, courts have made clear that the securities laws do not require such "pejorative terms."[35]

Plaintiffs also concede that Singhal's related party transactions in 2003 were "publicly disclosed in a November 2003 press release," but they criticize the Prospectus for not stating that Singhal made a "windfall" and "profited handsomely" from those transactions.[36]   Again, Plaintiffs try to impose an obligation to make negative characterizations, which courts have rejected.  *E.g., Donald J. Trump Casino*, 7 F.3d at 375.

**D.     Plaintiffs Concede that an Alleged Failure to Conduct Due Diligence Does Not State a Claim Under Sections 11 or 12(a)(2)**

Plaintiffs' Opposition misconstrues the Underwriter Defendants' argument about due diligence.[37]   The Underwriter Defendants are not seeking to dismiss Plaintiffs' Complaint at this stage based on the affirmative defense of due diligence.  Rather, the Underwriter Defendants merely pointed out that the allegations in the Complaint that the Underwriter Defendants "failed to conduct an adequate due diligence investigation into [Xinhua] prior to the IPO" cannot serve as the basis for a violation of Sections 11 or 12(a)(2).[38]   Plaintiffs now agree, explicitly

---

[34]   Pl. Opp. at 48.

[35]   *Sheppard v. TCW/DW Term Trust 2000*, 938 F. Supp. 171, 175 (S.D.N.Y. 1996) (rejecting the plaintiffs' claim that the prospectus should have characterized the mortgage-backed securities in which the trusts invested as "exotic mortgage derivatives" and holding that "[d]efendants were not obligated to describe [them] in pejorative terms") (internal quotations omitted).  *See also In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 375 (3d Cir. 1993), *cert. denied*, 510 U.S. 1178 (1994) (because the prospectus "disclosed the relevant *fact* that capital contributions would provide only $75 million of the $805 million budget" for a casino's construction, the prospectus need not describe the debt-equity ratio as "unwarranted" or "excessive") (emphasis in original) (internal quotations omitted); *In re Donna Karan Int'l Sec. Litig.*, 1998 WL 637547, at *10 n.9 (E.D.N.Y. Aug. 14, 1998) (in dismissing Section 11 and 12(a)(2) claims, the court noted the "accepted view that the securities laws do not require corporate management to direct conclusory accusations at itself or to characterize its behavior in a pejorative manner") (internal quotations and citation omitted).

[36]   Pl. Opp. at 47.

[37]   Pl. Opp. at 49-50; *see* Underwriter Def. Moving Mem. at 18-19.

[38]   Compl. ¶¶ 2, 15; *see also id.* at ¶ 77.  *See also* Pl. Opp. at 57 (alleging that "each Defendant failed to conduct an adequate due diligence investigation into the Company prior to the IPO").

NYA 891631.1

recognizing "that 'due diligence' is an affirmative defense" and stating "quite plainly" that they "do not seek to advance lack of due diligence as an independent and separate cause of action."[39]

**E.    Defendants Are Not Liable for the Stock Drop Before the Corrective Disclosure**

Plaintiffs also mischaracterize the reason for the Underwriter Defendants' discussion of Xinhua's share price decline prior to the May 21 *Barron's* article that precipitated this lawsuit.[40] Plaintiffs' Complaint and Opposition repeatedly state that Xinhua's stock drop after the Barron's article was published on May 21, to as low as $8.31, was "a decline of over 36% compared to the IPO price of $13.00 per share."[41]   Plaintiffs thus imply that revelation of the alleged omissions about Singhal were responsible for the *entire* decline from Xinhua's $13.00 IPO price -- thereby enhancing the purported significance of that information.   However, only *five days* after the March 9 IPO, Xinhua's share price had dropped from $13.00 to $10.09.[42]   Even Plaintiffs do not contend that any of the purportedly omitted facts about Singhal caused Xinhua's stock to drop precipitously only five days after the IPO, or at any time before May 21.   Plaintiffs' implication that the disclosures in the *Barron's* article caused all of the price decline in Xinhua's stock therefore is unfounded.[43]

---

[39]   Pl. Opp. at 49 n.23.

[40]   *See* Pl. Opp. at 6, 50-54.

[41]   Pl. Opp. at 8, 11; Compl. ¶¶ 3, 24.   As discussed in the Underwriter Defendants' Moving Memorandum, that article contained a glaring error about the Bedrock cease and desist order, and as those and other inaccuracies were revealed, Xinhua's share price began to rise.   *See* Underwriter Def. Moving Mem. at 5.

[42]   *See* Underwriter Def. Moving Mem. at 3.

[43]   *See* Underwriter Def. Moving Mem. at 4-5 n.11.

NYA 891631.1

## II.

### PLAINTIFFS LACK SECTION 12 STANDING BECAUSE THEY DID NOT PURCHASE SHARES IN THE IPO AND DO NOT ALLEGE A DIRECT PURCHASE FROM ANY UNDERWRITER DEFENDANT

A.    **Plaintiffs' Cited Authority Confirms that There Is No Section 12(a)(2) Liability to Aftermarket Purchasers Such As Plaintiffs**

According to Plaintiffs, their Complaint sufficiently alleges Section 12(a)(2) standing because it brings claims "on behalf of purchasers in Xinhua shares who bought pursuant and/or traceable to the Registration Statement."[44]   Yet again, Plaintiffs' own cited authority expressly rejects that argument.

In *In re Prestige Brands Holding, Inc.*, 2006 WL 2147719, at *9 (S.D.N.Y. July 10, 2006) (Brieant, J.) (cited in Pl. Opp. at 57), the plaintiffs similarly sued "'on behalf of all purchasers of Prestige shares in connection with, and traceable to, the IPO.'"   The court dismissed the Section 12(a)(2) claim, noting that "[t]he statute does not sweep so broadly," and that Section 12(a)(2) "provides for a claim only in favor of those who purchase stock *directly in an initial public offering*."   *Id.* (emphasis added).   The court thus held that "to the extent that shareholders allege, as here, merely that they bought shares 'traceable to' or 'in connection with' an IPO, they lack standing." *Id.*[45]

---

[44]   Pl. Opp. at 55.

[45]   Another one of Plaintiffs' cited cases, *In re SeeBeyond Technologies Corp. Securities Litigation*, 266 F. Supp. 2d 1150, 1171 (C.D. Cal. 2003) (cited in Pl. Opp. at 55), similarly notes that Section 12 claims need to be "premised on direct purchases," unlike Section 11 claims.   *See also Dartley v. ErgoBilt Inc.*, 2001 WL 313964, at *2 (N.D. Tex. Mar. 29, 2001) (in dismissing Section 12(a)(2) claim, noting that "Plaintiffs here merely allege that they purchased shares 'pursuant to and traceable to" the Prospectus, but that "to state a claim under § 12(a)(2), the Plaintiffs must have purchased in the public offering, not the aftermarket"); Underwriter Def. Moving Mem. at 19-20.   Plaintiffs try to distinguish the Underwriter Defendants' cited authority as factually inapposite (*see* Pl. Opp. at 55-56 n.24), but the legal principle that "Section 12(a)(2) liability does not apply to aftermarket purchases" applies equally here.   *Am. High-Income Trust v. AlliedSignal*, 329 F. Supp. 2d 534, 547 n.8 (S.D.N.Y. 2004) (Swain, J.); *see also Komanoff v. Mabon, Nugent & Co.*, 884 F. Supp. 848, 857 (S.D.N.Y. 1995) ("Section 12(2) extends only to initial public offerings of stock").   Likewise, many courts have expressly relied on *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1996), in dismissing Section 12 claims where, as here, the plaintiffs do not allege that they purchased securities in the IPO.   *See, e.g., Komanoff*, 884 F. Supp. at 857; *In re Azurix Corp. Sec. Litig.*, 198 F. Supp. 2d 862, 893 (S.D. Tex. 2002), *aff'd*, 332 F.3d 854 (5th Cir. 2003).   The holding in *Schoenhaut v. American Sensors, Inc.*, 986 F. Supp. 785, 789 (S.D.N.Y. 1997) (Pl. Opp. at 5, 54) -- that an allegation of purchasing shares

NYA 891631.1

Plaintiffs' reliance on *In re U.S.A. Classic Securities Litigation,* 1995 WL 363841 (S.D.N.Y. June 19, 1995), likewise is misplaced.[46]  In *U.S.A. Classic*, the plaintiffs' attorney provided the names of class representatives who purchased shares *on the date of* the IPO.  *Id.* at *3.  Here, by contrast, no Plaintiff purchased on the date of the IPO.  Plaintiffs' lead plaintiff certifications confirm that they all purchased their Xinhua shares in the aftermarket on April 5, 2007 or later -- long after Xinhua's March 9, 2007 IPO.[47]

Plaintiffs make a last ditch effort to salvage their Section 12(a)(2) claim by arguing that they need discovery in order to trace their shares to the IPO.[48]  Yet the cases Plaintiffs cite discuss Section 11 claims -- where courts have found that an aftermarket purchaser may have standing to sue if she can trace her shares to ones that were issued in the IPO -- and do *not* involve claims under Section 12(a)(2).[49]  Because "Section 12(a)(2) liability does not apply to aftermarket purchases," those Section 11 "tracing" cases do not prevent dismissal of Plaintiffs' Section 12(a)(2) claims here.[50]

---

"'pursuant to or traceable to'" a public offering is sufficient for Section 12(a)(2) standing -- is directly at odds with more recent cases in this District and should be disregarded.  *See, e.g., Prestige Brands,* 2006 WL 2147719, at *9.

[46]  *See* Pl. Opp. at 54-55.

[47]  *See* Compl. ¶ 9; *see also* Underwriter Def. Moving Mem. at 20.

[48]  Pl. Opp. at 55-56.

[49]  *See In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 208 (S.D.N.Y. 2003); *SeeBeyond Techs. Corp.*, 266 F. Supp. 2d at 1171 (both discussing tracing for Section 11 claims, not Section 12(a)(2) claims).  For the same reason, Plaintiffs' cited authority that aftermarket purchasers have standing to sue under Section 11 has no relevance as to Plaintiffs' Section 12(a)(2) standing here. (*See* Pl. Opp. at 56 n.24.)  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006), similarly lacks any relevance, as it involved claims under RICO, not Section 12.  (Pl. Opp. at 55.)

[50]  *Am. High-Income Trust*, 329 F. Supp. 2d at 547 n.8; *see* Underwriter Def. Moving Mem. at 19-20.

NYA 891631.1

**B.    Plaintiffs Still Fail to Allege that They Themselves Purchased Shares Directly from the Underwriter Defendants**

Even if Plaintiffs could show that they purchased Xinhua shares in the IPO, they still lack Section 12(a)(2) standing because they have not alleged that they purchased Xinhua shares directly from any of the Underwriter Defendants named in this lawsuit.[51]    Unable to rebut that argument, Plaintiffs instead erroneously accuse the Underwriter Defendants of arguing that they did not sell Xinhua shares and that the purported class members did not buy shares.[52]    The Underwriter Defendants make no such argument.    Rather, we contend that even though the Complaint alleges that the Underwriter Defendants *sold* Xinhua shares, and that Plaintiffs and the class members *purchased* Xinhua shares, nowhere do Plaintiffs allege, as they must, that they purchased shares *directly* from any of these four Underwriter Defendants.[53]    Plaintiffs have no answer to this argument.[54]

---

[51]    *See* Underwriter Def. Moving Mem. at 21-22.  Underwriters other than those named in the Complaint also sold shares in Xinhua's March 2007 IPO, so even if Plaintiffs had in fact purchased shares in the IPO (which they obviously did not), they did not necessarily purchase them from the four Underwriter Defendants named herein.

[52]    Pl. Opp. at 6, 56-57 & n.25 (citing to Compl. ¶¶ 1, 9, 59, 68, 84, and 85).

[53]    Underwriter Def. Moving Mem. at 21-22.  *See, e.g.*, Compl. ¶ 1 (Plaintiffs "bring this action . . . on behalf of all persons who purchased or acquired" Xinhua shares); *id.* ¶ 9 (alleging that the Lead Plaintiffs "purchased Xinhua [shares] pursuant and/or traceable to the Company's materially false and misleading Prospectus in connection with the IPO" and stating that the relevant purchases are set forth in Plaintiffs' certifications submitted in their lead plaintiff applications).

[54]    For the same reason, Plaintiffs' reliance on cases stating that underwriters in a firm commitment offering may have Section 12(a)(2) liability as direct sellers is misplaced.  *See* Pl. Opp. at 57.  Nothing in those cases supports Section 12(a)(2) liability for underwriters where, as here, the plaintiffs do not allege that they purchased shares from those underwriters.  In fact, just the opposite is true.  In *Prestige Brands*, 2006 WL 2147719 at *10, the court dismissed the Section 12(a)(2) claim against defendant GTCR because it did not pass title to the plaintiffs, but instead sold shares to underwriters and then the plaintiffs "purchase[d] these shares in the IPO directly from the underwriters."  GTCR thus could not be liable under Section 12(a)(2) because the plaintiffs purchased from a party other than GTCR.  *See also In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 659 (S.D.N.Y. 2004) (to be liable as a Section 12(a)(2) seller, the defendants must be the "buyer's immediate seller" and "remote purchasers are precluded from bringing actions against remote sellers") (cited in Pl. Opp. at 57).  Plaintiffs' own cited authority thus confirms that their Section 12(a)(2) claim should be dismissed for failure to allege that they purchased their shares directly from the Underwriter Defendants.

NYA 891631.1

## CONCLUSION

Plaintiffs' Complaint has been an ill-conceived venture from the outset.  First, the May 21, 2007 *Barron's* article upon which they based their initial complaint turned out to be completely erroneous.  Then, the RICO lawsuit against Singhal that was the focus of much of their amended Complaint was dismissed with prejudice.  Challenged to cite any authority that requires the disclosure of tangential civil lawsuits involving companies unrelated to Xinhua, they fail.  Plaintiffs' plea for discovery in hopes of uncovering some new facts to resuscitate their claims should be rejected, and their Complaint against the Underwriter Defendants should be dismissed in its entirety with prejudice.

Dated:  May 16, 2008

Respectfully submitted,

CLIFFORD CHANCE US LLP

By:  _____/s/ Mark Holland_____
    James B. Weidner (JW 0909)
    Mark A. Kirsch (MK 7806)
    Mark Holland (MH 6494)
    Mary K. Dulka (MD 0013)
    Angelique Shingler (AS 6052)
31 West 52nd Street
New York, New York  10019
(212) 878-8000

*Attorneys for Defendants JP Morgan Securities, Inc., UBS AG, CIBC World Markets Corp. and W.R. Hambrecht + Co. LLC*

NYA 891631.1